IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

────────────────────────────

RAYMOND GONZALEZ,

Plaintiff,

v.

DR. DONALD SAWYER; DR. SHADIA
HANNA; TODD HARMON, SHTA
(Security Hospital Treatment Assistant);
THOMAS NITTI, SHTA (Security Hospital
Treatment Assistant); MICHAEL NICOTERA,
SHTA (Security Hospital Treatment Assistant);
and J. NADEAU, SHTA (Security Hospital
Treatment Assistant),

Defendants.

Civil Action No.
9:10-CV-0312 (LEK/DEP)

────────────────────────────

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

RAYMOND GONZALEZ, *Pro Se*
99-A-1878
Five Points Correctional Facility
Caller Box 119
Romulus, NY 14541

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN          ADAM SILVERMAN, ESQ.
Office of the Attorney General     Assistant Attorney General
State of New York
Department of Law
The Capitol
Albany, New York 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT, RECOMMENDATION AND ORDER</u>

*Pro se* plaintiff Raymond Gonazales, a prolific inmate litigant who is well known to this court as well as in the Western District of New York, has commenced this action pursuant to 42 U.S.C. § 1983 alleging deprivation of his civil rights.[1]  In his complaint plaintiff alleges that he was involuntarily transferred from the prison facility in which he was incarcerated to the Central New York Psychiatric Center ("CNYPC" or "Center"), where he was labeled as mentally ill and forcibly medicated, and that while there he was assaulted by four CNYPC employees, including defendants Thomas Nitti, Todd Harmon, J. Nadeau, and Michael Nicotera.  Plaintiff further asserts that the transfer had the effect of interfering with his ability to pursue pending claims in other actions brought by him, thereby unlawfully denying him access to the courts.

Currently pending before the court is a motion by the defendants seeking dismissal of plaintiff's complaint or, alternatively, an order compelling

---

[1]     In addition to this suit plaintiff has filed at least eight other actions in this court and in the Western District of New York.  From a review of court records associated with those cases it appears that although he may well not have had three strikes, for purposes of 28 U.S.C. §1915(g), prior to commencement of this action, he clearly does now and thus will be ineligible in the future to pursue federal court actions *in forma pauperis* as a prison inmate, absent a showing of imminent danger of serious physical injury.  28 U.S.C. § 1915(g); *see also Malik v. McGinnis*, 293 F.3d 559, 562-63 (2d Cir. 2002).

him to appear for deposition and extending the discovery period in the action to allow for that deposition to be taken.  Defendants' motion is based upon plaintiff's refusal to date to permit his deposition to be taken.  For the reasons set forth below, I recommend against dismissing plaintiff's complaint at this juncture, in deference to his *pro se* status, but will extend the discovery deadline in the case and issue an order directing him to appear for deposition, with the understanding that if he does not comply with that order I will recommend that his complaint be dismissed.

I.     BACKGROUND

Plaintiff is a prison inmate entrusted to the care and custody of the New York State Department Corrections and Community Supervision ("DOCCS").  *See generally* Complaint (Dkt. No. 1).  At the relevant times, including when the action was commenced, plaintiff was designated to the Five Points Correctional Facility ("Five Points"), located in Romulus, New York.  *Id.*  As was previously noted, though not germaine to issues presently before the court, plaintiff's complaint alleges that he was transferred by the DOCCS to the CNYPC in an effort to frustrate or disrupt his litigation activities and in retaliation for those pursuits.  Plaintiff also claims once there he was labeled as mentally ill and administered pyschotropic medication, over his objection,

and further that while at the Center he was assaulted by staff members as well as fellow inmates.[2]  *Id.*

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on March 17, 2010.  Dkt. No. 1.  Named as defendants in plaintiff's complaint are Dr. Donald Sawyer, the Executive Director of the CNYPC; Dr. Shadia Hanna, identified by the plaintiff as a psychiatrist employed at the Center; and Security Hospital Treatment Assistants Todd Harmon, Thomas Nitti, Michael Nicotera, and J. Nadeau.[3]

Following service and the joinder of issue, on October 22, 2010 the

---

[2]    In addition, plaintiff alleges that the established procedures set forth in N.Y. Correction Law § 402 were not followed when he was involuntarily committed to the CNYPC.

[3]    Defendant J. Nadeau has yet to be served or to appear in the action.  Rule 4(m) of the Federal Rules of Civil Procedure authorizes dismissal of a plaintiff's claims against a defendant where a summons and complaint is not served upon that party within 120 days after filing of the complaint, absent a showing of good cause.   Fed. R. Civ. P. 4(m); *Shuster v. Nassau Cty.,* No. 96 Civ. 3635, 1999 WL 9847, at *1 (S.D.N.Y. Jan. 11, 1999); *Romand v. Zimmerman,* 881 F. Supp. 806, 809 (N.D.N.Y. 1995) (McAvoy, C.J.) (120-day period for service of a summons and complaint by a plaintiff under Fed. R. Civ. P. 4(m) applies to *pro se* plaintiffs as well as those represented by counsel).  That period is further restricted by this court's local rules, which require that service be effected within sixty days.  *See* N.D.N.Y.L.R. 4.1(b).  Inasmuch as defendant Nadeau has not been served or otherwise appeared in the action within the appropriate time period, this court has never acquired jurisdiction over him, and the complaint should be dismissed as against that defendant.  *See, e.g., Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 709 F. Supp. 1279, 1282 (S.D.N.Y. 1989) (citing *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 444-45, 66 S. Ct. 242, 245-46 (1946)) (court lacks jurisdiction until defendants properly served with summons and complaint).  In light of these circumstances I will recommend that plaintiff's claims against defendant Nadeau be dismissed, without prejudice.

court issued a standard pretrial discovery and scheduling order, pursuant to Rule 16 of the Federal Rules of Civil Procedure.  Dkt. No. 23.  That order, *inter alia*, directed that all discovery in the action be completed by February 23, 2011, and granted the defendants leave to take the deposition of the plaintiff pursuant to Rule 30(a)(2)(B) of the Federal Rules of Civil Procedure, notwithstanding his status as a prison inmate.  *See id.*  Since the issuance of that order the discovery deadline in the case has been extended three times, and expired on May 15, 2011.  *See* Docket Entries Dated 1/5/11, 2/24/11 and 4/7/11.

On March 31, 2011, the defendants served Gonzalez with a written notice advising that his deposition would be conducted on April 15, 2011 at the Great Meadow Correctional Facility ("Great Meadow"), located in Comstock, New York.  Silverman Aff. (Dkt. No. 36-1) ¶ 4 and Exh. A.  The plaintiff responded by sending a handwritten letter on April 10, 2011 to defendants' counsel, demanding that an interpreter be provided to assist him during his deposition.  *Id.* at ¶ 6 and Exh. B.  As a result of that demand and the  unavailability of a suitable translator, the scheduled deposition was cancelled, and plaintiff was returned from Great Meadow, where he had been transferred for the purpose of taking his deposition, back to Five Points.  *Id.* at

¶¶ 7, 8.

Once defendants' counsel was able to locate an interpreter, plaintiff's deposition was rescheduled for May 12, 2011, again to take place at Great Meadow. Silverman Aff. (Dkt. No. 36-1) ¶ 9. By letter dated May 8, 2011, however, Gonzalez advised defendants' counsel that he would not appear for deposition at Great Meadow, demanding that the deposition instead take place at Five Points. Silverman Aff. (Dkt. No. 36-1) ¶ 10 and Exh. C. The deposition was thereafter cancelled.

Following cancellation of plaintiff's deposition, defendants moved on May 12, 2011 seeking relief pursuant to Rule 37 of the Federal Rules of Civil Procedure, based upon plaintiff's refusal to appear for deposition. Dkt. No. 36. In their motion defendants request either that plaintiff's complaint be dismissed or, in the alternative, that he be compelled to appear for deposition at Great Meadows and that the discovery deadline be extended for the purpose of permitting the deposition to go forward. *Id.* Plaintiff has opposed defendants' motion, asserting that it is inconvenient for him to appear for deposition at Great Meadow and that to require his transfer for that purpose will unduly interfere with his ability to prepare for various pending court proceedings. Dkt. No. 39. Defendants' motion, which is now ripe for

determination, has been referred to me for disposition.[4]

## III.   DISCUSSION

Rule 30(a) of the Federal Rules of Civil Procedure provides that a party to an action may take the oral deposition of any person, including a party. Fed. R. Civ. P. 30(a); *Pegoraro v. Marrero*, No. 10 Civ. 00051, 2011 WL 5223652, at *3 (S.D.N.Y. Nov. 2, 2011).  While leave of court is required to take the deposition of a person confined in prison, *see* Fed. R. Civ. P. 30(a)(2)(B), that leave was granted in this case under the court's mandatory pretrial discovery and scheduling order.  *See* Dkt. No. 23.  The court's Rule 16 pretrial order provided that notice of the deposition must be mailed at least fifteen days prior to the scheduled date, and specifically warned that plaintiff's failure to appear for deposition could result in sanctions, including dismissal of his complaint.[5]  *Id.*

---

[4]     To the extent that defendants' motion requests dismissal of plaintiff's complaint, the relief sought exceeds my non-consensual jurisdiction pursuant to 28 U.S.C. § 636.  *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010).  Accordingly, I have structured this decision, in part, as a report and recommendation to the extent that this relief is sought.  Defendants' application, in the alternative, for extension of the discovery deadline and a directive that the plaintiff appear for deposition, however, do fall within my jurisdiction under 28 U.S.C. § 636 and the standard referral order of this court. *See* N.D.N.Y.L.R. 72.1-72.3.

[5]     Defendants' first notice of deposition complied with the fifteen-day notice requirement set forth in the court's scheduling order.  The second, however, which according to the plaintiff was dated May 6, 2011 and advised of a deposition to occur six days later, does not appear to have followed the timetable prescribed in the Rule 16 order. *See* Gonzales Aff. (Dkt. No. 39) ¶ 9.

Defendants' motion is brought pursuant to Rule 37(b) of the Federal Rules of Civil Procedure, which governs in the case of a failure to comply with a court discovery order. *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 755 n.2, 100 S. Ct. 2455, 2458 n.2 (1980). That provision is not directly applicable in this instance, however, since there has been no court order issued to date explicitly compelling plaintiff to appear for deposition. While the court's mandatory pretrial scheduling order granted leave to take plaintiff's deposition and warned plaintiff of the consequences of failing to appear, it did not order the deposition, instead permitting it to be taken on notice. Accordingly, defendants' motion does not fall directly within the ambit of Rule 37(b).

In the end, however, this is a distinction without a difference. Defendants' motion is more appropriately analyzed under Rule 37(d), which governs a party's failure to attend a deposition after being served with a proper notice. Fed. R. Civ. P. 37(d); *see Steinman v. Spinal Concepts, Inc*., No. 05CV774S , 2007 WL 4198186, at * 5 (W.D.N.Y. Nov. 7, 2007).[6] That section provides for the issuance of sanctions against a party who has failed to appear for a properly noticed deposition; among the sanctions authorized are those listed in Rule 37(b)(2)(A)(i)-(vi), which governs non-compliance with

---

[6]   Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

court orders.  Fed. R. Civ. P. 37(d)(3); *see Agiwal Mid Island Mortgage Corp.*,

555 F.3d 298, 302 (2d Cir. 2009).  Rule 37(b)(2), in turn, provides for an array

of available sanctions to be awarded, in the court's discretion, ranging in

severity up to and including dismissal of an action in the case of a recalcitrant

plaintiff.[7]  Fed. R. Civ. P. 37(b)(2)(A); *see Gissinger v. Yung*, Nos. 04-CV-534

---

[7]      Rule 37(b)(2)(A), provides, in relevant part, that

> [i]f a party . . . fails to obey an order to provide or to permit
> discovery, including an order under Rule 26(f), 35, or 37(a), the
> court where the action is pending may issue further just orders.
> They may include the following:
>
>> (i)  directing that the matters embraced in the
>> order or other designated facts be taken as
>> established for purposes of the action, as the
>> prevailing party claims;
>>
>> (ii) prohibiting the disobedient party from
>> supporting or opposing designated claims or
>> defenses, or from introducing designated matters
>> in evidence;
>>
>> (iii) striking pleadings in whole or in part;
>>
>> (iv) staying further proceedings until the order is
>> obeyed;
>>
>> (v) dismissing the action or proceeding in whole or
>> in part;
>>
>> (vi) rendering a default judgment against the
>> disobedient party; or
>>
>> (vii) treating as contempt of court the failure to
>> obey any order except an order to submit to a
>> physical or mental examination.

(CBA)(JO), 04-CV-5406 (CBA)(JO), 2006 WL 1329697, at *4-5 (E.D.N.Y. May 16, 2006).

The decision as to which of the available sanctions under Rule 37(b)(2) should be awarded, in the event of a party's failure to comply with a legitimate discovery order, is a matter entrusted to the sound discretion of the court. *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991). The court's broad discretion to impose sanctions pursuant to Rule 37(b)(2) is limited only by the requirement, expressly stated in the rule, that the sanction selected be "just" and that it relate to the particular claim to which the discovery order was addressed. *Insurance Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 707, 102 S.Ct. 2099, 2106 (1982). The determination of whether a sanction is just must be made taking into consideration the record as a whole. *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979).

In deciding which of the available sanctions under Rule 37(b) to award, some courts have looked for guidance to cases decided under Rule 41(b), a provision which permits dismissal of an action or claim for failure to prosecute. *See, e.g.*, *Banjo v. United States*, No. 95 Civ. 633, 1996 WL

---

Fed. R. Civ. P. 37(b)(2)(A).

426364, at *5 (S.D.N.Y. July 29, 1996) ("[I]t is appropriate to be guided by those factors which courts consider before dismissing a case under Rule 41(b) prior to dismissing the case under Rule 37."); *Almonte v. Coca-Cola Bottling Co. of New York*, 169 F.R.D. 246, 249 n. 4 (D.Conn.1996) ("[T]he factors for dismissal under Rule 41(b) are helpful in considering a dismissal under Rule 37.").  The propriety of a Rule 41(b) dismissal for failure to comply with an order of the court and/or for failure to prosecute is informed by five relevant factors, including

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*See Shannon v. Gen. Elect. Co.*, 186 F.3d 186, 193 (2d Cir. 1999) (failure to prosecute action) (citation and internal quotation marks omitted).

Weighing those factors and taking into consideration the circumstances now presented, and in recognition of his *pro se* status, I do not recommend dismissal of plaintiff's complaint, even though dismissal was specifically disclosed in the court's Rule 16 order as a potential consequence of his

failure to appear for deposition.[8]  I will, however, issue an order directing

Gonzalez to appear for deposition. Moreover, that order will require his

deposition to be taken at Great Meadow, as requested by the defendants. I

find no basis not to honor the defendants' choice of location for the

deposition, particularly since it will be conducted in this, the forum district.  I

note, moreover, that as a prison inmate plaintiff has no right to insist on being

designated by the DOCCS to a correctional facility of his choice, nor is there

any prohibition against his being freely transferred between facilities provided

the transfer is not motivated by constitutionally prohibited criteria.  *Halloway v.*

---

[8]       While the plaintiff is entitled to a certain degree of solicitude in view of his *pro se* status, that laxity is not unlimited.  It has been observed that

> [w]hile *pro se* litigants are given special latitude, this is not a reason for non-compliance with specific and numerous Court Orders. . . . 'When a party seeks to frustrate [the orderly progression of discovery] by disobeying orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate.'

*LaGrande v. Adecco*, 2006 WL 2806402, at *10 (N.D.N.Y. Sep. 28, 2006) (citations omitted).  "If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal."  *MacDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988) (quoting *Maness v. Meyers*, 419 U.S. 449, 458, 95 S.Ct. 584, 591 (1975) (internal quotations omitted)).  In the words of the Second Circuit, when faced with obstructionist conduct of a *pro se* plaintiff and reviewing the penalty of dismissal, "[p]laintiff's 'wilful, obstinate refusal to play by the basic rules of the system upon whose very power [he] is calling [on] to vindicate his rights cannot be tolerated any longer."  *McDonald*, 850 F.2d at 124 (quoting *McDonald v. Head Criminal Court Supervisor Officer*, 117 F.R.D. 55, 58 (S.D.N.Y. 1987)).

*Goord*, No. 9:03-CV-01524, 2007 WL 2789499, at * 5 (N.D.N.Y. Sept. 24, 2007) (Kahn, J. and Treece, J.) (citing *Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005)) (other citation omitted); *see also*, *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009) (per curiam); *Davis v. Kelly*, 160 F.3d 917, 920 (2d Cir. 1998).

IV.     <u>SUMMARY, RECOMMENDATION AND ORDER</u>

In order to adequately defend against plaintiff's claims in this action, the defendants are entitled to take his deposition.  The defendants have opted to take Gonzalez's deposition at Great Meadow and apparently intend to transfer him to that facility temporarily for that purpose.  The plaintiff has no basis for objecting to the taking of his deposition, nor can he legitimately complain regarding the designated location.  Because plaintiff's conduct to date in resisting the taking of his deposition has not been sufficiently egregious to warrant dismissal of his complaint, and he has thus far not disobeyed a direct court order, I am not recommending dismissal of his complaint at this stage in the proceedings.  The plaintiff is cautioned, however, that any failure to comply with the court order now being issued will result in my recommendation that his complaint in this action be dismissed in its entirety.

Based upon the foregoing it is hereby respectfully

RECOMMENDED that defendants' motion to dismiss plaintiff's complaint for failure to appear for deposition (Dkt. No. 36) be DENIED, without prejudice; and it is further

RECOMMENDED that plaintiff's complaint be dismissed as against defendant J. Nadeau, without prejudice, based upon plaintiff's failure to effectuate service upon that defendant within the prescribed time periods; and it is further

ORDERED that plaintiff appear for deposition in this action at the Great Meadow Correctional Facility provided that he is given at least fifteen days notice, in writing, of the taking of the deposition; and it is further

ORDERED that the discovery deadline in this case be and hereby is extended until February 29, 2012, for the limited purpose of permitting defendants to take plaintiff's deposition, and that the motion filing deadline in the case be and is hereby extended until May 31, 2012.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report, recommendation and order upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:     January 6, 2012
           Syracuse, NY



Not Reported in F.Supp.2d, 1999 WL 9847 (S.D.N.Y.)

(Cite as: 1999 WL 9847 (S.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Lawrence SHUSTER, Plaintiff,
v.
NASSAU COUNTY, et al., Defendants.
No. 96 Civ. 3635(JGK).

Jan. 11, 1999.

Lawrence Shuster, Fountain Valley, CA, for the Plaintiff, pro se.

Gina M. Amorini, Mineola, NY, for Nassau County.

Michael Kennedy, Assistant Attorney General, Office of the Attorney General, Division of State Counsel, Litigation Bureau, New York, NY, for Hon. Zelda Jones & NYS Dept. of Motor Vehicles.

*OPINION AND ORDER*

KOELTL, J.

   **\*1** The plaintiff filed this action against various defendants alleging false arrest and malicious prosecution for violations of the New York Vehicle and Traffic Law (VTL). The docket sheet reflects that the complaint was filed on May 15, 1996. Defendants Judge Zelda Jonas, the New York State Department of Motor Vehicles (collectively, the "State defendants"), and Nassau County, who have not answered or moved with respect to the complaint or the amended complaint, have requested that the amended complaint be dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure because they have never been properly served with the summons and complaint or amended complaint. The docket sheet in this action does not reflect any service on any defendant. The Court therefore by Order dated February 17, 1998 directed the plaintiff to advise the Court in writing why this action should not be dismissed for failure to serve the summons and complaint on the defendants within 120 days of filing of the complaint. While the plaintiff has responded, it is

clear that he has never properly served any of the defendants.

I.

   Rule 4(m) authorizes a court upon motion to dismiss an action without prejudice as against a defendant if service of the summons and complaint is not made upon that defendant within 120 days after the filing of the complaint. This Rule also authorizes courts to dismiss an action sua sponte, provided that the court first gives notice to the plaintiff. *See* Fed.R.Civ.P. 4(m); *see also Gowan v. Teamsters Union (237),* 170 F.R.D. 356, 359-60 (S.D.N.Y.1997) (dismissing action filed by a pro se, in forma pauperis plaintiff pursuant to Rule 4(m)).

   Separate rules govern service upon state agencies and upon individuals. Under the Federal Rules of Civil Procedure, "[s]ervice upon a state ... or other governmental organization ... shall be effected by delivering a copy of the summons and of the complaint to its chief executive officer or by serving the summons and complaint in the manner prescribed by the law of that state...." Fed.R.Civ.P. 4(j)(2). Service upon an individual is made by delivering a copy of the summons and complaint to the individual personally, by leaving a copy thereof at the individual's dwelling house or usual place of abode with a person of suitable age and discretion residing there, or by delivering a copy to an agent authorized to receive service of process. *See* Fed.R.Civ.P. 4(e)(2). The rule further provides that an individual may also be served in accordance with state law. *See* Fed.R.Civ.P. 4(e)(1).

   Under New York law, a state officer sued in an official capacity or a state agency must be served by:

   (1) delivering the summons to such officer or to the chief executive officer of such agency or to a person designated by such chief executive officer to receive service, or (2) by mailing the summons by certified mail, return receipt requested, to such officer or to the chief executive officer of such agency, and by personal service upon the state in the manner provided by subdivision one of this section.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 9847 (S.D.N.Y.)

(Cite as: 1999 WL 9847 (S.D.N.Y.))

**\*2** N.Y. C.P.L.R. 307(2). Subdivision (1) provides that "personal service upon the state shall be made by delivering the summons to an assistant attorney-general at an office of the attorney-general or to the attorney-general within the state." Hence, "[s]ervice on a state officer may be made either by personal delivery to the officer or by certified mail to the officer. Service on a state agency may be made either by personal delivery to the chief executive officer of the agency (or the chief executive's designee) or by certified mail to the chief executive." N.Y. C.P.L.R. 307(2) supplemental practice commentaries (McKinney 1998).

The New York rules for serving an in-state natural person parallel Fed.R.Civ.P. 4(e)(1), but with additional requirements. Like Rule 4, service may be by personal delivery to the person being served, see N.Y. C.P.L.R. 308(1), or to a duly appointed agent for service. See N.Y. C.P.L.R. 308(3). Service may also be made by delivering the summons to a person of suitable age and discretion at the actual place of business, dwelling place, or usual place of abode of the person to be served, provided that the summons is also mailed to that person's last known residence or sent by first class mail to that person's actual place of business. See N.Y. C.P.L.R. 308(2).

In addition, where service under sections 308(1) and (2) cannot be made with due diligence, service may be effected by nailing the summons to the door of the actual place of business, dwelling place, or usual place of abode of the person to be served, and by mailing the summons to that person at his or her last known residence or by sending the summons by first class mail to that person's actual place of business. See N.Y. C.P.L.R. 308(4). Under sections 308(2) and (4), the delivery and mailing must occur within twenty days of each other. See N.Y. C.P.L.R. 308(2) & (4).

II.

On May 15, 1996, the plaintiff filed the original complaint in this action. On August 14, 1996, the plaintiff filed an amended complaint. In February 1998, well past the 120-day limit for timely service of process, the State defendants requested dismissal of the action pursuant to Rule 4(m). (See Letter from Michael Kennedy dated Feb.

13, 1998). The plaintiff was ordered to advise the Court by March 2, 1998 why the case should not be dismissed on that basis. (See Order dated Feb. 17, 1998). The plaintiff filed a response dated February 17, 1998. The plaintiff also filed a response received on August 13, 1998. In August 1998, more than two years after the original complaint was filed and nearly two years after the amended complaint was filed, the State defendants and defendant Nassau County requested dismissal of this action on the grounds that they still had not been served. (See Letter from Michael Kennedy dated Aug. 3, 1998; Letter from Gina Amorini dated Aug. 3, 1998).

(A)

The plaintiff does not argue that he complied with Rule 4 by delivering the summons and complaint to the chief executive officer of the DMV. Nor does he allege that he delivered the summons and complaint to Judge Jonas, who is sued in her personal and official capacities, personally or to a person of suitable age and discretion at Judge Jonas' dwelling place or usual place of abode. Nor has there been compliance with N.Y. C.P.L.R. 307(2) with respect to either the DMV or Judge Jonas. With respect to the DMV, there has been neither personal delivery to the chief executive officer of the DMV or the chief executive's designee or by certified mail to the chief executive with personal service on an assistant attorney-general or the attorney-general. The plaintiff also has not complied with similar provisions with respect to Judge Jonas.

**\*3** Instead, the plaintiff contends that he had served the State defendants by twice delivering the summons and complaint to the Nassau County Regional Office of the State Attorney General, on July 30, 1996 and February 6, 1998. (See Return of Service (unsigned), attached to Feb. 17, 1998 Shuster Letter). To support his argument that service on the Nassau office constituted effective service on the State defendants, the plaintiff submitted a copy of a letter from the Office of the Attorney General stating that its Nassau office would accept service on behalf of, among others, Judge Zelda Jonas in a different action. In addition, he argues that the complaint was also attached to the Order to Show Cause which was served on the Nassau office. (See Order to Show Cause attached to Feb. 17, 1998 Shuster Letter). The plaintiff also argues that under New York State law, service on the Attorney General's Office is sufficient.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 9847 (S.D.N.Y.)

(Cite as: 1999 WL 9847 (S.D.N.Y.))

Under New York law, delivering the summons and complaint to a regional office of the State Attorney General does not by itself constitute effective service on a state agency or an individual officer sued in his official capacity. *See Berkowitz v. New York City Bd. of Educ.,* 921 F.Supp. 963, 968 (S.D.N.Y.1996); *Dawkins v. Hudacs,* 159 F.R.D. 9, 10 (N.D.N.Y.1994); *Town of Clarkstown v. Howe,* 206 A.D.2d 377, 614 N.Y.S.2d 327, 328 (2d Dep't 1994); *Sannella v. Regan,* 111 A.D.2d 964, 490 N.Y.S.2d 61 (3d Dep't 1985). Moreover, there is no evidence that the Nassau office was authorized to accept service on behalf of the DMV. As to Judge Jonas, the fact that the Nassau office had been designated to receive service on her behalf in another case does not authorize that office to accept service for her in this case.

The plaintiff also contends that he served the State defendants by handing their attorney a copy of the complaint in this Court on or about July 30, 1996. Even if proven, this is also not sufficient under the Federal Rules and New York law unless the attorney is authorized by appointment or by law to receive service of process. *See United States v. Ziegler Bolt and Parts Co.,* 883 F.Supp. 740, 749 (Ct. Int'l Trade 1995); *Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 709 F.Supp. 1279, 1289 (S.D.N.Y.1989); *Gibbs v. Hawaiian Eugenia Corp.,* 581 F.Supp. 1269, 1271 (S.D.N.Y.1984). The plaintiff has neither alleged nor provided proof that the State defendants intended to be bound by the acceptance of the complaint by their attorney. While the authority of an attorney to accept service may be implied from the surrounding circumstances indicating the intent of the client, *J & L Parking Corp., Inc. v. United States,* 834 F.Supp. 99, 102 (S.D.N.Y.1993); *Olympus Corp. v. Dealer Sales and Serv., Inc.,* 107 F.R.D. 300, 305 (S.D.N.Y.1985), there is no evidence in this case to establish such intent. The State defendants never acted in any way to indicate that the attorney was authorized to accept service of process. The State defendants never answered the Complaint or filed a responsive pleading, and specifically asserted in correspondence that there had been no service of process. Indeed, the State defendants notified the plaintiff at least as early as February 1998 that service was insufficient. (*See* Feb. 13, 1998 Kennedy Letter).

**\*4** Although the plaintiff is acting *pro se,* his failure to comply with basic procedural rules cannot be excused, particularly in light of the fact that he is familiar with litigation. He has already filed numerous other lawsuits and numerous motions. *See, e .g., Shuster v. Eiberson,* No. CV-92-1524 (E.D.N.Y. Apr. 23, 1993); *Shuster v. Fenster,* No. 92 Civ. 2323; *Shuster v. Citibank,* No. 93 Civ. 4182, 1994 WL 267550 (S.D.N.Y. June 15, 1994); *Shuster v. Prudential Securities Inc.,* No. 91 Civ. 0991, 1991 WL 102500 (S.D.N.Y. June 6, 1991); *Shuster v. Olem,* 96 Civ.1993, 1997 WL 167046 (S.D.N.Y. Apr. 8, 1997); *Shuster v. Eiberson,* No. 97 Civ.1988, slip. op. (S.D.N.Y. Aug. 12, 1997); *Shuster v. Oppleman,* No. 96 Civ. 1689 (S.D.N.Y. filed Mar. 7, 1996); *Shuster v. Voel,* No. 96 Civ. 8240 (S.D.N.Y. filed Nov. 1, 1996). Accordingly, the State defendants' request for dismissal without prejudice pursuant to Rule 4(m) is granted.

(B)

The docket sheet also does not reflect service of process on defendant Nassau County. Fed.R.Civ.P. 4(1) requires proof of service in the form of an affidavit by the server. *See* Fed.R.Civ.P. 4(1). While it is true that, by its terms, the failure to comply with Fed. R. Civ. 4(1) does not affect the validity of the service, the plaintiff has submitted no proof of timely service for any of the defendants. Nor has the plaintiff explained how he purportedly served Nassau County pursuant to federal or state law. The plaintiff has offered no explanation for his failure to serve in response to the Court's directive or to Nassau County's letter requesting dismissal. Nor has he requested an extension of the time to serve. Because the plaintiff was given notice that the case would be dismissed absent a showing of good cause for the failure to serve the defendants, and has failed to make this showing, defendant Nassau County's application for dismissal without prejudice pursuant to Rule 4(m) is also granted. *See, e.g., Urquidez v. Officer Lyon # 7505,* No. 97 Civ. 884, 1997 WL 414158 at \*1 (S.D.N.Y. July 23, 1997).

(C)

Similarly, the docket sheet also does not reflect that any of the remaining defendants named in the amended complaint have been served. They include individual

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 9847 (S.D.N.Y.)

(Cite as: 1999 WL 9847 (S.D.N.Y.))

defendants D. Dillon, N. Levy, Richard Kramer, "Mr. Rainville," Skip Dwyer, R. Jackson, A. Aducci, and "U.S.A. (Bruce [illegible] )," each of whom is sued in his or her official and personal capacities; the Nassau County Republican Party; and unnamed "clients of Frank Cocozzelli" (collectively, the "remaining defendants"). Although the 120-day limit for service of process has long expired, courts generally consider three factors in determining whether "good cause" exists to warrant an extension of the time for service:

(1) whether the delay in service was "the result of mere inadvertence," or whether there has been a "reasonable effort" to effect service[,] ... (2) prejudice to the defendant[,] ... [and 3] whether or not the plaintiff has moved under Fed.R.Civ.P. 6(b) for an enlargement of time in which to effect service.

**\*5** *Gordon v. Hunt,* 116 F.R.D. 313, 319-21 (S.D.N.Y.1987).

These factors do not support an extension of the time to serve the remaining defendants in this case. The plaintiff was directed by the Court to explain the delay in serving the defendants but failed to do so. The plaintiff has not moved for additional time to serve any of the defendants. Moreover, to permit service at this late date would unfairly prejudice the remaining defendants. *See Gowan,* 170 F.R.D. at 359-60. The delay in proceeding against them has been excessive. Accordingly, pursuant to Rule 4(m), the case against the remaining defendants is dismissed without prejudice.

### III.

The plaintiff has also filed a partially illegible "letter and motion for order" in which he seeks an injunction to stop further court proceedings in Nassau County for alleged violations of section 511 of the New York Vehicle and Traffic Law. He argues that the injunction should be granted because all of his past violations of the Vehicle and Traffic Law have been expunged from his record. The Court has already considered and denied a similar motion by the plaintiff on the grounds that the plaintiff failed to show either irreparable harm or a likelihood of success on the merits. *See Shuster v. Nassau County,* 948 F.Supp. 282 (S.D.N.Y.1996). In the present motion, which consists of

one paragraph, the plaintiff offers no new facts to establish either of these requirements for a preliminary injunction. Therefore, the plaintiff's motion for a preliminary injunction is denied.

### IV.

The plaintiff also moves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). This motion is plainly improper because there have been no responsive pleadings because the defendants were never effectively served. The motion is therefore denied.

### V.

The plaintiff also moves for an order directing Nassau County to send to the plaintiff a copy of the transcript of a 1996 proceeding before Judge Eiberson in which Judge Eiberson allegedly dismissed various Vehicle and Traffic Law charges against the plaintiff. To the extent that this is a discovery request, it is denied as moot.

### CONCLUSION

For the reasons explained above, this action is dismissed without prejudice. The plaintiff's motion for a preliminary injunction is denied. The plaintiff's motion for judgment on the pleadings is denied. The plaintiff's motion for an order directing Nassau County to produce a court transcript is denied as moot.

SO ORDERED.

S.D.N.Y.,1999.

Shuster v. Nassau County
Not Reported in F.Supp.2d, 1999 WL 9847 (S.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2011 WL 5223652 (S.D.N.Y.)

(Cite as: 2011 WL 5223652 (S.D.N.Y.))

**C**

Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
Nonie PEGORARO, Plaintiff,
v.
Ernesto MARRERO, Individually and in His Capacity
as Corporate Compliance Officer; New York City
Health and Hospital Corporation; Alan Aviles,
President, New York City Health and Hospital
Corporation; City of New York, Defendants.
No. 10 Civ. 00051(VM)(KNF).

Nov. 2, 2011.
**MEMORANDUM AND ORDER**

KEVIN NATHANIEL FOX, United States Magistrate
Judge.

**\*1** Plaintiff Nonie Pegoraro alleges her employment
was terminated by the defendants wrongfully, based on her
whistle blowing activities. She seeks damages and
injunctive relief. Before the Court is the plaintiff's motion
"to compel production of discovery demands and
production of witnesses demanded for depositions" and
for "attorney's fees to Plaintiff due to the necessity of
filing this motion as authorized by Rule 37(a) ( [5] )A of
the Federal Rules of Civil Procedure." The defendants
oppose the motion.

The plaintiff contends that, on February 15, 2011, she
"served her Document Requests, Interrogatories and
Notices of Deposition for ten witnesses," and that the
defendants failed to produce: (1) documents regarding
previous whistle-blower litigation against Ernesto Marrero
("Marrero"); (2) notes of interviews conducted by the
defendants' agents in connection with the plaintiff's
complaint of retaliation; (3) notes of investigations and
interviews by the staff of the defendants' Office of
Inspector General ("OIG"); (4) documents relating to a
lawsuit by a former employee against Marrero and Health
and Hospital Corporation ("HHC") involving
whistleblowing; (5) e-mail communications among the
plaintiff and other employees of the defendants; and (6)
Marrero's personnel folder. According to the plaintiff, the
documents requested contain relevant information. For
example, the plaintiff argues, Marrero's personnel folder
"will include documentation of his history targeting
whistle blowers and the ethical complaints made against
him by Deborah Gregory a whistle blower he terminated
at Bellevue." Moreover, e-mail communications among
the plaintiff, Dr. Ramanathan Raju ("Dr.Raju") and other
employees will show that the plaintiff's "performance was
not an issue and that corporate officers have been
discussing how to terminate Plaintiff illegally."

The plaintiff maintains that the defendants also failed
to respond to the following interrogatories requesting that
they identify: (a) cases against Marrero based on
whistle-blowing (Interrogatory No. 1) and the tapes and
reports written about the related investigations
(Interrogatory No. 6); (b) individuals contacted by
Marrero and Alan Aviles ("Aviles") in connection with
this case (Interrogatory No. 8); (c) research programs
terminated or suspended during the plaintiff's tenure "as a
result of non compliance" and complaints against Marrero
by Deborah Gregory ("Gregory") (Interrogatory No. 11);
(d) the written warnings about Marrero's ethics and
compliance issues provided to the defendants by Jean
Gatewood (Interrogatory No. 15); (e) audits conducted at
Harlem Hospital during the plaintiff's tenure (Interrogatory
No.17); (f) "reports provided by Huron Consulting, an
outfit hired by Plaintiff with executive approval to audit
the research process" (Interrogatory No. 19); (g) the audits
conducted by the plaintiff at Bellevue Hospital in
reference to Research Billings Control (Interrogatory No.
24); and (h) non-privileged discussions between Richard
Levy, Esq. and the plaintiff (Interrogatory No. 25). The
plaintiff contends that her interrogatories will elicit
relevant information revealing that the researchers who
complained about the plaintiff are those whose work she
audited at Aviles's direction. Furthermore, according to the
plaintiff, the defendants should "identify previous cases of
retaliation against Deborah Gregory" as well as the notes
and records of the investigation of the plaintiff's retaliation
complaints.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5223652 (S.D.N.Y.)

(Cite as: 2011 WL 5223652 (S.D.N.Y.))

**\*2** The plaintiff contends, the defendants objected to her request to depose Aviles, HHC's president, and Dr. Raju, HHC's executive vice president, "solely on the ground that these witnesses are high agency officials." Additionally, the defendants objected to the plaintiff's "request to depose Ms. Lisa Lee ["Lee"] and Mr. Louis Panarella ["Panarella"], two investigators from defendants' Inspector General's office ... on the ground that there is an open investigation." The plaintiff argues that Aviles should testify at a deposition because he approved the plaintiff's actions and she should be allowed to probe him about the facts concerning her termination. The plaintiff also maintains that Dr. Raju should give deposition testimony because he gave the plaintiff an "outstanding performance rating for 2007–2008," but stated that she was disloyal when she spoke to the New York Times, and the plaintiff should be allowed to probe him on that issue. Furthermore, investigators Lee and Panarella should testify, at depositions, because they conducted an investigation about the plaintiff's complaint of retaliation and she "should have the right to depose" them.

The defendants contend, in the part of their memorandum of law entitled "Preliminary Statement," that the plaintiff's motion should be denied because it is untimely. According to the defendants, the plaintiff's discovery requests were late because she was required, by the scheduling order dated September 24, 2010, to serve her document requests by October 25, 2010, and interrogatories by November 22, 2010. Moreover, discovery closed on January 31, 2011. The defendants maintain that the plaintiff failed to comply with the schedule, serving her discovery requests on February 15, 2011, after the period for pretrial discovery closed. The defendants contend that Aviles and Dr. Raju, are "high level government officials" and do not possess any unique knowledge relevant to this action. The defendants maintain that the plaintiff testified at her deposition that she suspended Columbia University from conducting research on the instructions of certain attorneys, not Aviles, and it is false for the plaintiff to argue that "the President of HHC, who was not plaintiff's supervisor and who was several levels above the plaintiff's supervisor in the hierarchy, would be so involved with plaintiff's duties that he personally approved plaintiff's improper and unauthorized act of suspending Columbia from conducting further research." Furthermore, according to the defendants, Aviles did not approve the plaintiff's termination and, even if he supported it, his knowledge about it "is far from unique." The defendants contend that "it is unclear how a purported statement by Dr. Raju that he wanted to terminate plaintiff's employment nearly a year before she engaged in a protected activity can possibly demonstrate she was terminated for her complaints to the OIG and the New York Times in April 2009." Moreover, Dr. Raju has no unique knowledge about the reasons for the plaintiff's termination, and it is "unnecessary to depose Dr. Raju because he did not discuss or make any decisions concerning the termination of plaintiff's employment." With respect to the plaintiff's request to depose Lee and Panarella, the defendants contend they will produce them, "[a]s long as plaintiff limits her inquiry to her complaint that her employment was terminated in retaliation for filing prior complaints with the OIG and conducts the depositions after the OIG concludes its investigation into that retaliation claim." According to the defendants, "[i]t is inappropriate to inquire into other areas of OIG investigations, which are protected by the law enforcement privilege." The defendants contend that the plaintiff can obtain information from other sources, and deposing Lee and Panarella, while the investigation is active, would be compromising. They argue that their objections to the plaintiff's document request Nos. 3, 5, 12, 14, 15, 19 and 26 and interrogatories Nos. 1, 6, 8, 11, 15, 17, 19, 24 and 25 are proper because those requests seek irrelevant information, and the plaintiff "seeks discovery in an effort to prove that her complaints to the OIG and the New York Times were true."

## LEGAL STANDARD

**\*3** Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5223652 (S.D.N.Y.)

(Cite as: 2011 WL 5223652 (S.D.N.Y.))

Fed.R.Civ.P. 26(b)(1). "[T]he scope of discovery under Fed.R.Civ.P. 26(b) is very broad, 'encompass[ing] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.,* 964 F.2d 106, 114 (2d Cir.1992) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978)). "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed.R.Civ.P. 37(a)(3)(B). Motions to compel made pursuant to Fed.R.Civ.P. 37 are "entrusted to the sound discretion of the district court." *United States v. Sanders,* 211 F.3d 711, 720 (2d Cir.2000).

### Timeliness

Although the defendants's preliminary statement to their memorandum of law contends that the plaintiff's motion should be denied as untimely, the defendants did not make any argument or citation to any authority in support of that contention in their memorandum of law, in violation of Local Civil Rule 7.1. It appears that both the plaintiff and the defendants failed to comply with the court's September 24, 2010 scheduling order. Since the defendants used their failure to comply with the discovery schedule to their advantage, and do not claim the plaintiff's failure to comply with the discovery schedule prejudiced them in any way, equitable estoppel principles militate against a finding that the plaintiff's motion is untimely based on the plaintiff's failure to comply with the discovery schedule. *See Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.").

### Rule 30 Depositions by Oral Examination

Rule 30 of the Federal Rules of Civil Procedure provides "A party may, by oral questions, depose any person, including a party, without leave of court except as provided in **Rule 30( a)**(2). The deponent's attendance may be compelled by subpoena under Rule 45." Fed.R.Civ.P. 30(a)(1). "A party who wants to depose a person by oral questions must give reasonable written

notice to every other party. The notice must state the time and place of the **deposition** and, if known, the deponent's name and address." Fed.R.Civ.P. 30(b)(1). A court "may, on motion, order sanctions if: (i) a party or a party's officer, director, or managing agent ... fails, after being served with proper notice, to appear for that person's **deposition**." Fed.R.Civ.P. 37(d)(1)(A).

**\*4** Although the plaintiff stated that she served her "Notices of Deposition for ten witnesses," she provided no evidence of those notices or any details about their content. In support of her motion to compel, the plaintiff provided a copy of her letter to the court, dated June 13, 2011, in which she stated that "Defendants' witnesses were scheduled to be deposed in the second and third week of March 2011. These dates were cancelled to accommodate Defendants's scheduling conflicts and opportunity to receive Defendants' discovery responses." She also stated in that letter that, on June 9, 2011, the defendants informed her that they "will not be producing four witnesses because two are high agency officials and because the other two are working on the Pegoraro investigation which is still an open investigation." It appears from the plaintiff's motion that the plaintiff's notices of deposition were cancelled by the plaintiff to accommodate the defendants' schedule and no subsequent notices of deposition were given to the four witnesses at issue here: Aviles, Dr. Raju, Lee and Panarella. In support of her motion to compel, the plaintiff failed to provide evidence of any deposition notices. Moreover, the plaintiff does not seek sanctions pursuant to Rule 37(d) for failure of a party to attend its own deposition. Since the plaintiff may: (i) depose by oral questions any party or person, except under certain circumstances, which do not appear to apply here; and (ii) compel a proposed deponent's attendance by subpoena, under Rule 45 of the Federal Rules of Civil Procedure, *see* Fed.R.Civ.P. 30, Rule 37 does not contemplate a motion for an order "to compel ... production of witnesses demanded for depositions." Although Rule 37(d) provides sanctions for a party or a party's officer's failure to attend its own deposition, no evidence was presented and no argument made that the witnesses at issue actually failed to attend their depositions. Absent evidence that the witnesses at issue were given reasonable written notices stating the time and place of their depositions, as required by Rule 30(b)(1), or that they failed to comply with subpoenas compelling their

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5223652 (S.D.N.Y.)

(Cite as: 2011 WL 5223652 (S.D.N.Y.))

attendance, pursuant to Rule 45, the Court has no authority to compel witnesses, including the parties, to attend any depositions which were neither noticed nor for which subpoenas were issued.

### Rule 33 Interrogatories to the Defendants

Rule 33 of the Federal Rules of Civil Procedure provides that a "party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed.R.Civ.P. 33(a)(1). "The grounds for objecting to any interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed.R.Civ.P. 33(b)(4). "[B]oilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy," while producing "no documents and answer[ing] no interrogatories ... are a paradigm of discovery abuse." *Jacoby v. Hartford Life & Accident Ins. Co.*, 254 F.R.D. 477, 478 (S.D.N.Y.2009). A party resisting discovery has the burden of showing "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive, ... by submitting affidavits or offering evidence revealing the nature of the burden." *Compagnie Francaise d'Assurance pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y.1984) (citation omitted).

**\*5** The defendants objected that the plaintiff's Interrogatory: (a) No. 1 [FN1] is overbroad in time and scope and seeks irrelevant information; (b) No. 6 [FN2] is overbroad in scope and "seeks information that is protected from disclosure by the law enforcement privilege and investigative privilege or any other applicable privilege and is not relevant"; (c) No. 8 [FN3] is overbroad in scope, vague, ambiguous and seeks irrelevant information; (d) No. 11 [FN4] is overbroad in time and scope, "vague and ambiguous with respect to the terms 'ethical and non ethical complaints,' and seeks information in contravention of Local Civil Rule 33.3, and is not relevant"; (e) No. 15 [FN5] "is overbroad with respect to scope, assumes facts that have not been established, vague and ambiguous with respect to 'allegations made by Jean Gatewood,' and seeks information in contravention of Local Civil Rule 33.3, [and] is not relevant"; (f) No. 17 [FN6]

is overbroad in time and scope, "assumes facts that have not been established, vague and ambiguous with respect to the term 'ethical and non ethical complaints,' and seeks information in contravention of Local Civil Rule 33.3, [and] is not relevant"; (g) No. 19 [FN7] is overbroad in scope and seeks irrelevant information; (h) No. 24 [FN8] is overbroad in scope, "unduly burdensome" and seeks irrelevant information; and (i) No. 25 [FN9] is overbroad in scope, in contravention of Local Civil Rule 33.3 and irrelevant.

FN1. Interrogatory No. 1 states:

Identify all lawsuits or administrative agency actions at federal, state, and city or local levels initiated against individual defendants and HHC, not including the City of New York, that are based only on whistle-blowing retaliation since January 1, 2007. Please identify the parties, date action was filed, status disposition, and jurisdiction where action was filed. Identify the documents used in providing the answer to this interrogatory and persons consulted in providing this answer.

FN2. Interrogatory No. 6 states: "Identify all the reports, if any, written by the staff of the office of the HHC Inspector–General in reference to any complaints made by Nonie Pegoraro or Nancy Moynihan. Identify the individuals and documents consulted in providing this answer."

FN3. Interrogatory No. 8 states: "Identify separately all persons, in public and private employment, who have been contacted by the two natural persons, Mr. Marrero and Mr. Aviles, who are defendants in this case, since the two defendants became aware of this case and identify the documents and persons contacted in providing this response."

FN4. Interrogatory No. 11 states: "Identify all the ethical and non ethical complaints former employee, Deborah Gregory, Nonie Pegoraro, and any other employee made against Defendant Ernesto Marrero since January 2, 2005."

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5223652 (S.D.N.Y.)

(Cite as: 2011 WL 5223652 (S.D.N.Y.))

FN5. Interrogatory No. 15 states: "Identify any and all allegations made by Jean Gatewood of NYU School of Medicine concerning Ernesto Marrero's failure to implement the ticketing system to stop the illegal billing of research related services."

FN6. Interrogatory No. 17 states: "Identify the reasons for the dissolution of Harlem Hospital's IRB during the tenure of Pegoraro with HHC and identify any audit conducted by Pegoraro or any other person or entity in relationship to any IRB at Harlem Hospital and identify the documents and persons contacted in answering this interrogatory."

FN7. Interrogatory No. 19 states: "Identify any report, findings, and recommendations provided to defendants by Huron Consulting Firm in or after December 2007 concerning research management operations or any other areas. Identify the persons and documents consulted in providing this answer."

FN8. Interrogatory No. 24 states: "Identify all audits conducted by Pegoraro in reference to Bellevue Research Billing Controls and Accounting procedures. Please identify the individuals and documents consulted in providing this answer."

FN9. Interrogatory No. 25 states: "Identify the contents of all discussions between Richard Levy, Esq., and Pegoraro in retaliation to questions from and providing information to the New York Times. Please identify the individuals and documents consulted in providing this answer."

*Interrogatory No. 1*

The defendants contend that the plaintiff does not define "administrative agency action" or set forth any reason for requiring such information since any prior lawsuits against HHC "are not any sort of evidence that plaintiff's employment was terminated because she attempted to have the *New York Times* write a story about purported corruption at HHC or for filing complaints with the OIG." According to the defendants, "identification of lawsuits against HHC and its President would be a monumental and burdensome task." Moreover, Interrogatory No. 1 "is beyond the scope of Local Civil Rule 33.3."

The defendants' belated objection to Interrogatory No. 1, based on the ground that it is beyond the scope of Local Civil Rule 33.3, is waived because it was not stated as an objection in their response to Interrogatory No. 1, and no good cause was shown for that failure. *See* Fed.R.Civ.P. 33(a)(4). In their answer to Interrogatory No. 1, the defendants failed to: (a) object that it is not clear; and (b) specify that it does not define "administrative agency action." They waived those objections by failing to assert them in their answer to Interrogatory No. 1. Moreover, apart from not explaining why answering Interrogatory No. 1 "would be a monumental and burdensome task," the defendants also waived that objection because they failed to assert it in their answer to Interrogatory No. 1, without showing good cause for the failure. The plaintiff's Interrogatory No. 1 appears reasonable in time and scope because it covers the relevant time period starting in 2007 and is limited to prior lawsuits against HHC and individual defendants. Interrogatory No. 1 is relevant to the claims and defenses in this action because the plaintiff alleged instances of other retaliation by the defendants against whistle-blowers. The defendants' contention that the prior lawsuits against HHC "are not any sort of evidence that plaintiff's employment was terminated because she attempted to have the *New York Times* write a story about purported corruption at HHC or for filing complaints with the OIG" is of no import. This is so because the scope of discovery is broad, and the relevant information sought by Interrogatory No. 1 "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The information the plaintiff seeks through Interrogatory No. 1 appears to be of a type that will lead to the discovery of admissible evidence. Therefore, the defendants must answer Interrogatory No. 1.

*Interrogatory No. 6*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5223652 (S.D.N.Y.)

(Cite as: 2011 WL 5223652 (S.D.N.Y.))

**\*6** The defendants contend that part of Interrogatory No. 6 seeking information concerning Nancy Moynihan, whose employment with HHC, according to the defendants, was terminated by the plaintiff, is irrelevant to her claims. The only factual allegation in the complaint about "Nancy Moynihan" is in paragraph 123, namely, that during "the HHC Executive Corporate Compliance meeting at the request of Mr. Stanley Pruszynski," on an unspecified date, "Dr. Ramanathan Raju, Barbara Keller, Stacy–Ann Christian, Nancy Moynihan, Joanne Lischin, and Maxine Katz were present." The plaintiff did not make any other allegations: (a) about "Nancy Moynihan" that would identify who she might be or what acts or omissions are related to her; or (b) in connection with any complaints about which the HHC Inspector General's staff may have written any reports. Thus, the part of Interrogatory No. 6 seeking information in connection with "Nancy Moynihan" is irrelevant and need not be answered.

A privilege exemption from discovery must be made expressly and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed.R.Civ.P. 26(b) (5)(A). The federal law enforcement investigative privilege is a qualified privilege whose purpose is "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." United States v. Myerson, 856 F.2d 481, 483–84 (2d Cir.1988). In determining whether the law enforcement investigative privilege applies, courts must balance the harm arising from public disclosure of investigatory files against the litigant's substantial need for information as well as the public's interest in disclosure. See United States v. Nixon, 418 U.S. 683, 709–10, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). "[T]he ultimate burden of demonstrating the law enforcement privilege is on the party asserting the privilege." Dinler v. The City of New York, 607 F.3d 923, 945 n. 23 (2d Cir.2010).

The defendants failed to: (i) produce any privilege log; (ii) describe, with any specificity, the nature of the information withheld; (iii) explain how and why the law enforcement investigative privilege applies to the information sought; or (iv) describe what harm will result from disclosure. Furthermore, they failed to explain why the harm from disclosure warrants protection more than the substantial benefit to the plaintiff warrants disclosure. The defendants did not discharge their burden in showing that the law enforcement investigative privilege applies. The part of Interrogatory No. 6 which seeks information concerning the plaintiff is limited in scope, as it covers only written reports by "the office of the HHC Inspector–General in reference to any complaints made by Nonie Pegoraro" and must be answered.

*Interrogatory No. 8*

**\*7** The defendants' objections that Interrogatory No. 8 is overbroad in scope, vague and ambiguous are proper. The plaintiff seeks identification of "all persons" contacted by Marrero and Aviles since they became aware of this case, without specifying any subject matter or otherwise limiting the scope of the interrogatory to any matter relevant to this action. Therefore, the defendants need not answer Interrogatory No. 8.

*Interrogatory No. 11*

The defendants' objection that Interrogatory No. 11 is "vague and ambiguous with respect to the term 'ethical and non ethical complaints' " is disingenuous because "ethical and non ethical complaints" is just another way of saying all complaints. The part of the plaintiff's Interrogatory No. 11, seeking information pertinent to former employee, Deborah Gregory, is irrelevant because no allegation exists in the complaint about Deborah Gregory and the plaintiff failed to identify who she might be or how she is relevant to this action. Local Civil Rule 33.3 provides

Unless otherwise ordered by the Court, at the commencement of discovery, interrogatories will be restricted to those seeking names of witnesses with knowledge of information relevant to the subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location and general description of relevant documents, including pertinent insurance agreements, and other

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5223652 (S.D.N.Y.)

(Cite as: 2011 WL 5223652 (S.D.N.Y.))

physical evidence, or information of a similar nature.

The defendants are correct that Interrogatory No. 11 is in contravention of Local Civil Rule 33.3; thus, they need not respond to it.

*Interrogatory No. 15*

Interrogatory No. 15 is overbroad in its scope and vague and ambiguous. The plaintiff did not specify where, when and to whom any "allegations" were made by Jean Gatewood. Interrogatory No. 15 also fails to comply with Local Civil Rule 33.3, and it need not be answered.

*Interrogatory No. 17*

Interrogatory No. 17 violates Local Civil Rule 33.3, and need not be answered.

*Interrogatory No. 19*

Interrogatory No. 19 is overbroad in its scope because it seeks "any report, findings, and recommendations provided to defendants by Huron Consulting Firm in or after December 2007 concerning research management operations or any other areas," without limiting the scope to the subject matter or issues relevant to this action. Moreover, it also seeks irrelevant information, and it need not be answered.

*Interrogatory No. 24*

Interrogatory No. 24 is relevant to the plaintiff's claims and not overbroad in its scope; rather, it is limited in its scope because it seeks only the audits conducted by Pegoraro and only those in connection with Bellevue Research Billing Controls and Accounting procedures. The defendants failed to explain how answering Interrogatory No. 24 is unduly burdensome. Thus, they must answer Interrogatory No. 24.

*Interrogatory No. 25*

Interrogatory No. 25 fails to comply with Local Civil Rule 33.3, and it need not to be answered by the defendants.

**Rule 34 Producing Documents**

**\*8** "A party may serve on any other party a request within the scope of Rule 26(b)" to produce documents

within the scope of Rule 26(b). Fed.R.Civ.P. 34(a). The responding party must either produce documents sought in each request or "state an objection to the request, including the reasons." Fed.R.Civ.P. 34(b)(2).

*Document Request No. 3*

Document Request No. 3 seeks all documents in the defendants' possession that "relate to any whistle blower litigation or any whistle blower administrative proceedings HHC instituted in the last 5 years, or defended other than the instant proceeding." The defendants objected that Document Request No. 3 is overbroad in time and scope, unduly burdensome and seeks irrelevant documents. The plaintiff contends she needs the documents requested "for purpose of notice and to show intentional acts by Marrero to retaliate against whistle blowers." The defendants contend that the plaintiff did not limit her request in any way and the burden of her request substantially outweighs any likely benefit.

Document Request No. 3 is overly broad in its scope because it seeks all documents in connection with any whistle-blowing litigation or proceeding involving the defendants, regardless of the specific nature of the proceeding and factual circumstances underlying those proceedings. Although the plaintiff, in her motion, attempts to limit the scope of Document Request No. 3, the defendants' objection to the scope of this request is valid. The request is also overbroad with respect to time and the plaintiff failed to explain why her request, dated May 13, 2011, sought documents "in the last 5 years," given that the relevant time period of the alleged wrongdoing in the complaint commenced on or about August 2007 and the complaint was filed on January 5, 2010. The defendants need not disclose any documents in response to Document Request No. 3.

*Document Request No. 5*

Document Request No. 5 seeks "[a]ll written statements provided to Defendants or their agents by any person contacted or interviewed in connection with this action by or on behalf of Defendants." The defendants objected that the request is overbroad in scope and seeks irrelevant information, and that they "are not in possession, custody, or control of any documents responsive to this request." In her motion, the plaintiff

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5223652 (S.D.N.Y.)

(Cite as: 2011 WL 5223652 (S.D.N.Y.))

contends that the defendants "refused to produce notes of interviews conducted by its agents, including non-law enforcement personnel, in reference to the Investigation of Plaintiff's complaint of retaliation." The defendants contend that "it is inappropriate for plaintiff to request documents for the first time in a motion to compel," and "the OIG report on her complaint of retaliation can be provided to plaintiff at the *close* of the OIG's investigation into that complaint, properly redacted and subject to an appropriate protective order, which is expected to occur in four to six months." Moreover, the defendants are not in possession or control of any documents requested because they "had not received any written statements in connection with this action."

**\*9** Notwithstanding the defendants' objections, the defendants responded to the plaintiff's request, explaining that they did not receive any written statements in connection with this action. The plaintiff cannot change the substance of Document Request No. 5 in her motion to compel. Since the defendants responded to Document Request No. 5, the plaintiff's request to compel them to respond is moot.

*Document Request Nos. 12 and 14*

Document Request No. 12 seeks "[a]ll documents produced and received by the Inspector General of HHC in relation to acts involving the conduct of Plaintiff." Document Request No. 14 seeks "[a]ll investigative notes and reports prepared by staff of HHC Inspector General in reference to Plaintiff or the office she headed prior to her termination by HHC." The defendants objected that Document Request Nos. 12 and 14 are overbroad in scope and seek documents protected by the law enforcement and investigative privilege as well as irrelevant documents. Moreover, Document Request No. 12 is vague and ambiguous with respect to the phrase "acts involving the conduct of Plaintiff." The plaintiff contends she "needs these notes to refute Marrero's answer and to prosecute her case." The defendants contend the "only complaint to OIG that is relevant to this action, and which will be produced to plaintiff, is the complaint that her employment was terminated for filing prior complaints with the OIG."

The defendants failed to: (i) produce a privilege log; (ii) describe, with any specificity, the nature of the information withheld; (iii) explain how and why the law

enforcement investigative privilege applies to the information sought; and (iv) describe, with particularity, what harm will result from disclosure. Furthermore, the defendants failed to explain why the harm from disclosure warrants protection more than the substantial benefit to the plaintiff warrants disclosure. The defendants did not discharge their burden in showing that the law enforcement investigative privilege applies to protect the defendants from responding to Document Request Nos. 12 and 14. However, the defendants' objection that the phrase "acts involving the conduct of Plaintiff" in Document Request No. 12 is vague and ambiguous is sustained, and they do not need to respond to Document Request No. 12. Document Request No. 14 is: (a) limited in scope, because it seeks documents specific to the plaintiff and the office she headed prior to her termination; and (b) relevant to the claims or defenses in this action. Therefore, the defendants must respond to Document Request No. 14.

*Document Request No. 15*

The plaintiff seeks "[a]ll documents concerning any communication and/or any lawsuit or legal action between Defendants or their representative(s) and any former employee who reported to Plaintiff including but not limited to Nancy Moynihan." The defendants objected that the request is overbroad in scope and seeks irrelevant documents. The plaintiff contends these documents are "needed for notice and intent." The defendants contend that the allegations in other lawsuits against HHC "are entirely collateral" and irrelevant.

**\*10** Document Request No. 15 is overbroad in scope because it seeks all documents, without any limitation, concerning any communication, lawsuit or legal action, regardless of its nature and content, between the defendants and any former employee who was supervised by the plaintiff. Therefore, the defendants need not respond to Document Request No. 15.

*Document Request No. 19*

Document Request No. 19 seeks documents pertinent to any communication between the plaintiff and numerous individuals, including attorneys who represented the defendants and persons not employed by the defendants, and "[a]ll documents concerning or obtained as a result of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5223652 (S.D.N.Y.)

(Cite as: 2011 WL 5223652 (S.D.N.Y.))

any formal or informal investigation conducted by Defendants or anyone on Defendants' behalf regarding Plaintiff's allegations, other than those which represent attorney-work product." The defendants objected that the request is overbroad in time and scope, unduly burdensome, seeks "documents that may be protected by the attorney-client, attorney work-product, or any other applicable privilege" and irrelevant documents. The plaintiff contends that the defendants "did not produce copies of emails between Plaintiffs and other employees, including Marrero and Dr. Raju, amongst others" and these "correspondences would show the anger and disapproval directed towards Plaintiff for fighting corruption and will attack Marrero's defense that Plaintiff is unfit for her job." The defendants contend that they produced e-mail messages from Marrero.

The defendants' speculation, in their objection to Document Request 19, that documents "may be protected" by the attorney-client privilege or any other privilege is not sufficient to invoke a privilege. The part of Document Request No. 19 which seeks all documents "containing any communications between Plaintiff" and numerous individuals, is overbroad in scope, because it seeks any communication regardless of its nature. It is also overbroad in time, because it is not limited to any time period; thus no response needs to be made to it. The part of Document Request No. 19 seeking documents concerning any formal or informal investigation by the defendants "regarding Plaintiff's allegations" is limited in scope and specifically targets documents in connection with any investigation of the plaintiff's allegations by the defendants or on their behalf. Although the request does not provide a time limit, given the time period the plaintiff worked for the defendants, the relevant time period is implied and the defendants failed to demonstrate that this part of the request is overly broad in time. As the defendants' objections cannot be sustained, documents sought in the second part of Document Request No. 19 must be produced.

*Document Request No. 26*

Document Request No. 26 seeks "Defendant Ernesto Marrero['s] complete personnel folder." The defendants objected that the request is overbroad in scope, "seeks disclosure of documents in violation of the Health Insurance Portability and Accountability Act, and seeks confidential and private documents that may unnecessarily impede on the privacy of the individuals identified in this request." The plaintiff contends she needs Marrero's folder "because it documents Marrero's troubling history of retaliation and should document Plaintiff['s] correspondence to Mr. Aviles expressing concern when he (Marrero) was made Compliance Officer." The defendants contend the plaintiff speculates about the content of Marrero's personnel folder and, whether she believed that he was not qualified to be a corporate compliance officer is irrelevant. Additionally, they are "in the process of obtaining Mr. Marrero's personnel file and his performance evaluation for 2007 to the present and any documents, to the extent they exist, relating to discipline for retaliating against employees for filing OIG complaints will be produced to plaintiff upon entry of an appropriate stipulation and order of confidentiality."

*11 Document Request No. 26 seeks irrelevant information. The plaintiff's speculation about the content of the personnel folder is not sufficient to show that Marrero's personnel folder is relevant. Thus, Marrero's personnel folder need not be produced.

*Attorney's Fees Pursuant to Rule 37*

"If the motion is granted in part and denied in part, the court may ... after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed.R.Civ.P. 37(a)(5)(C). Since the defendants were justified in objecting to most of the plaintiff's discovery demands at issue in her motion to compel, and the plaintiff's motion to compel is granted only to an insignificant extent, namely: (a) Interrogatory Nos. 1, 6 (partly) and 24; and (c) Document Request Nos. 14 and 19 (partly), apportioning the reasonable expenses in connection with making the motion is not warranted.

**CONCLUSION**

For the foregoing reasons, the plaintiff' motion to compel, Docket Entry No. 35, is granted, in part, and denied, in part. On or before November 14, 2011, the defendants must provide discovery, as indicated above.

SO ORDERED.

S.D.N.Y.,2011.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 5223652 (S.D.N.Y.)

(Cite as: 2011 WL 5223652 (S.D.N.Y.))

Pegoraro v. Marrero
Slip Copy, 2011 WL 5223652 (S.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2007 WL 4198186 (W.D.N.Y.)

(Cite as: 2007 WL 4198186 (W.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

W.D. New York.
Betty J. STEINMAN, Richard Steinman, Plaintiffs,
v.
SPINAL CONCEPTS, INC., Defendant.
No. 05CV774S.

Nov. 7, 2007.

Ryan K. Cummings, Hodgson Russ, LLP, Buffalo, NY,
for Plaintiffs.

Paul J. Suozzi, Hurwitz & Fine, P.C., Buffalo, NY, for
Defendant.

**Report & Recommendation**

HUGH B. SCOTT, United States Magistrate Judge.

*1 Plaintiffs have filed a motion for discovery
sanctions (reimbursement for certain costs), evidence
preclusion, or designation of certain facts, and costs under
Rule 37 due to non-disclosure during depositions (Docket
No. 34 FN1). Responses to this motion were due on or
before October 18, 2007, and any reply due on or
before October 30, 2007, with argument initially
scheduled for October 31, 2007 (Docket No. 38). The
Court later determined that oral argument was not
necessary and deemed the motion submitted as of October
31, 2007 (Docket No. 41).

> FN1. In support of this motion, plaintiffs filed
> their counsel's declaration, with exhibits, Docket
> No. 35, including the Rule 30(b) (6) deposition
> notice at issue, *id.,* Ex. B; their memorandum of
> law, Docket No. 36; their counsel's declaration in
> further support, Docket No. 42; and their reply
> memorandum, Docket No. 43.

> Defendant opposes this motion and filed its
> attorney's affirmation, with exhibits, Docket
> No. 40; and opposing memorandum of law,

Docket No. 39.

Also pending before Judge William Skretny
are defendant's motion for summary judgment,
Docket No. 46; defendant's motion *in limine,*
Docket No. 72; *see* Docket No. 60; and
plaintiffs' motion for summary judgment,
Docket No. 64.

This matter has been referred to the undersigned
pursuant to 28 U.S.C. § 636(b)(1)(C), but without
authority to hear and report upon dispositive motions
(Docket No. 2, Dec. 18, 2005). This Report &
Recommendation considers the potentially dispositive
portions of the motion that seek evidence preclusion or
designation of facts against defendant. *See Ocelot Oil
Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1495 (10th
Cir.1988) (magistrate may grant non-dispositive fee aspect
and recommend treatment of dispositive sanction request,
citing 7 J. Moore, *Moore's Federal Practice* ¶ 72.04[2.-4],
at 72-52 (1987), *now* 14 *Moore's Federal Practice* §
72.07 (2007)); *Pauley v. United Operating Co.,* 606
F.Supp. 520, 522-23 (E.D.Mich.1985) (no abuse of
discretion for magistrate judge to issue report and
recommendation where referral order did not include
dispositive jurisdiction for discovery sanction).
"Discovery is clearly a pretrial matter, and magistrate
judges have general authority to order discovery sanctions,
however, a magistrate judge cannot issue sanctions which
fall within the eight so-called dispositive motions excepted
in Section 636(b)(1)(A)," *Burns v. Imagine Films
Entertainment, Inc.,* 164 F.R.D. 594, 600
(W.D.N.Y.1996) (Foschio, Mag. J.). For judicial
economy, the other relief sought (costs incurred as a result
of this deposition and costs for this motion, that could be
addressed in a separate Order of this Court) is discussed in
this Report.

**BACKGROUND**

This removed action is for personal injuries suffered
by plaintiff Betty Steinman due to alleged defects in
defendant Spinal Concepts' FN2 medical product, an

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4198186 (W.D.N.Y.)

(Cite as: 2007 WL 4198186 (W.D.N.Y.))

AcuFix (or, as called in the Complaint, Accufix) cervical plate and its four screws (*see* Docket No. 1, Notice of Removal, Ex. 1, State Compl. ¶¶ 16, 19-20). Plaintiffs allege causes of action for negligence, gross negligence, strict product liability, breach of warranty, and failure to warn (*see* Docket No. 35, Pls. Atty. Decl. ¶ 3). Plaintiffs are citizens of New York and defendant is a Delaware corporation with its principal place of business in Texas (*see* Docket No. 1, Notice of Removal ¶¶ 5, 6). Defendant removed this case on the basis of diversity jurisdiction, 28 U.S.C. §§ 1332, 1441(a) (removal).

> FN2. According to defendant, the corporation's new name is Abbot Spine, Docket No. 40, Def. Atty. Affirm. ¶ 2.

*Present Motion*

Plaintiffs now move for an Order to have defendant reimburse them for costs and attorneys' fees for a July 2007 trip to Austin, Texas, to depose defense witnesses purported to be Rule 30(b)(6) representatives of defendant. They also seek an Order either precluding defendant from offering evidence on motion or at trial regarding topics to have been discussed in plaintiffs' Rule 30(b)(6) deposition or establishing three facts (that defendant designed and manufactured the AcuFix plate and screws implanted in plaintiff Betty Steinman; that defendant owed a duty of care in designing and manufacturing the plate and screws; and that defendant breached its duty of care when the plate and screws fractured nine months after implantation). They also seek to recover the costs for this motion. (Docket No. 34, Pls. Notice of Motion.)

**\*2** Plaintiffs issued a Rule 30(b)(6) deposition notice to defendant on November 22, 2006 (Docket No. 35, Pls. Atty. Decl. ¶ 7, Ex. B), calling for defendant to produce its representative in Buffalo at a mutually convenient date to discuss eight topics during the deposition (*id.* ¶ 8, Ex. B). These topics were the design and marketing of the AcuFix plate and screws, defendant's profits from the product, prior law suits concerning that product, and training for physicians, sales representatives, and distributors for the product (*id.* Ex. B). Defendant did not object to the scope of the notice or seek a protective Order (*id.* ¶ 9), nor did defendant state its inability to produce a Rule 30(b)(6) representative knowledgeable of the topics plaintiffs

identified for the perceived relevant time period (before May 2002).

Plaintiffs' counsel wrote in June 27, 2007, of his availability on July 16-19, 2007, to depose defendant's Rule 30(b)(6) representatives in Texas (*id.* ¶ 12, Ex. C). Plaintiffs' counsel listed four categories of witnesses he wanted to depose: Michael Carter, the lead engineer for design of the plate and screws, members of the marketing team for those products, and the person responsible for complaints about the products. He assumed that these persons also would be designated as defendant's Rule 30(b)(6) representatives (*id.* Ex. C). Carter attested to defendant's Answers to Plaintiffs' Interrogatories (*see* Docket No. 40, Def. Atty. Affirm. ¶ 6). Prior to the July 2007 depositions in Austin, Texas, defendant advised plaintiffs that the lead engineer sought in plaintiffs' notice would not be available due to a claimed Food and Drug Administration investigation occurring on the same dates (Docket No. 35, Pls. Atty. Decl. ¶ 15; *see id.* Ex. C; Docket No. 40, Def. Atty. Affirm. Ex. A (same)). Plaintiffs believed, however, that no such Food and Drug Administration investigation took place on July 18 or 19, 2007, at defendant's facilities (Docket No. 35, Pls. Atty. Decl. ¶ 16). Defendant now states that a Food and Drug Administration audit was impending while defense counsel was trying to identify a proper corporate representative prior to the July 2007 depositions (Docket No. 40, Def. Atty. Affirm. ¶ 8).

On July 18 and 19, 2007, plaintiffs' counsel deposed three of the four defense witnesses sought (Docket No. 35, Pls. Atty. Decl. ¶ 17, Exs. D, E, F). Each of the three witnesses, however, declined to testify as to any of the eight topics listed in the Rule 30(b)(6) notice (*id.* ¶ 20, Ex. D, Carter Dep. at 28-29, Ex. E, Thompson Dep. at 74, Ex. F, Brown Dep. at 8). It appeared to plaintiffs' counsel that defense counsel had not prepared his witnesses and misidentified the list of topics as a document demand (*id.* ¶¶ 21-22). These witnesses were not permitted by defense counsel to testify about defendant's relevant activities prior to May 2002 because these witnesses were not employees of defendant at that time (*id.* ¶ 24). One witness, Michael Carter, identified a knowledgeable defense employee, Marc Peterman (*id.* ¶ 23; *cf.* Docket No. 40, Def. Atty. Affirm. ¶ 8 (Peterman as possible corporate

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4198186 (W.D.N.Y.)

(Cite as: 2007 WL 4198186 (W.D.N.Y.))

representative, but he lacked historical knowledge)).

**\*3** Plaintiffs complain that their counsel incurred travel expenses and his time for these depositions in Austin (Docket No. 35, Pls. Atty. Decl. ¶ 25). Their counsel wrote to defense counsel on August 31, 2007, seeking to recover those costs. The parties agreed to depose a Rule 30(b)(6) witness in Buffalo, but defense counsel declined to reimburse plaintiffs for their Austin expenses. (*Id.* ¶¶ 28-30, Ex. G). On September 19, 2007, defendant produced James Fried as the Rule 30(b)(6) representative (*id.* ¶¶ 31-32; *see* Docket No. 40, Def. Atty. Affirm., Ex. A). Fried stated that he would not testify as to topics 4 and 5 in the Rule 30(b)(6) deposition notice-defendant's profits from the AcuFix plate and screws and litigation arising from that product-although counsel later agreed to address topic 4 in interrogatories (Docket No. 35, Pls. Atty. Decl. ¶¶ 33-34). Defense counsel's letter of September 24, 2007, stated that there were no lawsuits prior to May 2002 (*id.* Ex. I; *see also* Docket No. 40, Def. Atty. Affirm. Ex. C (same)).

On September 21, 2007, plaintiffs' counsel again wrote to defense counsel requesting reimbursement of the Austin expenses, which defense counsel rejected on September 24, 2007 (Docket No. 35, Pls. Atty. Decl. ¶¶ 35-36, Exs. H, I; *see also* Docket No. 40, Def. Atty. Affirm. Ex. C).

*Defendant's Response*

Defendant contends that sanctions are not warranted here because it produced three knowledgeable witnesses in Austin that were *not* the Rule 30(b)(6) designated representative of defendant. Later, defendant produced its sole Rule 30(b)(6) representative, James Fried. (Docket No. 39, Def. Memo. at 3, 7.) Defendant contends that individuals with the corporation in 2002 when the plate and screws were installed in plaintiff Betty Steinman were no longer with the corporation or, like James Fried, served in different positions than were held in 2002 (Docket No. 40, Def. Atty. Affirm. ¶ 5). In response to plaintiffs' June 27, 2007, letter, defendant produced Michael Carter, Sandra Thompson, and Roger Brown, current corporate officials knowledgeable of quality assurance, complaints, and product research and testing (respectively) and tried

to locate employees with pre-May 2002 knowledge in the topics sought by plaintiffs (*id.* ¶¶ 7, 8). But defendant never indicated that it had a problem locating such persons. The three Austin witnesses produced were persons identified (either by name or category) by plaintiffs in their counsel's June 27, 2007, letter (Docket No. 39, Def. Memo. at 3). These witnesses were the highest ranking employees of defendant and testified extensively (*id.* at 2, 4-6; *see also* Docket No. 35, Exs. C, D, E). Defendant contends that these three witnesses were initial fact witnesses and that defendant reserved the right to produce a Rule 30(b)(6) representative at a later date (Docket No. 39, Def. Memo. at 4).

As for producing Fried as the Rule 30(b)(6) representative rather than Peterman (or other persons), defendant argues that Fried had the historic knowledge about the AcuFix plate and screws, while Peterman had current knowledge about that product and defendant's sales practices (*id.* at 7-8). Fried, therefore, was a knowledgeable and appropriate Rule 30(b)(6) representative.

**\*4** Defendant objects to plaintiffs' claim for costs from the Austin deposition, stating that these expenses plaintiffs would have incurred anyway (*id.* at 9, 16). The three witnesses questioned were knowledgeable and not a "waste of time," providing plaintiffs with product background and other relevant information and the basis for further discovery requests (*id.* at 9, 10, 17). Plaintiffs do not have a prior Order that defendant violated in not producing Rule 30(b)(6) representatives, and sanctions have been ordered only in cases where Rule 30(b)(6) representatives were not designated upon Court Order, *see, e.g., Commodities Futures Trading Comm'n v. Noble Metals Int'l, Inc.,* 67 F.3d 769 (9th Cir.1995), *cert. denied,* 519 U.S. 815 (1996), or the representative willfully failed to answer questions (*id.* at 11-12). Defendant concludes that plaintiffs' remedy here is to move to compel defendant to designate its Rule 30(b)(6) representative (*id.* at 12, 14-15), *see Sony Elects., Inc. v. Soundview Techs.,* 217 F.R.D. 104, 105 (D.Conn.2002), although Fried was later produced as such a representative and two of the topics would be addressed in other discovery devices.

*Plaintiffs' Reply*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4198186 (W.D.N.Y.)

(Cite as: 2007 WL 4198186 (W.D.N.Y.))

In their reply, plaintiffs argue that defendant failed to produce a knowledgeable corporate representative for the Austin depositions, forcing them to incur counsel's expenses to attend these depositions. Plaintiffs tellingly ask why the Rule 30(b)(6) representative ultimately produced in Buffalo months later was not "produced as the [Rule] 30(b)(6) witness in Texas in the first place?" (Docket No. 42, Pls. Atty. Decl. ¶ 61). They cite Rule 37(d) because defendant failed to have appear their Rule 30(b)(6) representative as the authority for mandatory sanctions sought (Docket No. 43, Pls. Memo. at 3-4, 6) and they reject defendant's call for a motion to compel as nonsensical in this context (*id.* at 5-6).

**DISCUSSION**

**I. Standards**

Discovery under the Federal Rules is intended to reveal relevant documents and testimony, but this process is supposed to occur with a minimum of judicial intervention. *See* 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure § 2288,* at 655-65 (Civil 2d ed.1994). Federal Rule of Civil Procedure 37(a) allows a party to apply to the Court for an order compelling discovery, with that motion including a certification that the movant in good faith conferred or attempted to confer with the party not making the disclosure to secure that disclosure without court intervention. Fed.R.Civ.P. 37(a)(2) (A). Rule 37(d) is applicable when a party **fails** to **attend** its own **deposition**, including failure of a designated **Rule 30**(b)(6) representative to **attend**. Imposition of Rule 37(d) sanctions for failure to comply with discovery demands must be weighed in light of the full record. *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures,* 602 F.2d 1063, 1068 (2d Cir.1979).

**\*5** Rule 37(d) calls upon the Court to make such orders in regard to disclosure failures as are just. This Court has wide discretion to impose sanctions and determine the type of sanction to be imposed under Rule 37(d). *See Reilly v. NatWest Markets Group Inc.,* 181 F.3d 253, 267 (2d Cir.1999), *cert. denied,* 528 U.S. 1119, 120 S.Ct. 940, 145 L.Ed.2d 818 (2000). The rule lists various sanctions including preclusion or dismissal of claims, Fed.R.Civ.P. 37(d), (b)(2)(A) (facts established), (b)(2)(B) (refusing to allow disobedient party to support claim or defense), (C) (striking pleadings), or (D) (contempt of

court for failing to produce witness), as well as payment of opponent's reasonable fees, and attorneys' fees. The dismissal of a defense or preclusion of evidence for failure to respond to a discovery request is a drastic remedy, *Burnett v. Venturi,* 903 F.Supp. 304, 309 (N.D.N.Y.1995); *see National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam) (dismissal as severest sanction), the level of sanction is available for flagrant discovery abuses, *see Szatanek v. McDonnell Douglas Corp.,* 109 F.R.D. 37, 41 (W.D.N.Y.1985) (Elfvin, J.) (harsh discovery sanction to strike an answer) (*see* Docket No. 39, Def. Memo. at 17). Procedurally, under Rule 37(a)(2)(B) and this Court's Local Civil Rule 37, the movant needs to make a statement of good faith efforts made to resolve a discovery dispute before making motions to compel or for discovery sanctions.

Under Rule 37(a)(4), if the motion to compel is granted, the Court

"shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, ..., unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the discovery or disclosure without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust."

Fed.R.Civ.P. 37(a)(4).

A Rule 30(b)(6) representative testifies on behalf of a corporate party and the corporate party is bound by the answers given by the representative, *Twentieth Century Fox Film Corp. v. Marvel Enterp., Inc.,* No. 01 Civ. 3016, 2002 U.S. Dist. LEXIS 14682, at \*6, 2002 WL 1835439 (S.D.N.Y. Aug. 8, 2002).

**II. Application**

Plaintiffs argue that defendant failed to have Rule 30(b)(6) representatives available to testify, in particular

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4198186 (W.D.N.Y.)

(Cite as: 2007 WL 4198186 (W.D.N.Y.))

to testify on the eight topics they sought discovery about. It appeared to them that the representative witnesses produced by defendant were not even prepared for the deposition and were not knowledgeable of pre-May 2002 events within defendant. They thus seek sanctions, including the severe sanctions of evidence preclusion and designation of facts, and the recovery of costs for the apparently failed depositions and for this motion.

**\*6** For the Austin depositions, defendant failed to designate a Rule 30(b)(6) representative and instead produced employees who testified, based upon their personal knowledge, but not knowledgeable about corporate practices during the relevant time period. Each witness conceded that they were not the designated representative and that they did not know about practices before May 2002 (prior to the installation of defendant's products in plaintiff Betty Steinman). While plaintiffs deposed these witnesses extensively and these witnesses may have been informative, they did not expressly step into the corporate defendant's shoes as would a Rule 30(b)(6) representative so as to make their answers be the defendant's binding answers. Defendant never stated that it could not identify a Rule 30(b)(6) representative on the topics and temporal period sought by plaintiffs, and never gave plaintiffs an option to reschedule the deposition until one was found (such as James Fried) or to continue with these otherwise fact witnesses available in Austin. Defendant did not move for a protective Order or otherwise object to the Rule 30(b)(6) notice, hence leading plaintiffs to believe that corporate representatives would be produced on July 18, 2007, in Austin. Rather than completely waste time, plaintiffs counsel proceeded to depose these witnesses to elicit as much information from them as possible.

The failure to produce such a representative (especially when one ultimately became identified and available) **ought to be sanctioned.** The next issue is what relief is appropriate.

A. Evidence Preclusion and Fact Designation

Preclusion of evidence or designation of facts as a discovery sanction is severe, *see Szatanek, supra,* 109 F.R.D. at 41, and, depending upon the evidence precluded or the fact invoked, possibly dispositive of defenses

(Docket No. 36, Pls. Memo. at 2-3). The factual findings plaintiffs seek designated essentially seek declaratory judgment on the key elements of their negligence and product liability claims. Plaintiffs ultimately were provided defendant's Rule 30(b)(6) representative in the September deposition of James Fried and had defendant address some of the topics for the Rule 30(b)(6) representative by disclosure in other means [FN3]. Although the Austin witnesses all disclaimed being the Rule 30(b)(6) representative or competent to testify as to the topics sought in plaintiffs' deposition notice, they testified extensively (*see* Docket No. 35, Exs. D, E, F) and knowledgeably. Defense counsel did not instruct these witnesses not to answer questions. There is not the degree of flagrant discovery abuse that warrants the more severe sanction of either evidence preclusion or designation of facts in plaintiffs' favor. Thus, plaintiffs' motion for this relief should be **denied.**

> FN3. Plaintiffs will issue a Second Set of Interrogatories that address aspects not discussed in the depositions, in particular answers regarding defendant's profits from the AcuFix device (*see* Docket No. 40, Def. Atty. Aff. Ex. B; Docket No.35, Pls. Atty. Decl. ¶ 34).

B. Costs as Sanction

Plaintiffs also seek to recover $8,586.01 in travel expenses and attorney's fees (27.7 hours at $200 per hour) associated with plaintiffs' depositions in Austin, Texas, in July 2007 (Docket No. 35, Pls. Atty. Decl. Ex. G [FN4]). In particular, these expenses also include transcripts of the three depositions for plaintiffs and defendant, counsel's travel expenses, and the costs of the subsequent Rule 30(b)(6) deposition (although not accounted for in this motion) (*id.*). Plaintiffs, in reply, now state that they are not seeking the costs associated with deposing Rule 30(b)(6) representative James Fried (Docket No. 42, Pls. Atty. Decl. ¶ 63). Defendant argues that this amount is excessive and, given that plaintiffs would seek the information produced by these witnesses anyway, unwarranted (Docket No. 39, Def. Memo. at 16). Defendant, however, does not identify which particular expenditure was excessive.

> FN4. Plaintiffs appear to represent that *defense counsel* had agreed to reimburse their counsel's

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4198186 (W.D.N.Y.)

(Cite as: 2007 WL 4198186 (W.D.N.Y.))

expenses for conducting the Rule 30(b)(6) depositions in Austin, Texas, and later reneged (*see* Docket No. 35, Pls. Atty. Decl. ¶¶ 30, 35-36, Exs. H, I). Defense counsel denies that he agreed that his firm (rather than the client) would pick up plaintiffs' Austin expenses.

**\*7** Given that defendant failed to produce a Rule 30(b)(6) representative sanctions under Rule 37(d) are in order, *see In re Vitamins Antitrust Litig.,* 216 F.R.D. 168, 174 (D.D.C.2003) (monetary sanctions are mandatory under Rule 37(d) if corporate party fails to produce a knowledgeable Rule 30(b)(6) representative) (*see* Docket No. 43, Pls. Memo. at 6 n. 13). On this aspect of plaintiffs' motion, they are **granted** recovery of discovery costs of **$8,586.01** sought by plaintiffs. Defendant has not shown that the amount sought is excessive, only arguing generally that these expenses would have been incurred because plaintiffs deposed knowledgeable witnesses. But these costs are being imposed for defendant's failure to produce a binding Rule 30(b)(6) representative and not due to any "fool's errand" in plaintiffs conducting the Austin depositions.

Since plaintiffs prevail (at least as to one alternative form of relief) on this sanction motion, they **are entitled to recover their costs for this motion.** They should submit their affidavit of expenses associated with this motion for the Court to determine the appropriate amount to award.

### CONCLUSION

For the reasons stated above, plaintiffs' motion for discovery relief and sanctions, namely evidence preclusion or fact designation (Docket No. 34) should be **denied.**

The monetary sanctions sought by plaintiffs (both their discovery expenses and the costs for this motion) are **denied.** Plaintiffs shall recover from defendant **$8,586.01** in expenses for the July 18-19, 2007, depositions. Plaintiffs shall file within fifteen (15) days of entry of this Report & Recommendation an affidavit of the costs for filing their motion. Defendant has five (5) days from that filing to file any response to that cost application.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed.R.Civ.P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *F.D.I.C. v. Hillcrest Associates,* 66 F.3d 566 (2d Cir.1995); *Wesolak v. Canadair Ltd.,* 838 F.2d 55 (2d Cir.1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

**\*8** Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.*

So Ordered.

W.D.N.Y.,2007.

Steinman v. Spinal Concepts, Inc.
Not Reported in F.Supp.2d, 2007 WL 4198186 (W.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4198186 (W.D.N.Y.)

(Cite as: 2007 WL 4198186 (W.D.N.Y.))

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1329697 (E.D.N.Y.)

(Cite as: 2006 WL 1329697 (E.D.N.Y.))

**H**

Only the Westlaw citation is currently available.NOT FOR PUBLICATION

United States District Court,

E.D. New York.
Howard GISSINGER, and Esther Gissinger, Plaintiffs,
v.
Pao YUNG, Defendant.
Howard Gissinger, and Esther Gissinger, Plaintiffs,
v.
New Pao Yung Enterprises, Co., Ltd., Defendant.
Nos. 04-CV-0534 (CBA)(JO), 04-CV-5406 (CBA)(JO).

April 21, 2006.
May 16, 2006.

Alisa L. Silverstein, Herzfeld & Rubin, P.C., New York, NY, for Plaintiffs.

### ORDER

AMON, United States District Judge.

**\*1** In these two related cases, plaintiffs Howard and Esther Gissinger (collectively, "the Gissingers") seek damages for injuries Howard Gissinger allegedly suffered after he fell from a ladder. The defendants are Pao Yung, and its successor in interest New Pao Enterprises Co., Ltd. The Gissingers allege that the defendants are responsible for the defective design and manufacture of the ladder from which Howard Gissinger fell. In each case, the defendant has filed an answer but has done nothing further and has ignored all discovery obligations.

On August 9, 2005, the Gissingers filed a motion for an order compelling the defendants to respond to discovery requests, and asking the Court, should that order be ineffective, to either strike the defendants' answers in both cases pursuant to Federal Rule of Civil Procedure ("Rule") 37, or to enter a default judgment pursuant to Rule 55. On February 7, 2006, the Honorable Kiyo A. Matsumoto, United States Magistrate Judge, granted the Gissinger's motion for an order compelling discovery, and directed the defendants to respond to outstanding discovery requests within forty-five days of the date of the order. Magistrate Judge Matsumoto's order specifically warned the defendants that failure to comply with its terms could result in a recommendation that this Court strike the

defendants answers and/or enter default judgments against them. The defendants did not respond to the outstanding discovery requests.

On April 21, 2006, Magistrate Judge James Orenstein, to whom the matter had been reassigned, submitted a Report and Recommendation to this Court which concluded that the Court should strike the defendants' answers, but that entry of a default judgment would be premature. Magistrate Orenstein directed the Gissingers to serve copies of the Report and Recommendation on the defendants, and granted the defendants ten days from the date of service to file any objections. The Gissingers have filed an affidavit indicating that the Report and Recommendation was served on the defendants at their last known address on April 24, 2006 by mailing via UPS.[FN1] Substantially more than ten days have since elapsed, and neither defendant has filed any objection to the Report and Recommendation.

> FN1. As described in greater detail in Magistrate Judge Orenstein's Report and Recommendation, the defendants at some point left their address in Taiwan without providing a forwarding address. The Gissingers have not since been able to locate the defendants, despite diligent efforts.

Upon careful consideration of Magistrate Judge Orenstein's recommendation and the record in this case the Court adopts the Report and Recommendation as the opinion of the Court. The defendants' answers are to be stricken from the record in each of the above-captioned cases. The Clerk of the Court is to enter a notation of default in each case pursuant to Rule 55(a). The Gissingers may move for entry of default judgment pursuant to Rule 55(b)(2).

SO ORDERED.

JAMES ORENSTEIN, Magistrate Judge.

### REPORT AND RECOMMENDATION

In these two related actions, plaintiffs Howard Gissinger and Esther Gissinger (together, "the Gissingers") seek to recover damages arising from the severe injuries that Mr. Gissinger claims to have sustained

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1329697 (E.D.N.Y.)

(Cite as: 2006 WL 1329697 (E.D.N.Y.))

after he fell from a ladder. The defendants in these cases (to whom I refer collectively as "Yung") are Pao Yung, a corporate entity that the Gissingers claim was responsible for the defective design and manufacture of the ladder from which Mr. Gissinger fell, and its successor in interest, New Pao Yung Enterprises Co., Ltd. In each case, the defendant has filed an answer but has done nothing since to comply with its discovery obligations. As a result, the Gissingers now seek an order pursuant to subsections (b)(2)(B) and (d) of Federal Rule of Civil Procedure 37, striking Yung's answers or entering a default judgment against the defendant in each case. For the reasons set forth below, I respectfully recommend that the court strike Yung's answers.

I. *Background*

**\*2** The instant suits are two of three related actions currently before this court concerning the design and manufacture of the ladder from which Howard Gissinger fell on December 16, 2001. *See* docket entry ("DE") 1 ¶ 30. The Gissingers filed the first of the three in New York state court against defendants Collins International, Co., Ltd. and Collins Company Limited, Taiwan (collectively, "Collins"), the alleged distributor of the ladder at issue. *See* CV 03-1963(CBA), DE 1 at 6-7. Collins removed that case to this court by notice of removal dated April 23, 2003. *Id.* at 1-2. Their second lawsuit, filed on February 9, 2004, named Pao Yung as a defendant based on an allegation that that company was responsible for the ladder's design and manufacture. *See* CV 04-0534 *("Yung I"),* DE 1. The Gissingers filed the third lawsuit on December 13, 2004, against Pao Yung's successor in interest, New Pao Yung Enterprise Co., Ltd. *See* CV 04-5406 *("Yung II")* DE 1. After substantial delays occasioned by the difficulty of locating the foreign defendants, the Gissingers effected personal service on Yung's statutory representative on January 13, 2005. *See Yung I,* DE 6 at 2; *Yung II,* DE 2 at 2. The Gissingers report that Yung timely served an answer in each of the respective cases on February 24, 2005. Although these submissions do not appear on the docket sheet of either case, the receipt of a responsive pleading is noted on the docket sheet of *Yung I* (DE 7), and the Gissingers included copies of Yung's answers with their submissions in connection with the instant motion. *Yung I,* DE 12, Ex. D; *Yung II,* DE 7, Ex. D. I therefore conclude that Yung

timely served an answer to each complaint.

Those answers represent the entirety of Yung's participation in these cases. In contravention of several court orders, Yung has failed to make the initial disclosures requirued by Federal Rule of Civil Procedure 26(a), has ignored the Gissinger's discovery requests and made no requests of its own, and has failed to appear as required at the three status conferences that were scheduled after the answers were served. At the first of these conferences, on March 10, 2005, Magistrate Judge Matsumoto entered an order directing Yung to make its Rule 26(a) disclosures by March 25, 2005, and directing all parties to propound written discovery requests by the same date. At the second conference, the Gissingers reported that an investigator they had hired to locate Yung had discovered that Yung had left Taiwan and its whereabout were unknown. At the third status conference held on June 3, 2005, the Gissingers moved for an order to compel Yung to provide responses to the plaintiffs' discovery requests. Judge Matsumoto directed the Gissingers to serve Yung with their discovery requests and motion papers by UPS International and to file delivery receipts with the court, and granted Yung 30 days from delivery of these submission to respond to them. The Gissingers subsequently reported that UPS International had been unable to deliver the discovery and motion papers since Yung had left its last known address without providing a forwarding address. *See Yung I,* DE 10; *Yung II,* DE 5.

**\*3** Thereafter, Judge Matsumoto granted the Gissingers leave to file a motion to compel discovery and impose sanctions including a judgment of default pursuant to Fed.R.Civ.P. 37. The Gissingers filed a motion to that effect on August 9, 2005, seeking an order compelling Yung to respond to outstanding discovery requests within 30 days and further requesting that in the event that Yung failed to do so, the court strike Yung's answers in both cases or, alternatively, enter default judgments against it. *Yung I,* DE 12; *Yung II,* DE 7. Yung never responded to or opposed the Gissingers' motion. Accordingly, on February 7, 2006, Judge Motsumoto granted the Gissingers' motion to compel and ordered Yung to respond to the Gissingers' discovery demands by March 24, 2006. *Yung I,* DE 14-15; *Yung II,* DE 9 ("the February Order"). Judge Matsumoto expressly warned Yung that

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 1329697 (E.D.N.Y.)

(Cite as: 2006 WL 1329697 (E.D.N.Y.))

failure to comply with her order could result in a recommendation that the district court strike the answers in the two cases or enter default judgments. Judge Matsumoto also ordered the Gissingers to serve a copy of the February Order on Yung at its last known address in Taiwan, to file affidavits of service by February 17, 2006, and to advise the court by April 3, 2006, whether Yung had complied with the February Order. Finally, Judge Matsumoto noted that should Yung fail to comply with the February Order, the Gissingers could renew their motion to strike Yung's answers or enter a default judgment for failure to provide discovery. *Id.*

The Gissingers filed affidavits of service of the February Order on February 16, 2006. *Yung I,* DE 16-17; *Yung II,* DE 10. On April 3, 2006 (by which time the cases had been reassigned to me for pretrial supervision), the Gissingers reported that Yung had failed to comply with the February Order and advised me that they intended to renew their motion to strike Yung's answers or enter a default judgment for failure to provide discovery. *Yung I,* DE 18; *Yung II,* DE 11.

II. *Discussion*

Rule 37 empowers a court to sanction a party for failure to comply with a discovery order. *See* Fed.R.Civ.P. 37(b)(2), (d). The rule identifies a range of permissible sanctions from the modest relief of requiring the recalcitrant party to reimburse its adversary for the expenses incurred in vindicating its discovery rights, to more severe steps such as precluding evidence or deeming disputed matters to be resolved adversely to the noncompliant party, to the harshest sanctions, which the Gissingers now seek, of striking an answer and entering judgment against the offending party. Fed.R.Civ.P. 37(b)(2); *Cine Forty-Second Street Theatre Corp., v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1066 (2d Cir.1979). The Second Circuit has repeatedly affirmed its "belief in the importance of appropriate sanctions as a necessary means of dealing with a recusant party." *Update Art, Inc. v. Modiin Publishing, Ltd.,* 843 F.2d 67, 71 (2d Cir.1988) (citing *Cine,* 602 F.2d at 1063-1064). Although the district court has broad discretion in choosing an appropriate sanction, it should reserve the most severe punishments for the "rare" cases in which "they are necessary to achieve the purpose of Rule 37 as a credible deterrent." *Id.* In general, a drastic sanction is only warranted if the noncompliance has been "willful, or in bad faith, or otherwise culpable." *See Luft v. Crown Publishers, Inc.,* 906 F.2d 862, 865 (2d Cir.1990) (citing *Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 212 (1958)). Among the factors the court should consider in selecting an appropriate sanction are the extent and duration of the noncompliance, the culpability of the noncompliant party, the adequacy of notice, and the efficacy of lesser sanctions. *See Bambu Sales, Inc. v. Ozak Trading Inc.,* 58 F.3d 849, 852 (2d Cir.1995).

*4 Here, Yung has completely failed to participate in discovery for well over a year. No attorney has ever filed a notice of appearance on Yung's behalf and Yung has not otherwise indicated any willingness to participate in the litigation of the instant claims. The Gissingers have served Yung at its last known address with discovery orders dating back to March 10, 2005, its motion papers with respect to its prior motion to compel and the instant motion, and Judge Matsumoto's orders, including the February Order in which she expressly warned Yung of the possibility of a harsh sanction for its noncompliance with discovery orders. *See Yung I,* DE 13, DE 16; *Yung II,* DE 8, DE 10. Yung never responded to the Gissingers' motions or to Judge Matsumoto's orders. Yung may or may not have actually received these filings since it apparently left Taiwan after filing answers. For present purposes, it suffices that Yung was aware of the pendency of these actions and that all of the relevant court orders and motion papers were forwarded to Yung at its last known address. *See Ann Taylor, Inc. v. Interstate Motor Carrier, Inc.,* 2004 WL 2029908, *1-*3 (S.D.N.Y. Sep. 13, 2004) (granting plaintiff's motion for a default judgment after discovery demands served by mail at the defendant's last known address were returned to plaintiff as "undeliverable"). Under the circumstances, Yung's persistent lack of participation in these actions can only be described as willful. "Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control." *Davidson v. M. Dean,* 204 F.R.D. 251,

Not Reported in F.Supp.2d, 2006 WL 1329697 (E.D.N.Y.)

(Cite as: 2006 WL 1329697 (E.D.N.Y.))

255 (S.D.N.Y.2001) (citations and quotations omitted). Yung's disappearance was not a factor beyond its control and cannot shield it from the consequences of its failure to participate in the instant suit. *See Ann Taylor,* 2004 WL 2029908 at *1-*3.

The Gissingers expended considerable resources in locating Yung, including retaining the services of a private investigator in Taiwan, and I conclude that they have done all that could be expected of them to locate the defendants. *Cf. Welch v. Alexis,* 2004 WL 1920810 (E.D.N.Y. May 26, 2004) (declining to strike defendants' answer as a Rule 37 sanction where the plaintiffs had not hired an investigator and had taken only meager steps to locate the defendants). Given the difficulty of locating Yung at this time and the strong likelihood that further orders would be as futile as those previously issued, I recommend that the court strike Yung's answers in both cases. *See The Original San Francisco Toymakers, Inc. v. Trendmasters, Inc.,* 2003 WL 22384771 (N.D.Cal. Oct. 7, 2003) ("The repeated failure of Defendant to attend hearings, the inability of its former defense counsel to serve papers upon it, and the undelivered mail returned to the Court, all inspire little confidence that Defendant's failure to form a defense is due to excusable neglect or that a sanction less than default judgment will have any effect.").

**\*5** As an alternative or additional form of relief, the Gissingers have requested that the court enter a judgment of default against Yung in each case. At this juncture, a default judgment is premature since the Gissingers' submission is silent with regard to such crucial factors as the amount of money involved and the severity that such a judgment would impose on the defendants. *See Ann Taylor,* 2004 WL 2029908, *2-3. Should the court adopt the recommendation made herein to strike Yung's answers, the Clerk should enter a notation of default against Yung in each case. *See* Fed.R.Civ.P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend ... the clerk shall enter the party's default."). Thereafter, the Gissingers would be free to move for a default judgment pursuant to and in accordance with Fed.R.Civ.P. 55(b)(2).

III. *Recommendation*

For the reasons set forth above, I respectfully recommend that the court strike Yung's answers.
IV. Objections

The Gissingers are directed to serve a copy of this Report and Recommendation on Yung by UPS International, and to file proof of service with the court by April 28, 2006. Any objection to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 10 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72; *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir .1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir.1996).

**SO ORDERED.**

E.D.N.Y.,2006.

Gissinger v. Yung
Not Reported in F.Supp.2d, 2006 WL 1329697 (E.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1996 WL 426364 (S.D.N.Y.)

(Cite as: 1996 WL 426364 (S.D.N.Y.))

**c**

Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Festus BANJO, Plaintiff,
v.
UNITED STATES of America, Defendant.
No. 95 CIV. 633 (DLC).

July 30, 1996.
Festus Banjo, Brooklyn, NY, pro se.

Wendy H. Schwartz, Assistant U.S. Attorney, Southern District of New York, New York City, for Defendant.

*OPINION & ORDER*

COTE, District Judge:

*1 On January 30, 1995, plaintiff Festus Banjo ("Banjo") brought this action against the United States of America ("the Government") pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2761 *et seq.,* seeking damages for injuries sustained when a postal truck collided on April 6, 1994, in Manhattan with a car owned and operated by Banjo. At the conclusion of discovery, the Government moved to dismiss the Complaint and for monetary sanctions pursuant to Rule 37(b), Fed.R.Civ.P., and this Court's inherent powers for plaintiff's refusal to engage in discovery and for his false deposition testimony regarding material facts.

BACKGROUND

Banjo's Complaint alleges that he was severely and permanently injured by the April 6 accident and that his car was damaged. The issues in this action include whether Banjo suffered a "serious" injury within the meaning of the New York Insurance Law, N.Y. Ins. Law § 5104 (McKinney 1985) ("No Fault law"), which prohibits recovery for noneconomic loss except in the case of a "serious" injury; the extent of any property damage to plaintiff's car; and the extent to which the accident has prevented Banjo from earning a living.

Banjo, who was represented by counsel at the time the action was filed and throughout discovery, stipulated to a discovery plan that the Court approved on May 8, 1995. Under the plan, discovery was to be completed by September 19, 1995. On May 19, 1995, the Government served interrogatories and document requests and noticed the plaintiff's deposition for June 30, 1995. Plaintiff did not respond to the Government's requests until July 24, 1995, at which time he produced copies of certain medical records,[FN1] tax returns for 1991 through 1994, two body-shop repair estimates for repairs to the car, the police report of the accident, and one medical bill from Hamilton Medical Services. Plaintiff's interrogatory responses, which were neither signed nor sworn to, identified a Community Hospital in California as an additional medical facility with relevant records. Banjo did not, however, provide any authorization to obtain records from that facility or any of its records.

FN1. Medical records reveal that the plaintiff was diagnosed with "neck strain" at Lenox Hill Hospital immediately following the accident and released. Four days later he was seen at Maimonides Medical Center, where he complained of a headache but no abnormality was noted. Records from Hamilton Medical Services, where plaintiff was treated from April 12, 1994 through November 15, 1994, reflect a compression fracture of the cervical spine, cervical radiculopathy, early carpal tunnel symptoms in the left hand, right elbow triceps tendinitis, lumbosacral radiculopathy and lumbosacral derangement.

Plaintiff's deposition was held on September 12, 1995. At the deposition the Government learned that Banjo had additional documents responsive to Government document requests that had not been produced. Banjo also identified for the first time two neurologists from whom he had received treatment following the accident and a hospital where he had received care prior to the accident. The Government requested authorizations for access to these medical

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1996 WL 426364 (S.D.N.Y.)

(Cite as: 1996 WL 426364 (S.D.N.Y.))

records and reiterated its request for an authorization to obtain the California medical records. The deposition also revealed that the dollar amounts of damages alleged by Banjo in his interrogatory answers were incorrect. The Government requested that revised, sworn responses to the interrogatories be provided.

On October 5, 1995, the Government forwarded the original deposition transcript of Banjo's deposition to his attorney for Banjo's review and signature. The transcript has never been returned. On January 5, 1996, plaintiff's counsel represented to the Court that he had sent Banjo the original deposition for his review. In response to this motion, Banjo indicates he did not receive a copy of his deposition until February 6, 1996, but has not returned it because it has innumerable mistakes and is incomplete. He contends, therefore, that the deposition should be disregarded by the Court.

*2 Banjo's attorney requested an extension of the discovery deadline on September 11, 1995. Through a September 19, 1995, letter, the Government notified Banjo of all of his outstanding discovery obligations. On September 20, 1995, the Court extended discovery to November 22, 1995. On September 28, 1995, the Court signed an Amended Scheduling Order that set out a more detailed schedule for production of outstanding items. Banjo was ordered to produce the outstanding documents identified in the Government's September 19, 1995, letter by October 29, 1995, with certain exceptions noted in the Order.

On October 16 and 17, 1995, Banjo produced additional authorizations for medical records, including one for the California records. Banjo did not produce and as of today has not produced revised and sworn interrogatory answers regarding various damage issues; additional medical bills; documents regarding damage to the car; or the photographs he took of the car.

On July 24, 1995, Banjo had identified Dr. Licciardi and two of his associates, all of whom are from Hamilton Medical Services, as his experts. Banjo never produced expert reports, however, as required by Rule 26(a)(2), Fed.R.Civ.P., and as specifically scheduled in the Orders of September 28, 1995, and November 27, 1995. When it

became clear that Banjo would not be providing expert reports for Dr. Licciardi and his associates and thereby would be waiving his right to call them as experts, the Government sought to take the deposition of Dr. Licciardi as a treating physician. When Dr. Licciardi learned that the Government would not compensate him for his deposition testimony, Dr. Licciardi refused to appear. The report produced by the Government's expert indicates that Banjo sustained no injury from the accident aside from a possible cervical and lumbar strain or sprain.

The Government contends that documents it has obtained from third parties reveal that Banjo gave false testimony at his deposition about the following three areas. At his deposition Banjo testified that in the ten years prior to the accident he had not suffered any serious injuries requiring medical attention; that he had not gone to a hospital for anything other than a swelling of the wrist; and that the April 6, 1994, accident was the first accident of his life. The California medical records show, however, that Banjo was involved in a car accident in 1985 in which he may have sustained injuries to his cervical spine. In his opposition to this motion, Banjo contends that the 1985 accident was a motorcycle accident that resulted in nothing more that a cut to his left hand, which was bandaged up, and that he was released from the hospital in less than two hours. He does not contend that the Government's description of his deposition testimony is inaccurate.

Banjo testified repeatedly in his deposition that he has been unable to drive since the accident. Records from the Department of Motor Vehicles reveal that Banjo received citations for moving violations on September 1, 1994, and September 10, 1994. Records from the Taxi and Limousine Commission show that Banjo received a citation at LaGuardia Airport on July 2, 1994, for operating a limousine for hire without a license to do so. Each of these incidents occurred after the April 6, 1994, accident and before the September 12, 1995, deposition. In his opposition to the motion, Banjo does not address the September citations, but contends that he was only a passenger in the car at the time the July 2 citation was issued at LaGuardia airport.[FN2]

FN2. The citation indicates that Banjo was

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1996 WL 426364 (S.D.N.Y.)

(Cite as: 1996 WL 426364 (S.D.N.Y.))

observed operating the vehicle.

**\*3** Finally, at his deposition Banjo testified that the accident damaged his car's transmission, that it got progressively worse, and that after May 1994 he was unable to drive it. The July 2, 1994, citation at LaGuardia airport, however, was for the 1984 Lincoln Town Car limousine that Banjo was driving at the time of the accident. In his opposition to the motion, Banjo contends that a friend of his fixed the transmission of the car sufficiently on July 1 for the vehicle to make it to the airport.

The only other defense that Banjo has offered to the Government's accusation that he gave false deposition testimony is the complaint that an attorney other than the one he had retained appeared to represent him at the deposition. He also asserts that he was weary, had not adequately prepared for the deposition, and that it was the first time he had ever been deposed.

At a conference held with the Court on December 1, 1995, the government described the deficiencies relating to discovery, and plaintiff's counsel indicated his desire to be relieved as counsel for the plaintiff. The Court ordered plaintiff's counsel to submit a written application supported by an affidavit in connection with his request to withdraw, and the Government was ordered to outline its complaints regarding discovery in a letter. The Court adjourned the conference to December 15, 1995, with the explicit understanding that plaintiff's counsel would arrange for Banjo to attend the conference.

On December 7, 1995, and in response to the December 1 Order, the Government notified the Court and plaintiff's counsel in writing of its desire to make a motion pursuant to Rule 37 and the Court's inherent powers for an order dismissing Banjo's Complaint for his failure to participate in discovery and for his false deposition testimony. The Government's letter gave a detailed description of the failures and the false testimony.

Banjo did not attend the December 15, 1995, conference despite being notified by his attorney that he should attend. Banjo's attorney renewed his request to withdraw from the action on the grounds that, among other

things, Banjo refused to assist his attorney in his attempts to comply with the Government's discovery demands. Banjo's attorney noted that he would have no substantive response to the issues raised in the Government's December 7 letter and that he believed there was a "severe possibility" that the plaintiff would not even make the no fault threshold since he wouldn't be able to show that he had sustained a "serious" injury. According to plaintiff's counsel, Banjo had not seen Dr. Licciardi, his treating physician, for a year. The attorney indicated that he had told Banjo that the case should be voluntarily withdrawn so that Banjo could avoid the imposition of costs and sanctions. The Court directed Banjo's attorney to serve Banjo personally with his affidavit seeking to withdraw, the Government's December 7, 1995, letter, and an Order to Show Cause requiring Banjo to appear in person at a conference on January 5, 1996. The Order to Show Cause, which the Court issued on December 20, indicated that the plaintiff was required to show cause why the case should not be dismissed for failure to participate in discovery.

**\*4** On January 5, 1996, Banjo, his attorney and the Government attended a conference with the Court. The Court granted the attorney's request to withdraw, a request to which Banjo consented; confirmed that Banjo had been served with the Government's December 7 letter; and allowed Banjo additional time to obtain another attorney. The Court also set a briefing schedule for the Government's motion and advised Banjo of three alternatives with which he was faced. One alternative was to voluntarily dismiss the case before January 19. If he did so, the Government would not file the motion and would not ask the Court to impose costs on Banjo in connection with the motion. Another option was to obtain the services of a new attorney by January 19. If that lawyer asked for a conference with the Court, I indicated I would suspend the motion schedule until I had an opportunity to hear from the attorney. A third option was that Banjo would decide to pursue the case and respond to the Government's motion. In the case of the latter option, he ran the risk that I would grant the Government's request to impose sanctions, including a monetary fine against him, when I decided the motion. Banjo indicated that he understood his options.

In response to the Government's motion, plaintiff

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1996 WL 426364 (S.D.N.Y.)

(Cite as: 1996 WL 426364 (S.D.N.Y.))

asserts that "he had no Attorney ... to adequately represent him," and that his attorney "collaborated with the Government" and "was bought and purchased by the Government." With respect to the latter accusation, plaintiff apparently means that his attorney was paid by the Government to deter him from suing the Postal Service driver and instead to sue the Government; according to plaintiff, his attorney subsequently told him that "he could not take the Government to court and prevail." Finally, the plaintiff reiterates his various injuries and his belief that he is entitled to be paid for such injuries, and he requests leave of Court to sue the driver of the Postal Service truck that allegedly injured plaintiff.[FN3]

> FN3. Plaintiff's argument rests on the erroneous assumption that he could have stated a claim under the FTCA against the driver. So long as the driver was acting within the scope of his employment, the tort remedy under the FTCA against the Government is exclusive. *See* 28 U.S.C. § 2679(b)(1). For the same reason, plaintiff's application for leave to sue the driver is denied.

LAW

*Dismissal Under Rule 37(b)(2)*

Rule 37(b)(2), Fed.R.Civ.P., provides, in relevant part:

> If a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

> An order ... dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

So long as the Court has "clearly articulated [an] order ... requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with the order." *Turner v. Hudson Transit Lines, Inc.,* 1992 WL 51570, at *4 (S.D.N.Y. Mar. 9, 1992) (citing *Daval Steel Prods. v. M/V Fakredine,* 951

F.2d 1357, 1363 (2d Cir.1991) (citations omitted)). Because dismissal is a "harsh remedy" and should be used "only in extreme situations," it may be entertained only where the party has demonstrated " 'willfulness, bad faith, or any fault' " in the course of discovery. *See Bobal v. Rensselaer Polytechnic Inst.,* 916 F.2d 759, 764 (2d Cir.1990) (citing *Theilmann v. Rutland Hosp., Inc.,* 455 F.2d 853, 855 (2d Cir.1972); quoting *Salahuddin v. Harris,* 782 F.2d 1127, 1132 (citation omitted)). In addition, this sanction will be imposed only after the party has been warned of the risk of dismissal for failure to comply with Court orders. *See Bobal,* 916 F.2d at 764. Dismissal is appropriate, however, "where the plaintiff has demonstrated an unwillingness to fulfill the discovery obligations imposed by the Federal Rules of Civil Procedure." *Moore v. Kaye Ins. Assocs.,* 1995 WL 600244, at *3 (S.D.N.Y. Aug. 8, 1995) (Cote, J.).

**\*5** Although Rule 41(b), Fed.R.Civ.P., governs dismissals based on plaintiff's failure to prosecute, it is appropriate to be guided by those factors which courts consider before dismissing a case under Rule 41(b) prior to dismissing the case under Rule 37. *See Moore,* 1995 WL 600244, at *4. These factors are (1) the duration of plaintiff's failures; (2) whether plaintiff has received notice of the potential sanctions; (3) the prejudice to the defendant arising from plaintiff's actions; (4) due process considerations balanced against the Court's interest in managing its docket; and (5) the efficacy of lesser sanctions. *See Lucas v. Miles,* 1996 WL 273749, at *2 (2d Cir. May 16, 1996); *Jackson v. City of New York,* 22 F.3d 71, 74 (2d Cir.1994).

*Fees Under Rule 37(c)*

In addition, Rule 37(c) endows this Court with discretion to assess sanctions for failure to disclose or for disclosure of false or misleading information as required by the Federal Rules of Civil Procedure. Thus,

A party that without substantial justification fails to disclose information required by Rule 26(a) ... shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1996 WL 426364 (S.D.N.Y.)

(Cite as: 1996 WL 426364 (S.D.N.Y.))

sanctions ... [such as] payment of reasonable expenses, including attorney's fees, caused by the failure, [as well as sanctions pursuant to Rule 37(b)(2)(A), (B), and (C) ].

Rule 26(a)(5) provides parties with various discovery methods, including depositions, written interrogatories, production of documents, and requests to admit. *See* Rule 26(a)(5), Fed.R.Civ.P.

*Inherent Powers*

A court has inherent power "to supervise and control its own proceedings and to sanction counsel or a litigant for bad faith conduct." *Sussman v. Bank of Israel,* 56 F.3d 450, 459 (2d Cir.1995) (citing *Chambers v. Nasco, Inc.,* 501 U.S. 32, 43-50 (1990)). *See also U.S. v. Int'l Brotherhood of Teamsters,* 948 F.2d 1338, 1345 (2d Cir.1991), *cert. denied,* --- U.S. ----. Such power allows the Court discretion in choosing an appropriate sanction, ranging from counsel fees (whether imposed on counsel or his or her client) to outright dismissal for failure to prosecute. *See Chambers,* 501 U.S. at 43-45; *Teamsters,* 948 F.2d at 1345.

Nevertheless, bad faith conduct that can be adequately sanctioned under the Federal Rules does not usually warrant resort to the court's inherent power. *Chambers,* 501 U.S. at 50. Furthermore, sanctions pursuant to the court's inherent power are inappropriate unless the challenged conduct is: "(1) entirely without color and (2) motivated by improper purposes such as harassment or delay." *Milltex Indus. Corp. v. Jacquard Lace Co. LTD.,* 55 F.3d 34, 38 (2d Cir.1995) (internal quotation marks and citation omitted). Like other sanctions, the Court must be mindful of the litigant's or counsel's due process rights, and "due process concerns posed by an outright dismissal are plainly greater than those presented by assessing counsel fees against lawyers." *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767 & n. 14 (1980). Finally, a court's factual findings of bad faith must entail "a high degree specificity." *Id.* (internal quotation marks omitted).

DISCUSSION

**\*6** The Government's discovery demands reasonably sought to obtain information about plaintiff's prior accidents, medical treatment, post-accident injuries, and

work activities to evaluate plaintiff's claim that the accident caused him a serious injury as required by New York's No Fault law. The Government's discovery demands concerning the state of plaintiff's limousine after the accident were also eminently reasonable since they directly relate to the extent of plaintiff's property damage and economic loss allegedly caused by the accident.

*Willfulness and Duration of Plaintiff's Failures*

Plaintiff, through his counsel, originally agreed to complete discovery by September 19, 1995. This deadline was subsequently extended to November 22, 1995. Plaintiff has been on notice of specific discovery requests since the Government's September 19, 1995 letter; this Court's September 28, 1995 Order clearly required plaintiff to respond to the Government's discovery demands as set forth in said letter (with certain exceptions) no later than October 20, 1995. Plaintiff has failed to produce, for example, the photographs plaintiff took of his limousine, documents relating to the alleged property damage, and various medical bills. In addition, the September 28 Order required plaintiff to provide answers to the Government's interrogatories by November 22, 1995; to date, no sworn interrogatory answers have been provided to the Government. The September 28 Order also required plaintiff to satisfy the Government's Rule 26 discovery demands regarding plaintiff's proposed experts no later than October 27, 1995. The Court's November 27, 1995 Order extended this deadline to December 5, 1995, but to date, no expert reports have been produced by the plaintiff. The duration of plaintiff's delay in conducting basic discovery, therefore, has been extensive and in willful disregard of Court orders.

*Notice and Due Process Considerations*

Plaintiff has been on notice of the instant motion since early December 1995. This Court gave plaintiff several opportunities to respond to the threat of sanctions set forth in the Government's December 7 letter. Plaintiff was given an opportunity to appear before this Court on December 15, 1995, but he failed to appear. The December 20 Order to Show Cause expressly warned plaintiff of the threat of dismissal. Most importantly, when plaintiff did appear before this Court in response to the December 20 Order on January 5, 1996, this Court gave plaintiff one final opportunity to withdraw his case or otherwise face the

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1996 WL 426364 (S.D.N.Y.)

(Cite as: 1996 WL 426364 (S.D.N.Y.))

threat of sanctions. Plaintiff, therefore, has had ample notice of the instant motion and ample opportunity to respond to said motion; due process requires no more.
*Prejudice to the Defendant*

Plaintiff's discovery failures have precluded the Government from learning the extent of plaintiff's alleged bodily injuries and property or economic damages; without question, discovery into these matters is essential in a personal injury case such as this one, and plaintiff's failure to produce such relevant facts "substantially impairs an adversary's ability to answer the plaintiff's allegations and to defend oneself at trial." *Moore, 1995 WL 600244, at \*4*.
*Efficacy of Lesser Sanctions*

**\*7** Discovery has long been over. Given the paucity of information which the Government has gathered regarding plaintiff's alleged injuries both bodily and economic, and the complete failure to produce Dr. Licciardi's expert report, there is no lesser sanction short of dismissal that is appropriate under these circumstances. Simply put, plaintiff cannot show that his alleged noneconomic injuries are "serious" as required by New York's No Fault law. Requiring the Government to bear the expense of a trial in such circumstances would be both unnecessary and costly. Furthermore, with respect to the Government's charges that plaintiff lied at his deposition, I find that plaintiff's response to said charges is inadequate and strongly indicative of his unwillingness to conduct discovery honestly and responsibly. Additionally, plaintiff's failure to sign and return his deposition, with or without corrections, is further evidence of plaintiff's willful failure to participate in discovery. Such willful obstruction of discovery has in the past warranted dismissal pursuant to Rule 37 "not only as punishment for [such] conduct, but also as a deterrent to others." *See Nittolo v. Brand, 96 F.R.D. 672, 676 (S.D.N.Y.1983)*.
*Monetary Sanction*

For the same reasons, plaintiff's inadequate explanations for the inconsistencies which the Government discovered regarding plaintiff's deposition clearly demonstrate that plaintiff has acted in bad faith and with the improper motive to frustrate discovery by the Government.

CONCLUSION

Dismissal pursuant to Rule 37(b)(2), Fed.R.Civ.P., is therefore warranted. The Clerk of Court is hereby ordered to dismiss the Complaint with prejudice. I further find that a monetary sanction pursuant to Rule 37(c), Fed.R.Civ.P., due to plaintiff's failure to produce documents and sworn interrogatory answers is appropriate under the circumstances. This monetary sanction is also made pursuant to this Court's inherent powers for plaintiff's false deposition testimony. The plaintiff is ordered to pay $200.00 in attorney's fees and costs to the defendant within 60 days after entry of this Order. The Government's motion for costs and attorney's fees beyond this amount is denied in light of plaintiff's limited economic circumstances.

SO ORDERED:

S.D.N.Y.,1996.

Banjo v. U.S.
Not Reported in F.Supp., 1996 WL 426364 (S.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2006 WL 2806402 (N.D.N.Y.)

(Cite as: 2006 WL 2806402 (N.D.N.Y.))

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Quentin LA GRANDE, Plaintiff,
v.
ADECCO, Defendant.
No. 1:03-CV-1453 (GLS/RFT).

May 10, 2006.
Sept. 28, 2006.
Quentin La Grande, Albany, NY, Plaintiff, Pro Se.

David J. Wukitsch, Esq., McNamee, Lochner, Law Firm, Albany, NY, for Defendants.

### DECISION AND ORDER

GARY L. SHARPE, U.S. District Judge.

#### I. *Introduction*

*1 Plaintiff *pro se* Quentin La Grande brings this suit alleging unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Pending are his objections to Magistrate Judge Randolph F. Treece's Report, which recommended dismissal of La Grande's complaint. *See Dkt. Nos.* 65, 66. For the following reasons, La Grande's objections are without merit, and the court adopts Judge Treece's Report-Recommendation in its entirety.

#### II. *Procedural History* [FN1]

FN1. The Clerk is directed to append Judge Treece's Report-Recommendation to this decision, and familiarity is presumed. *See Dkt. No.* 65.

Since this action was commenced in December 2003, La Grande has failed to comply with numerous orders by the court, including, but not limited to, all discovery requirements. Despite the issuance of an order for sanctions and an emergency stay, La Grande has continued to frustrate the litigation with delay and willful noncompliance. A complete procedural history is well-documented in Judge Treece's report. *See Dkt. No.* 65, pp. 1-8.

#### III. *Discussion*

##### A. *Objections*

La Grande's objections are non-specific and frivolous. Therefore, he has procedurally defaulted. *See Almonte v. N.Y. State Div. of Parole,* 9:04-CV-484, 2006 WL 149049 (N.D.N.Y. Jan. 18, 2006). However, his objections generally state that dismissal is unwarranted and that he can provide evidence that he did not willfully disregard previous court orders. He specifically requests that the court grant him an additional stay. These contentions are without merit. As Judge Treece noted, at no time has La Grande provided any evidence detailing: (1) that he complied with discovery requirements; (2) the reason why he was not able to attend his deposition; and (3) that he never received the requested materials and the notice of deposition from Adecco. La Grande has offered no substantial justification for his willful disregard of discovery requirements. *See* FED. R. CIV. P. 37(c)(1); *see also Jockey Int'l, Inc. v. M/V "Leverkusen Express,"* 217 F.Supp.2d 447, 452 (S.D.N.Y.2002). Moreover, La Grande was notified on several occasions that his continuous failure to comply with discovery requests would result in the dismissal of his action. Accordingly, finding no clear error, La Grande's objections are without merit.

#### IV. *Conclusion*

Since Judge Treece's findings are not clearly erroneous, *see Almonte v. N.Y. State Div. of Parole,* 04-CV-484, 2006 WL 149049, at *1 (N.D.N.Y. Jan. 18, 2006), this court accepts and adopts the recommendation of Judge Treece for the reasons stated in the May 10, 2006 Report-Recommendation.

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that the Report-Recommendation filed

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2806402 (N.D.N.Y.)

(Cite as: 2006 WL 2806402 (N.D.N.Y.))

on May 10, 2006 is **ACCEPTED** in its entirety for the reasons stated therein, and it is further

　**ORDERED** that La Grande's request for an emergency stay (**Dkt. No. 64**) is **DENIED,** and it is further

　**ORDERED** that the motion for sanctions and dismissal filed on behalf of the defendant (**Dkt. No. 44**) is **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY,** and it is further

　**\*2 ORDERED** that the Clerk of the Court provide copies of this Order to the parties.

　**IT IS SO ORDERED.**

RANDOLPH F. TREECE, U.S. Magistrate Judge.

### *REPORT-RECOMMENDATION AND ORDER*
### I. PROCEDURAL HISTORY

This action was commenced by *pro se* Plaintiff Quentin La Grande [FN1] on December 5, 2003, against Adecco USA, Inc., [FN2] alleging discriminatory practices by the Defendant in violation of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991. Dkt. No. 1, Compl. Specifically, Plaintiff alleges that Defendant, a Temp Agency, sent him on a job assignment where he was met with inappropriate questions from the supervisor and was given negative feedback from the supervisor at this particular assignment. After complaining to Defendant, Plaintiff claims he was no longer given "high-paying" office work assignments and, on April 4, 2003, he received a letter notifying him that he was terminated and the matter was closed. Plaintiff then commenced this action alleging he was discriminated against by Defendant.

　FN1. Mr. La Grande is no stranger to *pro se* litigation. In this District, since 2000, Plaintiff has initiated eight civil lawsuits, each alleging some form of discriminatory practice on behalf of the Defendants whether it be race, gender, or even age discrimination. *See La Grande v. Key Bank Nat'l, et al.,* Civ. No. 1:00-cv-1195 (HGM/RFT) (race and gender discrimination) (lead case consolidated with *La Grande v. Leonard, et al.,* Civ. No. 5:00-cv-1300

(HGM/RFT) as the member case); *La Grande v. Bestemp Select, Inc., et al.,* Civ. No. 1:03-cv-1276 (LEK/RFT) (race discrimination); *La Grande v. Adecco,* Civ. No. 1:03-cv-1453 (within case); *La Grande v. Empire Blue Cross and Blue Shield, et al.,* Civ. No. 1:04-cv-373 (NAM/RFT) (age discrimination); *La Grande v. Anderson, et al.,* Civ. No. 1:04-cv-1020 (GLS/RFT) (race discrimination); *La Grande v. DeCresente Distributing Co., Inc.,* Civ. No. 1:06-cv-467 (FJS/DRH) (race discrimination); *La Grande v. DeCrescente Distributing Co., Inc.,* Civ. No. 1:06-cv-469 (FJS/DRH) (race discrimination).

　FN2. Plaintiff incorrectly designated Defendant as "Adecco" in his Complaint.

The initial conference was set for March 18, 2004, before this Court and the Civil Case Management Plan was due on March 3, 2004. Dkt. No. 4. At the Rule 16 Conference, *inter alia,* dates certain were set for Joinder of Parties (6/30/2004), Amendment of Pleadings (6/30/2004), Mediation (7/15/04), Discovery (12/30/2004), and Motions (3/30/05). Dkt. No. 7. Despite the conspicuous statement in the Uniform Pretrial Scheduling Order (hereinafter "UPSO") that the **"DEADLINES SET FORTH ... ARE FIRM AND WILL NOT BE EXTENDED, EVEN BY STIPULATION OF THE PARTIES, ABSENT GOOD CAUSE[,]"** such has apparently been systematically ignored by Plaintiff. Dkt. No. 7 at p. 1 (emphasis in original); *see also* FED. R. CIV. P. 16(b).

Only two months after the Rule 16 Conference, the first problem with Plaintiff set in motion what would be a pattern of non-compliance with Court Orders. Within the UPSO, the Court designated this action for Mandatory Alternate Dispute Resolution ("ADR"). Dkt. No. 7 at pp. 9-10. Accordingly, the parties were directed to select, within ten (10) days from the issuance of the Order, a neutral of their choice from a list of court approved neutrals; such list was readily available to both parties on this District's website. *Id.* at p. 9; *see also* http://www.nynd.uscourts.gov/adr.htm. The Court's ADR Administrator sent a "Notice of Deadline to Select Neutral" to the parties notifying them that they were "late

Not Reported in F.Supp.2d, 2006 WL 2806402 (N.D.N.Y.)

(Cite as: 2006 WL 2806402 (N.D.N.Y.))

in selecting a neutral." Dkt. No. 13. This late notice notification extended the date for another ten (10) days from the date it was sent to the parties. *Id.* It also stated that should the parties fail to select a neutral, the Court would appoint a neutral for them. *Id.* Shortly thereafter, Defendant moved to have the Court appoint a neutral as communications between Plaintiff and Defendant's Counsel proved unfruitful. Dkt. No. 14. Then, on May 21, 2004, a Text Order was issued by this Court whereupon it was noted that Plaintiff failed to disclose his mandatory discovery pursuant to Rule 26.[FN3] Text Order, dated May 21, 2004. Plaintiff agreed that he would share the required information on or before May 28, 2004, and he was duly informed by this Court that if he "fail[ed] to comply with discovery, he may be SUBJECT TO SANCTIONS, WHICH COULD INCLUDE DISMISSAL OF HIS LAWSUIT." *Id.* (emphasis in original).

> FN3. Federal Rule of Civil Procedure 26 gives a laundry list of things that a party must provide to opposing parties without awaiting a discovery request. These disclosures must be made at or within 14 days after the Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in the circumstances of the action and states the objection in the Rule 26(f) objection.

**\*3** The ADR Deadline, which was originally scheduled to conclude on July 15, 2004, Dkt. No. 7, was extended, at Defendant's request, to August 15, 2004, in order to accommodate the mediator's schedule, Dkt. No. 17. However, on August 2, 2004, Defendant's Counsel again requested an extension of such deadline, this time due to delays associated with Plaintiff's efforts to find legal representation. Dkt. No. 18. The Court, once again, extended the ADR Deadline to October 15, 2004, and noted that this would be the final extension. Dkt. No. 22. In addition, the Court noted that "[t]he Plaintiff **must** participate in the Mediation even if he does not have an attorney. Plaintiff's **failure to participate in the Mediation may lead to Sanctions, which could include Dismissal of his lawsuit.**" *Id.* (emphasis added). Ultimately, ADR was unsuccessful. Dkt. No. 25.

Shortly after completion of ADR, the Court received another letter from Defendant's Counsel, dated April 18, 2005, seeking "a discovery conference and for permission to file a motion to compel disclosure" because of Plaintiff's failure to respond to Defendant's written discovery requests and Plaintiff's failure to appear for his deposition on April 15, 2005. Dkt. No. 27. Defendant's Counsel explained that the request for Plaintiff's written discovery was sent on February 9, 2005, and a notice of deposition was sent on February 28, 2005, with a scheduled deposition date of April 15, 2005.[FN4] *Id.* Furthermore, Plaintiff's failure to appear for the scheduled deposition caused the Defendant to incur unnecessary expenses, which could have been prevented had Plaintiff notified them in a timely fashion that he would not be able to attend the scheduled deposition. Because this Court previously warned Plaintiff of the consequences of his failure to comply with discovery, this Court granted Defendant's request to file a motion to compel. Dkt. No. 28. Plaintiff was warned that his failure to oppose "Defendant's motion could result in dismissal of his action in which there will be no trial." *Id.* at p. 2. At this point in the litigation, had Plaintiff not delayed this litigation through his uncooperative behavior, in accordance with the original Scheduling Order, this case would have been deemed trial ready. Since, however, a decision on the Defendant's Motion could potentially dispose of the litigation, this Court removed the case from the trial ready list.[FN5]

> FN4. Both the written discovery requests and the notice of deposition were sent to Plaintiff's record address via United States Postal Service and were neither returned to the post office nor to the sender.

> FN5. Defendant's request for an extension of pre-trial deadlines was denied. Dkt. No. 30.

On May 13, 2005, Defendant filed its Motion seeking sanctions against Plaintiff in the form of dismissal of the action due to Plaintiff's failure to comply with prior Court Orders to provide discovery responses. Dkt. No. 31. Defendant sought in the alternative, should this Court find dismissal too severe, to impose sanctions against Plaintiff,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2806402 (N.D.N.Y.)

(Cite as: 2006 WL 2806402 (N.D.N.Y.))

to compel Plaintiff to provide outstanding discovery responses, and any other relief the Court may deem appropriate. *Id.* Plaintiff's response to the Motion was due on June 6, 2005. *Id.* On June 3, 2005, the Court received a "status report" from Plaintiff wherein he professed that he has "provided the defendant Adecco and its counsel with all of the mandatory disclosures and in responding to discovery." Dkt. No. 32. However, Plaintiff did not provide any evidence to substantiate such contention nor did Plaintiff state the reason why he failed to appear at the scheduled deposition which caused Defendant to incur an unnecessary expense. *Id.*

  **\*4** On July 13, 2005, this Court ruled on Defendant's Motion and held that dismissal "[was] not warranted when there are other remedies that can be exercised[.]" Dkt. No. 33 at p. 8. Instead, the Court imposed monetary sanctions directing Plaintiff to reimburse the Defendant $325 for deposition costs they incurred with further direction that Plaintiff comply with discovery and participate in another deposition. *Id.* Specifically, the Court directed Plaintiff to respond to Defendant's Demand for Interrogatories and Production of Documents on or before August 18, 2005. We further directed Plaintiff to appear at a deposition on or before August 30, 2005. Dkt. No. 33 at p. 8. As to the monetary sanction, this Court established a payment schedule whereupon Plaintiff would pay the sum of $325 to the Law Firm of McNamee, Lochner, Titus & Williams, P.C., in two installments, the first installment of $175 was due on or before September 15, 2005, and the remaining $150 was due on or before December 15, 2005. *Id.* Finally, the UPSO was amended whereupon the Discovery Deadline was extended to September 30, 2005, and the Motion Filing Deadline was extended to October 30, 2005. *Id.* Most importantly, the Court again warned Plaintiff that **"FAILURE TO COMPLY WITH THIS ORDER SHALL LEAD TO SANCTIONS WHICH MAY INCLUDE A DISMISSAL OF THE PLAINTIFF'S LAWSUIT."** *Id.*

  On August 24, 2005, instead of complying with this Court's Order, Plaintiff filed an appeal to the District Judge, purportedly in accordance with Local Rule 72.1(b). Dkt. No. 34. Though filed untimely, the District Court accepted Plaintiff's appeal and set a briefing schedule. Dkt. No. 36. Defendant opposed Plaintiff's appeal. Dkt.

Nos. 40-42. On January 27, 2006, the District Judge denied Plaintiff's appeal, thereby upholding this Court's rulings and sanctions. Dkt. No. 56. Plaintiff then appealed such decision to the Second Circuit, Dkt. No. 59, who *sua sponte* determined it lacked jurisdiction over Plaintiff's appeals as a final order has not been issued by the District Court. Dkt. No. 63. Thus, Plaintiff's appeals were dismissed. [FN6] *Id.*

> FN6. In addition to appealing the District Judge's Decision, Plaintiff filed other appeals to the Second Circuit, including an appeal from a Document Rejection Order, Dkt. Nos. 47 and 48, and a Text Order, dated October 14, 2005, allowing Defendant to file a renewed motion for sanctions, Dkt. No. 49. Apparently Plaintiff's appeals were considered together and summarily dismissed for lack of jurisdiction.

  Prior to the District Court's issuance of a decision on Plaintiff's appeal, Defendant sought permission to renew its motion to compel discovery and sanctions against Plaintiff for his failure to comply with the July 13, 2005 Order. Dkt. No. 43. Defendant claimed that as of October 4, 2005, the date of the letter request, Plaintiff had failed to comply with **any** of the requirements in said Order. *Id.* By Text Order, dated October 4, 2005, this Court granted Defendant's request. The Second Motion for Sanctions was filed by Defendant on October 13, 2005, wherein Defendant sought dismissal of the pending action due to Plaintiff's repeated failure to comply with prior Court Orders. Dkt. Nos. 44 & 45. A response to such Motion was due on October 31, 2005. On November 23, 2005, Plaintiff requested an adjournment and emergency stay of the action, requesting that the Court grant him a sixty (60) day adjournment because he was in the process of retaining counsel and needed more time to pay counsel a balance of $100 for reviewing his case. Dkt. No. 53. A Text Order was issued on November 23, 2005, wherein this Court granted in part and denied in part Plaintiff's request. The Court granted a stay until January 13, 2006,[FN7] upon the condition that Plaintiff file a status report detailing his efforts to retain an attorney on or before said date. Dkt. No. 54.

> FN7. The Text Order, dated November 23, 2005,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2806402 (N.D.N.Y.)

(Cite as: 2006 WL 2806402 (N.D.N.Y.))

mistakenly set a status report date of January 13, 2005, when clearly 2006 was contemplated.

**\*5** Not surprisingly, on January 17, 2006, after the deadline set by this Court had expired, Plaintiff attempted to file a Motion to Continue the Stay for an additional thirty (30) days. Such Motion, however, was rejected due to Plaintiff's failure to indicate, per Local Rule 4.1(a), that his opponents were duly served with said Motion. Dkt. No. 55. Plaintiff was further informed that the Stay imposed on November 23, 2005, was lifted on January 13, 2006, by operation of the expiration of the deadline set in that Order. Since Plaintiff's request to extend the Stay was dated January 17, 2006, it was untimely. The Court indicated it was not prepared to re-instate the Stay and gave Plaintiff until February 2, 2006 to respond to Defendant's pending Motion. On January 25, 2006, Plaintiff again sought to renew his Motion to continue the Stay. Dkt. No. 58. Such Motion was denied. Dkt. No. 62. The Court never received a response from Plaintiff to Defendant's renewed Motion for Sanctions. On April 25, 2006, as this Report-Recommendation was being drafted, the Court received a Motion for an Emergency Stay, wherein Plaintiff once again sought a sixty-day adjournment in order to retain Karen Kimball as an attorney. Dkt. No. 64. Ms. Kimball has never made an appearance in this case despite Plaintiff's claims of intent to retain her. As explained more fully below, this Court **denies** Plaintiff's belated request for a Stay and further recommends **granting** Defendant's Motion and dismissing this entire action.

## II. APPLICABLE LAW

### A. Authority Granted Pursuant to the Federal Rules of Civil Procedure

Federal Rule of Civil Procedure 37(c)(1) provides that:

A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard,

may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

In addition, as set forth in Federal Rule of Civil Procedure 37(b)(2), a court may consider imposing the following as sanctions:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

**\*6** (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or **dismissing the action** or proceeding or any part thereof, or rendering a judgment by default against the disobedient party....

(emphasis added).

The purpose of a Rule 37 sanction is to: (1) ensure that the noncomplying party is not able to reap the benefits from his noncompliance; (2) serve as a deterrent; and (3) seek compliance with court imposed orders. *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1066 (2d Cir.1979). The degree of sanctions that the court can impose on a noncomplying party ranges from the mildest, such as ordering the party to reimburse for expenses incurred due to his/her non-compliance, or the harshest order, such as ordering dismissal or default. *Id.; see also Valentine v. Museum of Modern Art,* 29 F.3d 47, 49-50 (2d Cir.2004).

Courts are given broad discretion in imposing Rule 37 sanctions. *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 107 (2d Cir.2002) (citing *Selletti v. Carey,* 173 F.3d 104, 110 (2d Cir.1999)); *see also*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2806402 (N.D.N.Y.)

(Cite as: 2006 WL 2806402 (N.D.N.Y.))

*Valentine v. Museum of Modern Art,* 29 F .3d at 49. However, before imposing sanctions, the court **may** consider: (1) the history of the party's failure to comply with court orders; (2) whether the party violating the order was given ample time to respond; (3) the effectiveness of alternative sanctions; (4) whether the non-complying party was warned and given an opportunity to argue the impending sanctions; (5) the prejudice to the adversary caused by failure to comply; (6) whether the document at issue would normally be readily obtainable; and (7) the extent of the party's personal responsibility. *Bambu Sales Inc. v. Ozak Trading Inc.,* 58 F.3d 849, 852-54 (2d Cir.1995); *Momah v. Messina Mem'l. Hosp. & Bond,* 1998 WL 129045, at *5 (N.D.N.Y. Mar. 6, 1998).

As the imposition of sanctions is a drastic remedy, it should be considered in cases where it has been established that the non-complying party's failure to comply was wilful, done in bad faith or a callous disregard of the responsibilities set forth in the Federal Rules of Civil Procedure or a court order. *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 639-40 (1976) (citing *Societe Internationale v. Rogers,* 357 U.S. 197, 212 (1958)); *State of New York v. Almy Brothers, Inc.,* 1998 WL 57666, at *9 (N.D.N.Y. Feb. 4, 1998); *Hinton v. Patnaude,* 162 F.R.D. 435, 439 (N.D.N.Y.1995) (flagrant bad faith). Furthermore, gross negligence and in some instances, ordinary negligence may suffice to show wilful and flagrant bad faith. *Cine Forty-Second Street Theatre Corp.,* 602 F.2d at 1066-68 (deliberate tactical intransigence and/or gross negligence); *see also Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99 (2d. Cir.2002) (ordinary negligence); *Burks v. Eagan Real Estate Inc.,* 742 F.Supp. 49, 51-52 (N.D.N.Y.1990) (drastic remedy or a default judgment should not be considered unless the failure to comply was the result of bad faith or gross negligence).

*7 In order for a court to find that a party acted wilfully, the order of the court must be clear, there must be no misunderstanding of the intent of the order, and, further, there is no other factor beyond the party's control which contributed to the non-compliance. *Bambu Sales,* 58 F.3d at 852-53. A "party's persistent refusal to comply with a discovery order presents sufficient evidence of wilfulness, bad faith or fault." *Handwerker v. AT & T*

*Corp.,* 211 F.R.D. 203, 209 (S.D.N.Y.2002) (quoting *Monoghan v. SZS 33 Assoc., L.P.,* 148 F.R.D. 500, 509 (S.D.N.Y.1993) (noting that "unexcused failure to comply with two discovery orders warranted dismissal")). However, this statute permits either substantial justification or harmlessness to blunt the impact of sanctions. *Grdinich v. Bradlees,* 187 F.R.D. 77, 79 (S.D.N.Y.1999) (citing *Hinton v. Patnaude,* 162 F.R.D. at 439)).

Substantial justification in this context means "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Jockey Int'l, Inc. v. M/V "Leverkusen Express,"* 217 F.Supp.2d 447, 452 (S.D.N.Y.2002) (quoting *Henrietta D. v. Giuliani,* 2001 WL 1602114 at *5 (E.D.N.Y. Dec. 11, 2001)). There is no exception to honoring and respecting discovery orders. All litigants and litigators, including *pro se,* must comply and when they flout their obligation, they must suffer the consequences of such action. *Baker v. Ace Advertisers' Serv. Inc.,* 153 F.R.D. 38, 40 (S.D.N.Y.1992) (citing *Salahuddin v. Harris,* 782 F.2d 1127, 1132 (2d Cir.1986)); *see also Valentine v. Museum of Modern Art,* 29 F.3d at 50 (imposing sanctions on *pro se* plaintiff); *Scott v. Town of Cicero Police Dep't,* 1999 WL 102750 (N.D.N.Y. Feb. 24, 1999) (providing *pro se* plaintiff an additional opportunity to be heard before imposing sanctions). Furthermore, "disclosure of evidence [is meant to] proceed at the initiative of the parties, free from the time-consuming and costly process of court intervention." *Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredline,* 951 F .2d 1357, 1365 (2d Cir.1991) (citation omitted). "When a party seeks to frustrate this design by disobeying orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate." *Id.* at 1365 (citing *Nat'l Hockey League,* 427 U.S. at 643).

**B. Inherent Authority**

Furthermore, courts may turn to their inherent powers, which are innate to its creation, to impose respect for its lawful mandates. *United States v. Seltzer,* 227 F.3d 36, 39-42 (2d Cir.2000); *DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 136 (2d Cir.1998). Federal courts have always had the inherent power to manage their own

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2806402 (N.D.N.Y.)

(Cite as: 2006 WL 2806402 (N.D.N.Y.))

proceedings and to control the conduct of those who may appear before them, and when a party acts "in bad faith, vexatiously, wantonly, or for oppressive reasons," the courts may exercise their discretion in fashioning a remedy. *Chambers v. Nasco, Inc.,* 501 U.S. 32, 45-46 (1991) (citations omitted). Even in the absence of a discovery order, a court may impose sanctions for misconduct during discovery through this inherent power to manage its affairs. *Residential Funding Corp.,* 306 F.3d at 106-07.

**\*8** However, before a court can exercise this enormous power, it should do so with restraint and upon the finding of bad faith and where abuse litigation practices are evident. *DLC Mgmt. Corp.,* 163 F.3d at 136; *see also Sanders v. City of New York,* 218 F.Supp.2d 538, 542-43 (S.D.N.Y.2002) (citing *Reilly v. Natwest Markets Group, Inc.,* 181 F.3d 253, 267 (2d Cir.1999) for the proposition that when a court exercises its inherent power to impose sanctions for the discovery abuse of spoliation, neither bad faith nor intentional misconduct is necessary).

### III. ANALYSIS

Plaintiff commenced this action against Defendant over two years ago. Due to Plaintiff's blatant disregard of the judicial process, this Court is faced with another Motion to Compel and/or Sanctions against Plaintiff for his failure to comply with discovery and numerous Court Orders. For the reasons set forth below, the facts of this case requires a stringent penalty and it is **recommended** that Plaintiff's cause of action against Defendant be **dismissed with prejudice**.

Pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, a court may dismiss an action, on motion or on its own initiative, for the "failure of the plaintiff to prosecute or to comply with [the Federal Rules of Civil Procedure] or any order of court [.]" FED. R. CIV. P. 41(b). Rule 37 of the Federal Rules of Civil Procedure also authorizes dismissal of an action due to a party's failure to comply with discovery and/or court orders. *See also* N.D.N.Y.L.R. 1.1(d) & 7.1(d). Given the harsh nature of dismissals, such dismissals are "appropriate only in extreme circumstances." *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996). Furthermore, a court must be cognizant of the special latitude to be given to *pro se* litigants. *Webb v. Bermudez,* 1996 WL 599673, at \*1 (S.D.N.Y. Oct. 17,

1996) (citing *Salahuddin v. Harris,* 782 F.2d at 1132). However, just because La Grande is proceeding *pro se* does not mean that he can thwart the judicial process as he chooses. This Circuit has held that "while *pro se* litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including *pro ses,* have an obligation to comply with court orders. When they flout that obligation they, like all litigants, must suffer the consequences of their actions." *McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 124 (2d Cir.1988). On numerous occasions, this Court has informed Plaintiff that his failure to comply with Court Orders may subject him to sanctions, which could include dismissal of his lawsuit. *See* Text Order, dated May 21, 2004; Dkt. Nos. 22, 28 & 33. This Court notified Plaintiff, on May 21, 2004, that he was late in submitting the required disclosures as set forth in Federal Rule of Civil Procedure 26 and Plaintiff agreed that the required material would be submitted on or before May 28, 2004. Almost one year after the May 21, 2004 Text Order was issued, Defendant requested permission to file a motion to compel disclosure and/or impose sanctions because Plaintiff failed to respond to Defendant's written discovery and failed to appear at a scheduled deposition. Dkt. No. 27. At no time has Plaintiff indicated or provided any evidence detailing (1) that he complied with discovery requirements; (2) the reason why he was not able to attend his deposition; and/or (3) that he never received the requested materials and the notice of deposition from Defendant. Plaintiff has not provided any substantial justification whatsoever as to his failure to respond to the discovery request nor for his failure to attend the scheduled deposition.

**\*9** As indicated above, substantial justification in this context means "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Jockey Int'l, Inc. v. M/V "Leverkusen Express,"* 217 F.Supp.2d at 452 (quoting *Henrietta D. v. Giuliani,* 2001 WL 1602114, at \*5). If Plaintiff had contacted Defendant and proffered a valid reason for not responding to the discovery request or circumstances that prevented him from attending the scheduled deposition, the parties could potentially have come to an agreement. However, instead of trying to resolve the matter without court

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2806402 (N.D.N.Y.)

(Cite as: 2006 WL 2806402 (N.D.N.Y.))

intervention, as required by the Local Rules, Plaintiff chose to disregard both mailings that were sent to his record address, and likewise ignore several Court Orders directing that he comply with his obligations in the discovery phase of this litigation. Because of Plaintiff's failure to provide this Court or Defendant with substantial justification as to why the written discovery went unanswered and why he failed to attend the scheduled disposition, Defendant instituted their first Motion to Compel/Sanctions, which this Court granted in part and provided directives; Plaintiff patently ignored these directives.

The degree of sanctions that the court may impose on a non-complying party ranges from the mildest, such as ordering the party to reimburse for expenses incurred due to non-compliance, or the harshest order, such as ordering dismissal or default. *Cine Forty-Second Street Theatre Corp.,* 602 F.2d at 1066; *see also Valentine v. Museum of Modern Art,* 29 F.3d at 49. In ruling on Defendant's First Motion for Sanctions, and keenly aware of the drastic nature of dismissal as a sanction, this Court chose to impose monetary sanctions against Plaintiff for the expense Defendant incurred in connection with the deposition Plaintiff failed to attend. We further compelled Plaintiff to respond to outstanding discovery requests and to participate in another deposition. Time and time again, this Court warned Plaintiff of the consequences of his failure to comply, which could include dismissal of the lawsuit; not surprisingly, such admonitions have clearly fallen on deaf ears. Dkt. No. 33.

The Court's intention in previously imposing a less severe sanction was to impose upon Plaintiff the notion that his actions in not following this Court's Orders and the Rules of Civil Procedure had consequences. We further hoped that Plaintiff would be more cooperative in the judicial process. Obviously, such was nothing more than a hopeless effort. Plaintiff again chose to ignore this Court's Order and filed an appeal. However, filing an appeal does not automatically give a party the right not to obey with a Court Order. As stated in *Maness v. Meyers,* Orders issued by a court **must** be obeyed, even if it is later shown to be erroneous. 419 U .S. 449, 458 (1975) ("If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, **absent a stay,** he

**must** comply promptly with the order pending appeal." (emphasis added)). Therefore, Plaintiff was required to comply with this Court's Order pending a decision on his appeal, which he did not.

**\*10** In light of Plaintiff's incessant non-compliance, Defendant requested this Court's permission to file yet another Rule 37 Motion. Dkt. No. 43. Defendant has tried every conceivable avenue to have Plaintiff comply with this Court's Orders so that the action *instituted by Plaintiff* could expeditiously move forward. Plaintiff's "wilful, obstinate refusal to play by the basic rules of the system upon whose very power [he] is calling [on] to vindicate his rights" cannot be tolerated any longer. *McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d at 124 (quoting *McDonald v. Head Criminal Court Supervisor Officer,* 117 F.R.D. 55, 58 (S.D.N.Y.1987)).

Plaintiff has tied up the Court's resources with his callous disregard for this Court's Orders and the Court's Rules for more than two years and it is not unreasonable to conclude that due to his behavior, Defendant has been prejudiced substantially. Prejudice against a party may be presumed from the amount of delay. *See United States ex rel. Drake v. Norden Sys.,* Inc., 375 F.3d 248, 255 (2d Cir.2004); *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 42-43 (2d Cir.1982). While *pro se* litigants are given special latitude, this is not a reason for non-compliance with specific and numerous Court Orders. Furthermore, "disclosure of evidence [is meant to] proceed at the initiative of the parties, free from the time-consuming and costly process of court intervention." *Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredline,* 951 F.2d 1357, 1365 (2d Cir.1991). "When a party seeks to frustrate this design by disobeying orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate." *Id.* at 1365 (citing *Nat'l Hockey League,* 427 U.S. at 643).

This Court has been more than accommodating and patient with Plaintiff when, for example, Plaintiff requested an Emergency Stay for sixty (60) days in order to obtain Mrs. K. Kimball as his attorney and to give her time to prepare so she can adequately represent him. Dkt. No. 53. The Emergency Stay was granted in part and denied in part. The condition on which this Stay was

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2806402 (N.D.N.Y.)

(Cite as: 2006 WL 2806402 (N.D.N.Y.))

extended was based upon Plaintiff filing a status report detailing his efforts to retain an attorney on or before January 13, 2005. Dkt. No. 54, Text Order, dated Nov. 23, 2005. Again, Plaintiff failed to file any status report indicating his efforts to obtain an attorney as part of the condition for the Stay being granted.

In order for a court to find that a party acted wilfully, the order of the court must be clear and there is no misunderstanding of the intent of the order, and, further, there is no other factor beyond the party's control which contributed to the non-compliance. *Bambu Sales,* 58 F.3d at 852-53. A "party's persistent refusal to comply with a discovery order' presents sufficient evidence of wilfulness, bad faith or fault." *Handwerker v. AT & T Corp.,* 211 F.R.D. at 209 (quoting *Monoghan v. SZS 33 Assoc., L.P.,* 148 F.R.D. at 509 (noting that "unexcused failure to comply with two discovery orders warranted dismissal")). Plaintiff's willful disregard of Court Orders is evident. Plaintiff has continuously ignored this Court's previous sanctions and admonitions and, therefore, at this stage, we find the notion of giving him more warnings as it would provide to be a waste of judicial time as it would provide to be unfruitful as it has been for the past two years. Ineluctably, this Court has repeatedly extended special latitude to this *pro se* litigant, all for naught. Attempts to use Rule 37 as either a deterrent or to promote compliance has been equally unavailing. Thus, based on the totality of the circumstances and discussions of the factors set forth, we believe that **dismissal** is warranted in this action. In light of this recommendation and the facts set forth above, we deny Plaintiff's belated request for yet another Stay. Dkt. No. 64.

### IV. CONCLUSION

**\*11 WHEREFORE,** it is hereby

**ORDERED,** that Plaintiff's Request for an Emergency Stay (Dkt. No. 64) is **denied;** and it is further

**RECOMMENDED,** that Defendant's Motion to Dismiss (Dkt. No. 44) be **granted** and, in accordance with FED. R. CIV. P. 37(b)(2)(C), this entire action be **dismissed;** and it is further;

**ORDERED,** that the Clerk of the Court serve a copy

of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989)); see also 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b), 6(a) & 6(e).

N.D.N.Y.,2006.

La Grande v. Adecco
Not Reported in F.Supp.2d, 2006 WL 2806402 (N.D.N.Y.)
END OF DOCUMENT



Not Reported in F.Supp.2d, 2007 WL 2789499 (N.D.N.Y.)
(Cite as: 2007 WL 2789499 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Dashon [FN1] HALLOWAY, Plaintiff,

FN1. Upon information and belief, the correct spelling of Plaintiff's name is "Deshon" as reflected in both his Complaint, Dkt. No. 1, and the Department of Correctional Services' Inmate Locator Website, *available at* http://nysdocslookup.docs.state.ny .us.

v.
Glenn S. GOORD, et al, Defendants.
**No. 9:03-CV-1524 (LEK/RFT).**

Sept. 24, 2007.

Deshon Holloway, Dannemora, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of New York, New York State Department of Law, Stephen M. Kerwin, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

*DECISION AND ORDER*

LAWRENCE E. KAHN, U.S. District Judge.

**\*1** This matter comes before the Court following a Report-Recommendation filed on August 29, 2007 by the Honorable Randolph F. Treece, United States Magistrate Judge, pursuant to 28 U .S.C. § 636(b) and L.R. 72.3 of the Northern District of New York. Report-Rec. (Dkt. No. 87). After ten days from the service thereof, the Clerk has

sent the entire file to the undersigned, including the objections by Plaintiff Deshon Halloway, which were filed on September 14, 2007. Objection (Dkt. No. 88).

It is the duty of this Court to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* This Court has considered the objections and has undertaken a de novo review of the record and has determined that the Report-Recommendation should be approved for the reasons stated therein.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt. No. 87) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED,** that the defendants motion for summary judgment (Dkt. No. 80) is **GRANTED** and the Complaint (Dkt. No. 1) is **DISMISSED;** it is further **ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

*REPORT-RECOMMENDATION and ORDER*

RANDOLPH F. TREECE, United States Magistrate Judge.

*Pro se* Plaintiff Deshon Holloway brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging the above named Defendants violated his due process rights pursuant to the Fourteenth Amendment when he was transferred from Elmira Correctional Facility to Upstate Correctional Facility without first receiving a hearing. According to Plaintiff, when he was housed at Elmira, he was serving a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2789499 (N.D.N.Y.)
(Cite as: 2007 WL 2789499 (N.D.N.Y.))

keeplock disciplinary sentence in his cell, whereas upon his transfer to Upstate, he served the remainder of that sentence in a Special Housing Unit (SHU). *See generally* Dkt. No. 1, Compl.

Presently before the Court is Defendants' Motion for Summary Judgment, to which, despite being granted multiple extensions of time, Plaintiff has failed to respond. Dkt. Nos. 80, Defs.' Mot. Summ. J., filed on Jan. 17, 2007; 81, Order, dated June 5, 2007 (*sua sponte* extending Plaintiff's time to respond to July 9, 2007); 83, Order, dated July 3, 2007 (granting Plaintiff's request and extending his response time to July 31, 2007).

Instead of submitting opposition to the Motion, Plaintiff filed a letter, dated July 15, 2007, seeking permission to withdraw his action. Dkt. No. 84. Court staff inquired whether Defendants would consent to Plaintiff's voluntary withdrawal, to which Defendants tendered consent only upon the proviso that such dismissal be with prejudice. Dkt. Nos. 85, Notice to Defs.' Counsel, dated July 20, 2007; 86, Defs.' Resp., dated Aug. 21, 2007. In light of the ample passage of time since the initiation of this lawsuit and the filing of Defendants' Motion, and in light of the Defendants' posture to withhold any consent to discontinue lest it be on the merits, the Court finds it prudent to address Defendants' Motion on the merits.

## I. FACTS

### A. Effect of Plaintiff's Failure to Respond

**\*2** Defendants filed their Motion for Summary Judgment on January 17, 2007, setting Plaintiff's response deadline for February 12, 2007. Dkt. No. 80. In accordance with the Local Rules of Practice for the Northern District of New York, Defendants provided Plaintiff with notice of the consequences that may befall him should he elect not to respond to such Motion.[FN2] Dkt. No. 80; N.D.N.Y.L.R. 56.2. Approximately six months later, on June 5, 2007, this Court, in view of the fact that Plaintiff had not filed a response, *sua sponte* extended his time to respond and further emphasized the consequences of his failure to do so.[FN3]

FN2. Specifically, Defendants included in their Notice of Motion the following warning:

PLEASE NOTE that, pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, when a motion for summary judgment is made and properly supported, you may not simply rely upon your complaint, but you must respond by affidavits or as otherwise provided in that rule, setting forth specific facts showing that there is a genuine issue of material fact for trial. Any factual assertions in the moving parties' affidavits will be accepted by the Magistrate-Judge as being true unless you submit affidavits or other documentary evidence contradicting defendants' assertions. If you do not so respond, summary judgment, if appropriate, may be entered against you. If summary judgment is granted against you, your case will be dismissed and there will be no trial.

Dkt. No. 80 (emphasis in original).

FN3. Specifically, the Court issued an Order stating:

*Plaintiff is warned that failure to oppose Defendants' Motion will result in this Court accepting the facts set forth by Defendants as true. See* N.D.N.Y.L.R. 7.1(a)(3) ("*Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.*" (emphasis in original)). *Plaintiff is further warned that failure to respond may, if appropriate, result in the granting of Defendants' Motion, in which there will be no trial. See* N.D .N.Y.L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the nonmoving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion,

Not Reported in F.Supp.2d, 2007 WL 2789499 (N.D.N.Y.)
(Cite as: 2007 WL 2789499 (N.D.N.Y.))

as the case may be, unless good cause is shown.").

Dkt. No. 81 at pp. 1-2 (emphasis in original).

Pursuant to this District's Local Rules, "[w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file to serve any papers ... shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown ." N.D.N.Y.L.R. 7.1(b)(3); see also Douglas v. New York State Div. of Parole, 1998 WL 59459, at *1 (N.D.N.Y. Feb. 10, 1998) (noting that plaintiff's failure to oppose defendants' dispositive motion, and his failure to show good cause for the omission, may alone justify granting the motion). "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." Champion v. Artuz, 76 F.3d 483, 486 (2d Cir.1996). Even in the absence of a response, Defendants are entitled to summary judgment only if the material facts demonstrate their entitlement to judgment as a matter of law. Id.; FED. R. CIV. P. 56(c); N.D.N.Y.L.R. 7.1(b)(3). Because Plaintiff has failed to raise any question of material fact, the Court will accept the facts as set forth in Defendants' Rule 7.1 Statement of Facts, supplemented by Plaintiffs' verified Complaint, as true. See Dkt. Nos. 1, Compl.; 80-9, Defs.' 7.1 Statement; see also Lopez v. Reynolds, 998 F.Supp. 252, 256 (W.D.N.Y.1997).

**B. Uncontested Facts**

At all times relevant to the Complaint, Plaintiff was an inmate in the custody of the New York State Department of Correctional Services (DOCS). On January 5, 2001, Holloway was transferred from Elmira Correctional Facility, a maximum security prison, to Upstate Correctional Facility, a maximum security prison. Defs.' 7.1 Statement at ¶ 2; Dkt. No. 80-2, Donald Selsky Decl., dated Oct. 13, 2006, Ex. B (Pl.'s Transfer History). This transfer is the subject of his civil rights claims.

As indicated on Holloway's Transfer History Report, the

reason for Plaintiff's transfer was his "unsuitable behavior." Selsky Decl., Ex. B. This is not the first time Plaintiff was transferred to another facility due to his unsuitable behavior.[FN4] In fact, Plaintiff's transfer to Elmira from Southport Correctional Facility was also due to his unsuitable behavior. Id. (Transfer, dated November 28, 2000). Upon his arrival at Elmira, Plaintiff had an aggregate disciplinary keeplock sentence of approximately 270 days, stemming from six Disciplinary Hearings Plaintiff previously received during a span of six months. Defs.' 7.1 Statement at ¶ 6. These disciplinary sentences were based on various Misbehavior Reports Plaintiff received while incarcerated at Marcy Correctional Facility and Mid-State Correctional Facility. Id. at ¶¶ 7-10. For each of the six Misbehavior Reports issued, Plaintiff received a separate Disciplinary Hearing resulting in six separate guilty determinations, each with its own separate sentence. Id. Plaintiff only filed appeals in three of these Hearings, all of which were affirmed. Id. at ¶¶ 8 & 11-12.[FN5] Plaintiff makes no allegations as to the inadequacy of any of these Hearings and none of the Hearing Officers who presided over the six Disciplinary Hearings is named as a Defendant.

FN4. In reviewing Plaintiff's Transfer History, we note at least four transfers due to his "unsuitable behavior" between May 1998 and December 2000. Dkt. No. 80-2, Donald Selsky Decl., dated Oct. 13, 2006, Ex. B (Pl.'s Transfer History).

FN5. Indeed Plaintiff's Disciplinary History is startling and certainly is not confined to the six instances noted above. Focusing only on the disciplinary sentences to be served upon his arrival at Upstate, we offer the following synopsis. Two of the sentences stem from Misbehavior Reports Plaintiff was issued while at Marcy, dated April 15, 1999, and May 14, 1999. Defs.' 7.1 Statement at ¶ 7; Selsky Decl., Ex. A (Holloway Disciplinary History). The Hearing determinations for these two Reports, which included, inter alia, an aggregate keeplock sentence of 180 days, were affirmed on appeal. Defs.' 7.1 Statement at ¶ 8. While at Mid-State, and again as relevant to the aggregate sentence to be served at Upstate, Plaintiff received four separate Misbehavior Reports on August 15,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2789499 (N.D.N.Y.)
(Cite as: 2007 WL 2789499 (N.D.N.Y.))

1999, September 2, 1999, October 12, 1999, and October 22, 1999. *Id.* at ¶ 9. On each, he was provided a Hearing, found guilty, and received a sentence of, *inter alia,* thirty days keeplock (per infraction); he only appealed the Hearing determination regarding the October 12th Misbehavior Report, and such was affirmed on appeal. *Id.* at ¶¶ 10-12.

**\*3** Prior to his transfer to Upstate, Holloway was held in long-term keeplock at Elmira for approximately one month and eight days. *Id .* at ¶ 14. The cell Plaintiff was confined in could also be used for a general population inmate or an inmate transitioning to general population from SHU. Dkt. No. 80-5, Dan Kress Decl., dated Jan. 11, 2007, at ¶ 2. Under the keeplock confinement, Plaintiff was locked in his cell for twenty-three hours a day. Dkt. No. 80-6, James Thompson Decl., dated Jan. 10, 2007, at ¶ 3. A cell-confined inmate in this circumstance requires additional services by prison staff such as meal delivery and cell visitation by medical staff. *Id.* Though use of a general population cell for such restricted confinement is feasible on a short-term basis, "[a]s a long-term proposition, ... it [is] an inefficient use of the department's resources[.]" *Id.* On the other hand, Upstate is a prison specially designed to handle cell-confined inmates and, given the length of Plaintiff's keeplock sentence of approximately 240 days, it was more practical for Plaintiff to be transferred to Upstate to serve out the remainder of that keeplock sentence. *Id.* at ¶ 4. For these reasons, on December 27, 2000, Defendant Dan Kress, Corrections Counselor at Elmira, recommended that Holloway be transferred to Upstate to serve his 240-day keeplock sentence. Defs. 7.1 Statement at ¶ 16. This recommendation was approved by Defendant James Thompson, Senior Counselor at Elmira and by John Carvill [FN6] in DOCS' Office of Classification and Movement, who issued the order that Plaintiff be transferred to Upstate from Elmira; as aforementioned, such transfer took place on January 5, 2001. *Id.* at ¶ 17. Defendants Glenn Goord, then-Commissioner of DOCS, Floyd Bennett, then-Superintendent of Elmira, Thomas Ricks, then-Superintendent of Upstate, and John Glasheen, then-Assistant Director of the Office of Classification and Movement, were not involved in the decision to transfer Plaintiff to Upstate. *Id.* at ¶ 33.

FN6. John Carvill is not a Defendant in this action.

While serving his sentence at Upstate, Plaintiff was treated the same as any other inmate sentenced to keeplock confinement at Upstate. *Id.* at ¶ 27. After his arrival at Upstate, Plaintiff incurred, in just four months, over a year's worth of additional keeplock for disciplinary violations. *Id.* at ¶ 18. He also accumulated seventy-four months of SHU time for more serious violations involving violent conduct on staff and an unhygienic act. *Id.* at ¶ 19. Pursuant to Department Regulations, Plaintiff began serving all of this additional SHU time at Upstate on May 5, 2001. *Id.* at ¶ 20.

## II. DISCUSSION

### A. Standard of Review

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc ., 477 U.S. 242, 247 (1986); accord F.D.I.C. v. Giammettei, 34 F.3d 51, 54 (2d Cir.1994).* The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Thomas v. Roach, 165 F.3d 137, 142 (2d Cir.1999).* "When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the ... pleading, but the adverse party's response, by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e) ], must set forth specific facts showing that there is a genuine issue for trial." *St. Pierre v. Dyer, 208 F.3d 394, 404 (2d Cir.2000)* (quoting FED. R. CIV. P. 56(e)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir.1994)* (alteration and emphasis in original) (citation omitted). However, it is well settled that on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir.1999).*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2789499 (N.D.N.Y.)
(Cite as: 2007 WL 2789499 (N.D.N.Y.))

**\*4** Furthermore, in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (a court is to read a *pro se* party's "supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest"). Indeed, the Second Circuit has stated that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *LaFond v. Gen. Physics Servs. Corp.,* 50 F.3d 165, 171 (2d Cir.1995). This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond,* 2001 WL 527484, at \*2 (S.D.N.Y. May 16, 2001).

More specifically, this District's Local Rules provide that *"[a]ny facts set forth in the [moving party's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."* N.D.N.Y.L.R. 7.1(a)(3) (emphasis in original). Local Rule 7.1(a)(3) further requires that the non-movant shall file a Statement of Material Facts which mirrors the movant's statement in matching numbered paragraphs and which sets forth a specific reference to the record where the material fact is alleged to arise. *Id.* The courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions. *Giguere v. Racicot,* 2002 WL 368534, at \*2 (N.D.N.Y. Mar. 1, 2002) (citing, *inter alia, Bundy Am. Corp. v. K-Z Rental Leasing, Inc.,* 2001 WL 237218, at \*1 (N.D.N.Y. Mar. 9, 2001)).

Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute. *Amnesty Am. v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002). As long as the local rules impose a requirement that parties provide specific record citations in support of their statement of material facts, the court may grant summary judgment on

that basis. *Id.* at 470-71.

In this case, as previously discussed, Holloway did not file a response to the Defendants' Motion for Summary Judgment. Consequently, this Court has accepted the properly supported facts contained in the Defendants' 7.1 Statement as true for purposes of this Motion. With this standard in mind, the Court now addresses the sufficiency of Holloway's claims.

## B. Due Process and Plaintiff's Intrastate Prison Transfer

Holloway asserts he should have received a hearing prior to his transfer to Upstate and in the absence of such hearing, his due process rights were violated. Defendants Kress and Thompson were directly involved in the decision to transfer Plaintiff, thus we consider Plaintiff's due process claim to be asserted against them. Plaintiff's claim, however, is wholly without merit.

**\*5** To state a due process claim under § 1983, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker,* 139 F.3d 329, 333 (2d Cir.1998) (citing *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989)). Inmates' liberty interests are typically derived from two sources: (1) the Due Process Clause of the Fourteenth Amendment; and (2) state statute or regulations. *Id.*

With regard to liberty interests arising directly under the Due Process Clause, the Supreme Court has "narrowly circumscribed its scope to protect no more than the 'most basic liberty interests in prisoners.' " *Arce v. Walker,* 139 F.3d at 333 (quoting *Hewitt v. Helms,* 459 U.S. 460, 467 (1983)). The Due Process clause does not protect against "every change in the conditions of confinement having a substantial adverse impact" on inmates if those changes are "within the normal limits or range of custody which the conviction has authorized the state to impose." *Sandin v. Conner,* 515 U.S. 472, 478 (1995). Instead, the Due Process Clause protects against restraints or conditions of confinement that "exceed[ ] the sentence in ... an unexpected manner." *Id.* at 484 (quoted in *Arce v. Walker,* 139 F.3d at 333).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2789499 (N.D.N.Y.)
(Cite as: 2007 WL 2789499 (N.D.N.Y.))

It is well-settled that an inmate has no right under the Due Process clause to be incarcerated in any particular correctional facility, and transfers among facilities do not need to be preceded by any particular due process procedure. *See Wilkinson v. Austin,* 545 U.S. 209, 221-22 (2005) (citing *Meachum v. Fano,* 427 U.S. 215, 224-25 (1976)) (noting that the Constitution does not "guarantee that [a] convicted prisoner will be placed in any particular prison" nor does "the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system[ ]")); *see also Fox v. Brown,* 2007 WL 586724, at *9-10 (N.D.N.Y. Feb. 21, 2007).* Though Holloway complains that his restrictions at Upstate were much greater than that experienced at Elmira, the fact that "life in one prison is much more disagreeable than in another does not itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules." *Meachum v. Fano,* 427 U.S. at 225; *see also Olim v. Wakinekona,* 461 U.S. 238, 244-45 (1983) (citing, *inter alia, Meachum v. Fano,* 427 U.S. 215 (1976) & *Monyanye v. Haymes,* 427 U.S. 236 (1976)* for the proposition that inmates have no constitutional right to be housed in a particular prison or a particular dormitory within a prison.) Thus, the Due Process Clause itself clearly does not afford Holloway the protection sought.

Our inquiry does not end there, however, since liberty interests may also arise under state statutes and regulations. *Arce v. Walker,* 139 F.3d at 334 (citing *Kentucky Dep't of Corr.,* 490 U.S. at 460). To assert a state created liberty interest, an inmate must establish that his confinement or restraint (1) created an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin v. Connor,* 515 U.S. at 484, *and* (2) that the "state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint," *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996). Regardless of whether Plaintiff can establish that he was subjected to an atypical and significant hardship, it is patently clear that New York has **not** created, by regulation or statute, any liberty interest in remaining at one particular prison. Indeed, it is the DOCS who possesses sole discretion to determine "where a [state] inmate will be housed." *Grullon v. Reid,* 1999 WL 436457, at *10 (S.D.N.Y. Jun.

24, 1999) (citing *United States v. Williams,* 65 F.3d 301, 307 (2d Cir.1995)); *see also Smolen v. Lanier,* 2007 WL 2027841, at *2 (W.D.N.Y. July 11, 2007).* Furthermore, not only do New York State Regulations permit keeplock sentences to be served in SHU, but further contemplate that assignments to SHU will be subject to the same property, visiting, package, commissary, telephone, and correspondence limitations typically experienced in SHU confinement. N.Y. COMP.CODES R. & REGS. tit. 7 §§ 301.6 & 302.2.

*6 Thus, regardless of whether Plaintiff alleges his due process rights were violated when he was transferred to another institution or when he was forced to serve his keeplock sentence in SHU, since Holloway had no liberty interest in remaining at one specific facility to serve his keeplock sentence or to remain in cell confinement to serve such sentence, there was no need to provide him with a hearing prior to his transfer to another prison and into SHU. Accordingly, this Court recommends **granting** Defendants' Motion for Summary Judgment and **dismissing** Defendants Kress and Thompson from this action.

### B. Personal Involvement

As to the remaining Defendants, Plaintiff alleges that 1) Defendant Goord failed to stop Plaintiff's transfer to Upstate and knew of or should have known of his subordinates' acts, yet failed to take action, Compl. at ¶¶ 48-50; 2) Defendant Glasheen approved the transfer and failed to provide Plaintiff with a hearing prior to such transfer, Compl. at ¶¶ 51-53; 3) Defendant Bennett failed to stop Plaintiff's transfer to Upstate and failed to provide Plaintiff with a hearing prior to such transfer, Compl. at ¶¶ 54-57; and 4) Defendant Ricks failed to transfer Plaintiff from Upstate back to Elmira and failed to provide Plaintiff with a hearing prior to keeping him confined at Upstate, Compl. at ¶¶ 58-60.

It is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a § 1983 action, *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), and furthermore, the doctrine of respondeat superior is inapplicable to § 1983 claims, *Polk County v. Dodson,* 454 U.S. 312, 325 (1981) (citing

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2789499 (N.D.N.Y.)
(Cite as: 2007 WL 2789499 (N.D.N.Y.))

*Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658 (1978)); *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973).

Despite Plaintiff's allegations to the contrary, and in light of his failure to oppose Defendants' Motion, it is uncontested that Defendants Goord, Glasheen, Bennett, and Ricks played no part in the decision to transfer Plaintiff. To the extent Plaintiff seeks to hold any one of these Defendants liable on the basis of supervisory liability,[FN7] such claim similarly fails since, as explained above, Plaintiff's transfer to Upstate without a hearing did not violate his due process rights. Therefore, this Court recommends **dismissing** these Defendants as well.

> FN7. The Second Circuit has stated that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he: (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (4) was grossly negligent in managing subordinates who caused the unlawful condition or event. *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986) (citations omitted). Pointedly, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985)); *see also Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (defendant may not be held liable simply because he holds a high position of authority).

## III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that Defendants' Motion for Summary Judgment (Dkt. No. 80) be **GRANTED** and the

entire Complaint **DISMISSED;** and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72, 6(a), & 6(e).

N.D.N.Y.,2007.
Halloway v. Goord
Not Reported in F.Supp.2d, 2007 WL 2789499 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.