IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

RAYMOND GONZALEZ,

                            Plaintiff,

                                                    Civil Action No.
            v.                                      9:10-CV-0312 (LEK/DEP)

DR. DONALD SAWYER, *et al.*,

                            Defendants.

_____

APPEARANCES:                                OF COUNSEL:

FOR PLAINTIFF:

RAYMOND GONZALEZ, *Pro Se*
52034
Hillsborough County
Department of Corrections
Unit 2-C
Manchester, NH 03103-6216

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN          ADAM SILVERMAN, ESQ.
Office of the Attorney General     Assistant Attorney General
State of New York
Department of Law
The Capitol
Albany, New York 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Raymond Gonzalez, a former New York State prison inmate that is now incarcerated in New Hampshire, has commenced this action pursuant to 42 U.S.C. § 1983, alleging deprivation of his civil rights. In his complaint, plaintiff alleges that he was maliciously transferred from a prison facility into the Central New York Psychiatric Center ("CNYPC" or "Center") for mental health treatment for the express purpose of interfering with his access to the courts, and that, while there, he was assaulted by four CNYPC employees, resulting in injuries that included a broken tooth.

Currently pending before the court in connection with this action is a motion by defendants for the entry of summary judgment dismissing plaintiff's complaint. In their motion, defendants argue that plaintiff's complaint fails on the merits, and that they are entitled to qualified immunity. For the reasons set forth below, I recommend defendants' motion be granted, except as it relates to plaintiff's excessive force claim, which is the subject of conflicting record evidence and therefore is improperly resolved on a motion for summary judgment.

I.    <u>BACKGROUND</u>[1]

Although plaintiff is now confined elsewhere, at all times relevant to this action, he was in the custody of the New York State Department Corrections and Community Supervision ("DOCCS").[2]  *See generally* Compl. (Dkt. No. 1).

On August 7, 2008, after undergoing an evaluation by DOCCS mental health professionals, plaintiff was transferred from the Five Points Correctional Facility ("Five Points"), located in Romulus, New York, into the CNYPC.  Compl. (Dkt. No. 1) at ¶¶ 23-31.  At the time of the transfer, plaintiff communicated to prison officials at Five Points that he was in the process of performing legal work in connection with civil rights lawsuits and a habeas corpus petition.  *Id.* at ¶ 23, 27.  Following his transfer to the CNYPC, plaintiff was without access to his legal papers.  Compl. (Dkt. No. 1) at ¶ 31. Plaintiff's subsequent request to be returned to Five Points was denied on August 8, 2008.  *Id.* at ¶ 40.  Plaintiff thereafter wrote a letter, dated August 10, 2008, to defendant Donald Sawyer, Ph.D, the Executive Director of the

---

[1]    Unless otherwise noted, the following recitation is derived from the record, considered in light of the well-established principle that, on a motion for summary judgment, the court is "required to resolve all ambiguities and draw all permissible factual inferences" in favor of the non-moving party.  *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

[2]    According to plaintiff's change of address form, and publically available information, plaintiff is currently being held by the Hillsborough County Department of Corrections in Manchester, New Hampshire. Dkt. No. 55.

CNYPC, protesting the transfer and requesting that he be returned to Five Points to continue pursuing his petition for habeas relief. *Id.* at ¶¶ 41-42; Plf.'s Aff. Exh. B. (Dkt. No. 58) at 13-14. In response, plaintiff was informed that defendant Sawyer intended to seek court guidance regarding whether to return him to Five Points. Compl. (Dkt. No. 1) at ¶ 43.

On August 20, 2008, defendant Sawyer filed a petition in New York State Supreme Court, Oneida County, on behalf of J. Lempke, the Superintendent at Five Points, seeking an order involuntarily committing the plaintiff to a state hospital for mental health treatment. Compl. (Dkt. No. 1) at ¶ 49; Compl. Exh. B (Dkt. No. 1-1) at 4. Following a hearing conducted in connection with the petition, during which plaintiff was represented by counsel and testified on his own behalf, the Hon. Samuel D. Hester of the New York State Supreme Court, Oneida County, issued an order on September 11, 2008, granting defendant Sawyer's petition, and ordering plaintiff's involuntary commitment at the CNYPC for a period not to exceed six months. Compl. (Dkt. No. 1) at ¶ 53-56; Compl. Exh. C (Dkt. No. 1-1) at 6. Plaintiff alleges that, as a result of his confinement at the CNYPC, he was unable to timely file a habeas corpus petition concerning the dismissal of his criminal appeal or prosecute civil rights actions commenced by him on June 20, 2008, and July 3, 2008. Compl. (Dkt. No. 1) at ¶ 66; Plf.'s Aff. (Dkt. No. 58) at ¶ 8. Plaintiff

was returned from the Center to Five Points on January 2, 2009. Compl. (Dkt. No. 1) at ¶ 67.

While confined at the CNYPC, plaintiff alleges that he was involuntarily medicated by defendant Shadia Hanna, M.D., a psychiatrist employed at the Center. Compl. (Dkt. No. 1) at ¶¶ 57-64. Specifically, as a result of plaintiff's apparent refusal to take prescribed pyschotropic medication, and after providing notice to the plaintiff of her intention to do so, defendant Hanna applied to the courts for leave to forcibly medicate plaintiff against his will. *Id.*; Compl. Exhs. D & E (Dkt. No. 1-1) at 8, 10-11. Following a second hearing, at which plaintiff was again represented by counsel and testified on his behalf, the Hon. Anthony F. Shaheen of the New York State Supreme Court, Oneida County, issued an order granting defendant Hanna's request on October 22, 2008. Compl. (Dkt. No. 1) at ¶ 64; Compl. Exh. F (Dkt. No. 1-1) at 13-14.

On October 18, 2008, plaintiff was involved in an incident in the CNYPC dayroom, arising out of a dispute with three other patients. Complaint (Dkt. No. 1) ¶¶ 70-84. Liberally construing plaintiff's complaint, it alleges that defendants Todd Harmon, Thomas Nitti, and Michael Nicotera, all of whom are Security Hospital Treatment Assistants ("SHTA") at the Center, instructed three CNYPC patients to occupy the table plaintiff was using to complete his legal work. *Id.* While plaintiff was explaining to the three inmates why he

needed the table, defendants Harmon, Nitti, and Nicotera called plaintiff to a side room. *Id.* at ¶ 81. At that time, those three defendants, as well as defendant J. Nadeau, also a SHTA at the Center, began to assault plaintiff by beating him in the head, face, stomach, legs, and back. *Id.* at 85. As a result, plaintiff suffered multiple injuries, including a broken tooth. *Id.* at ¶ 86. Following the assault, CNYPC medical staff responded to the side room to provide plaintiff with medical treatment. *Id.* at 88. Plaintiff was given Tylenol and ice for his injuries, and CNYPC staff photographed his injuries and completed a use of force report. *Id.* at ¶¶ 89-90; Kerwin Aff. Exhs. B-F (Dkt. Nos. 45-4, 46, 46-1, 46-2, 46-3).

In their motion, defendants refute plaintiff's allegations that his injuries arose from an assault by defendants Harmon, Nitti, Nicotera, and Nadeau. They assert, instead, that plaintiff's injuries stem from an altercation that began when plaintiff attacked another patient in the dayroom at the Center. Nitti Decl. (Dkt. No. 45-8) at ¶¶ 3-4. In response, defendant Nitti secured plaintiff by using a "one person removal technique," and then escorted plaintiff to the side room. *Id.* at ¶ 5. According to defendants, once inside the side room, instead of sitting on a chair as directed, he turned and spit blood towards defendants Nitti, Nadeau, and Nicotera. *Id.* at ¶ 6; Nicotera Decl. (Dkt. No. 45-7) ¶¶ 4-5. Both defendants Nicotera and Nitti deny using any

force against the plaintiff, other than that applied by defendant Nitti to subdue plaintiff. Nitti Decl. (Dkt. No. 45-8) at ¶¶ 8-10; Nicotera Decl. (Dkt. No. 45-7) at ¶¶ 7-8.

## II.    PROCEDURAL HISTORY

Plaintiff commenced this action on March 17, 2010. Complaint (Dkt. No. 1). Named as defendants in plaintiff's complaint are Dr. Donald Sawyer, the Executive Director of the CNYPC; Dr. Shadia Hanna, a psychiatrist employed at the Center; and defendants Todd Harmon, Thomas Nitti, Michael Nicotera, and J. Nadeau, four SHTAs also employed at the facility. *Id.* Plaintiff's complaint asserts claims stemming from his allegedly unlawful confinement in the CNYPC, denial of access to the courts, and the use of excessive force. *See generally id.* As relief, plaintiff seeks compensatory damages in the amount of four million dollars. *Id.* at ¶¶ C-D.

On February 6, 2012, upon my recommendation, Senior District Judge Lawrence E. Kahn dismissed defendant Nadeau from this action due to plaintiff's failure to serve a summons and complaint on him pursuant to the Local Rules of the Northern District of New York and the Federal Rules of Civil Procedure. Dkt. No. 41. On June 29, 2012, following the completion of discovery, the remaining defendants moved seeking the entry of summary judgment dismissing plaintiff's claims. In their motion, defendants argue that

(1) plaintiff cannot demonstrate the requisite prejudice necessary to support a First Amendment court access denial claim; (2) plaintiff's claims associated with his involuntary confinement in the CNYPC are precluded by the *Rooker-Feldman* doctrine;[3] (3) plaintiff's claims against defendant Hanna amount to nothing more than a disagreement regarding treatment; (4) plaintiff's claims against defendant Harmon are subject to dismissal based upon the fact that he was not employed at the CNYPC on the date of the alleged assault; (5) plaintiff's excessive force claims against defendants Nitti and Nicotera are subject to dismissal as a matter of law; and (6) the defendants are entitled to qualified immunity. Plaintiff has since responded in opposition to defendants' motion on October 15, 2012. Dkt. No. 58. Defendants' motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local 72.3(c). *See* Fed. R. Civ. P. 72(b).

---

[3]     *District Columbia Court of Appeals v. Feldman*, 460 U.S. 472 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923).

III.     DISCUSSION

A.     Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.  *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83.  In the event this initial burden is met, the

opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences in a light most favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party.  *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.    Plaintiff's Deposition

In his opposition papers, plaintiff objects to defendants' reliance upon his deposition transcript in their motion, on the basis that it was not forwarded to him for review, correction, and signature before a notary.  Plf.'s Aff. (Dkt. No. 58) at ¶¶ 2-5.  While plaintiff alleges that the transcript contains many errors, he does not specifically identify any in his motion papers.  *Id.*

Rule 30(e) of the Federal Rules of Civil Procedure provides that

[o]n request by the deponent or a party before the

> deposition is completed, the deponent must be allowed
> 30 days after being notified by the officer that the
> transcript or recording is available in which:
>
> (A)    to review the transcript or recording; and
>
> (B)    if there are changes in form or substance, to sign a
>         statement listing the changes and the reasons for
>         making them.

Fed. R. Civ. P. 30(e).  Here, there is no indication in the deposition transcript

or otherwise that plaintiff requested the opportunity to conduct such a review

of the deposition transcript.  While it is true that defendants' counsel did offer,

at the outset of the deposition, to send Gonzalez a copy of the transcript for

review, there was no discussion of obtaining his signature, or the mechanism

for correcting any errors.  Plf.'s Dep. Tr. (Dkt. No. 45-2) at 5. I note,

additionally that the rule governing the use of depositions provides that

> [a]n objection to how the officer transcribed the
> testimony – or prepared, signed, certified, sealed,
> endorsed, sent, or otherwise dealt with the deposition –
> is waived unless a motion to suppress is made promptly
> made after the error or irregularity becomes known or,
> with reasonable diligence, could have been known.

Fed. R. Civ. P. 32(d)(4).  Plaintiff's objection to his deposition transcript that

only vaguely alleges that it contains "many errors," without specifying what

needs to be corrected, is insufficient for the court to find that the deposition

should be suppressed.  For that reason, I have considered plaintiff's

deposition testimony in analyzing defendants' pending motion.  As will be discussed more below, however, because plaintiff's English language deficiencies, at times, resulted in unclear testimony, I have not afforded great weight, if any, to plaintiff's testimony.

## C.    Denial of Court Access

Plaintiff's primary claim in this action stems from his contention that defendants Sawyer and Hanna transferred him from Five Points to the CNYPC in an effort to deny him access to the courts, in violation of his First Amendment rights.  Compl. (Dkt. No. 1) at ¶ 66; Plf.'s Aff. (Dkt. No. 58) at ¶ 8. In their motion, defendants argue that plaintiff is unable to point to any prejudice, in the form of an adverse effect to an existing meritorious action, suffered by him as a result of his transfer from Five Points to the CNYPC. Defs.' Memo. of Law (Dkt. No. 45-11) at 5-7.  In response, plaintiff asserts that the transfer was in fact prejudicial, in that, while at the Center, he missed a court deadline for filing his habeas petition.  Plf.'s Aff. (Dkt. No. 58) at ¶ 8; Plf.'s L.R. 7.1 Statement (Dkt. No. 58-1) at ¶ 6.

It is well established that inmates have a constitutional right to meaningful access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 823 (1977); *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986).  Although the Supreme Court held that this right requires prison authorities "to assist

inmates in the preparation and filing of meaningful legal papers by providing

prisoners with adequate law libraries or adequate assistance from persons

trained in the law[,]" *Bounds*, 430 U.S. at 828, it later clarified that

> prison law libraries and legal assistance programs are
> not ends in themselves, but only the means for ensuring
> a reasonably adequate opportunity to present claimed
> violations of fundamental constitutional rights to the
> courts.  Because *Bounds* did not create an abstract,
> freestanding right to a law library or legal assistance, an
> inmate cannot establish relevant actual injury simply by
> establishing that his prison's law library or legal
> assistance program is subpar in some theoretical sense.

*Lewis v. Casey*, 518 U.S. 343, 351 (1996) (internal quotation marks and

citations omitted).  "A claim for reasonable access to the courts under

[section] 1983 requires that an inmate demonstrate that the alleged act of

deprivation actually interfered with his access to the courts or prejudiced an

existing an action."  *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 345 (N.D.N.Y.

2010) (Hurd, J., *adopting report and recommendation by* Lowe, M.J.) (internal

quotation marks omitted); *see also Lewis*, 518 U.S. at 351, 353 (finding that

an inmate "must go one step further and demonstrate that . . . [a] nonfrivolous

legal claim had been frustrated or was being impeded" as a result of the

defendant's conduct).

Here, plaintiff's complaint alleges that he suffered prejudice from his

confinement at the CNYPC as it relates to two civil rights actions and a

habeas corpus petition, which are addressed separately below.[4]

### 1.  Plaintiff's Civil Rights Actions

Plaintiff's complaint alleges that his transfer into the CNYPC resulted in his inability to prosecute his civil rights actions commenced by him on June 20, 2008, and July 3, 2008.  Compl. (Dkt. No. 1) at ¶ 66.  The record evidence, however, does not conclusively establish whether plaintiff suffered any prejudice as a result of his inability to prosecute.  For example, at his deposition, plaintiff was specifically asked how his 2008 lawsuits were interrupted as a result of the transfer; plaintiff's answers to this line of questioning, however, are, at best, unclear.  Plf.'s Dep. Tr. (Dkt. No. 45-3) at 16-22.  It appears that plaintiff's language barrier may well have inhibited him from providing a concrete answer upon which the court can rely.[5]

---

[4]     Although there is scant proof in the record to support a conclusion that, while at the CNYPC, plaintiff was either denied access to his legal papers that he had accumulated at Five Points, or denied the ability to communicate with the courts, because the court is required to draw all inferences at this stage in the proceedings in favor of the plaintiff, I assume these facts to be true for purposes of the pending motion and will proceed to analyze only whether the record supports a finding of prejudice.

[5]     An excerpt from this line of questioning illustrates this point:

Q:     I'm asking you about any lawsuits that you were trying when you were sent to the psychiatric center. What happened to those cases?

A:     My lawsuit – the case – this all right.

Q:     Can you try to speak up a little bit so I can understand?

A:     My lawsuit – my lawsuit, the day in the court, the court noticed me my lawsuit.

Defendants urge the court to find that plaintiff's deposition testimony fails to establish any prejudice. A careful reading of the transcript, however, reveals that plaintiff may have testified that his actions were dismissed. *See* Plf.'s Dep. Tr. (Dkt. No. 45-3) at 18 ("Q: And without access to paper, what happened to your lawsuits in 2008? And I need you to be specific . . . . A: They noticed me in my lawsuit because they sent me to the psychiatric center . . . . Q: When you say 'notice,' you mean dismissed? A: Dismiss."). If this is true, the relevant inquiry becomes whether the actions were dismissed for reasons related to his alleged inability to prosecute them while at the CNYPC. Compl. (Dkt. No. 1) at ¶ 66. Drawing all inferences in favor of the plaintiff, I find that a reasonable factfinder could conclude, based on the record

---

Q:      The lawsuit was stayed.

A:      Yeah, stayed. Yeah, stayed.

Q:      So while you were in the psychiatric center, the lawsuits were stayed?

A:      I can't give you the right answer because I don't speak perfect English.

Q:      Well, 'stayed' is a proper term. If you mean that the lawsuits stayed in one place, there was no change in the lawsuit while you were in the psychiatric center. Is that what you're trying to say?

A:      No, I'm trying to say no problem – no problem – my – my – my confinement in the New York Psychiatric Center no matter – no matter – no matter when I was in the New York Psychiatric Center.

Plf.'s Dep. Tr. (Dkt. No. 45-3) at 20-21.

evidence, that plaintiff was prejudiced as a result of the alleged denial of access to courts that resulted from his confinement at the CNYPC.

At this juncture, the entry of summary judgment dismissing the portion of plaintiff's court access claim that is based on the alleged interference with the prosecution of his two civil rights actions appears to be unwarranted. However, in light of the fact that plaintiff's deposition testimony as it relates to his civil rights actions is wholly unclear, due to plaintiff's language limitations, I recommend denying defendants' motion for summary judgment on this claim, as it relates to these actions, without prejudice to defendants' right to renew its motion.[6]

### 2.  Plaintiff's Habeas Corpus Petition

Plaintiff's complaint also alleges that his habeas corpus petition, filed in the United States District Court for the Western District of New York,[7] was dismissed as untimely.  Compl. (Dkt. No. 1) at ¶¶ 41-43, 66; Plf.'s Aff. Exh. A (Dkt. No. 58) at 11.  A review of publically available records, however, fails to substantiate this allegation.  In that petition, plaintiff challenged a 2005 conviction and a subsequent dismissal of his appeal of that conviction to the

---

[6]     In deciding whether to renew this portion of their motion, defendants may request permission from the court to take an additional deposition of the plaintiff related to this narrow inquiry.  Defendants are encouraged to consider whether the use of an interpreter at any second deposition may provide the court with a more clear record.

[7]     *Gonzalez v. Lempke*, No. 09-CV-6423 (W.D.N.Y. filed August 20, 2009).

New York State Supreme Court Appellate Division, Fourth Department. *See generally* Decision and Order, No. 09-CV-6423 (Dkt. No. 20) at 1. A careful review of the decision dismissing plaintiff's habeas petition, issued by District Judge Charles Siragusa on September 2, 2010, reveals that it was not dismissed on the basis of timeliness, although that issue was clearly raised as a defense by the respondent. *Id.* at 2-3. Rather, the petition, which was not filed until August 9, 2009, more than seven months following plaintiff's transfer out of the CNYPC, was dismissed based on his failure to exhaust his claims by presenting them to the New York State Court of Appeals prior to seeking habeas relief. *Id.* at 3-4. The time to move the New York State Court of Appeals for leave to appeal, and thereby satisfy plaintiff's exhaustion obligations, expired on October 8, 2007, long before the transfer into the CNYPC that is at issue in this case, and therefore cannot be attributed to that event.[8] *See* N.Y. C.P.L.R. § 5513(a) ("An appeal as of right must be taken within thirty days after service by a party upon the appellant of a copy of the judgment or order appealed from and written notice of its entry . . . .").

Therefore, I recommend a finding that plaintiff was not prejudiced as it relates to his habeas corpus petition, and that the portion of his access to courts claim that arises from this allegation be dismissed.

---

[8]     The Appellate Division dismissed plaintiff's appeal on September 6, 2007. Decision and Order, No. 09-CV-6423 (Dkt. No. 20) at 2.

C.    *Rooker-Feldman*

Plaintiff's complaint alleges that his constitutional rights were violated when defendants Sawyer and Hanna had plaintiff transferred into the CNYPC and involuntarily medicated pursuant to court order. *See generally* Compl. (Dkt. No. 1). In their motion, defendants argue that this claim is precluded by the *Rooker-Feldman* doctrine. Defs.' Memo. of Law (Dkt. No. 45-11) at 7.

The *Rooker-Feldman* doctrine relates to "lack of subject matter jurisdiction, and may be raised at any time by either party or *sua sponte* by the court." *Moccio v. N.Y.S. Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir. 1996) (internal citations omitted) *abrogated on other grounds by Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). "[It] merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to [the Supreme Court]." *Verizon Md. Inc. v. Public Svc. Comm'n of Maryland*, 535 U.S. 635, 644 n.3 (2002). In other words, district courts do not have jurisdiction to hear cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284. The Supreme Court cautioned, however, that actions "present[ing] some independent claim, albeit one that denies a legal conclusion that a state

court has reached" are not precluded by the doctrine because "state law determines whether the defendant prevails under principles of preclusion." *Id.* at 293 (internal quotation marks omitted). In short, *Exxon Mobil* effectively laid to rest the suggestion raised by many courts – including the Second Circuit – that the *Rooker-Feldman* doctrine and state court preclusion law are co-extensive, explicitly noting that the doctrine "does not otherwise override or supplant preclusion doctrine[.]"[9] *Id.* at 284.

Here, to the extent that plaintiff's claim, as it relates to the petitions by defendants Sawyer and Hanna to have him transferred and involuntarily medicated, is an attempt to appeal the New York State Supreme Court's orders that grant those petitions, that claim is precluded by the *Rooker-Feldman* doctrine. Although plaintiff may seek to invalidate those orders based on a constitutional grounds, the record evidence does not reveal any evidence to support a finding that those state court proceedings violated plaintiff's constitutional rights. As a result, I recommend dismissal of plaintiff's claim that defendants Sawyer and Hanna violated his constitutional rights by petitioning the New York State Supreme Court to issue orders transferring

---

[9] Although prior formulations of the *Rooker-Feldman* doctrine seemingly invalidated federal causes of action that were "inextricably intertwined" with prior state court determinations, little guidance was available to lower courts as to the meaning of that phrase. *Moccio*, 95 F.3d at 198-99 (quoting *Feldman*, 460 U.S. at 482-84 n.16). While the Supreme Court in *Exxon Mobil Corp.* acknowledged its prior use of that phrase, the continued vitality of that formulation post-*Exxon Mobil Corp.* is uncertain. *L.A.M. Recovery, Inc. v. Dep't of Consumer Affairs*, 377 F. Supp. 2d 429, 434-35 (S.D.N.Y. 2005).

plaintiff to CNYPC and involuntarily medicating him.[10]

     D.    <u>Plaintiff's Excessive Force Claim</u>

     While acknowledging that conflicting accounts exist in the record regarding the incident giving rise to plaintiff's excessive force claim, defendants argue that this claim should nevertheless be dismissed based upon the Second Circuit's decision in *Jeffreys v. City of New York,* 426 F.3d 549 (2d Cir. 2005). Defs.' Memo. of Law (Dkt. No. 45-11) at 8-11. This portion of defendants' motion invites the court to make a finding that, despite the evidence of squarely conflicting accounts, no reasonable factfinder could credit plaintiff's version of the relevant events. Defendants also argue that defendant Harmon is entitled to dismissal based on CNYPC employment records that show his employment at the Center ended on December 21, 2006, nearly two years prior to the alleged assault.[11] *Id.* at 8; Bardo Decl. (Dkt. No. 45-9) at ¶ 3. Plaintiff opposes these arguments based on his version of the relevant events, and the fact that, after being shown

---

[10]    To the extent that plaintiff also asserts an Eighth Amendment claim against defendant Hanna based on involuntarily medicating him, defendants correctly note that the claim, at best, asserts a cause of action for malpractice, or disagreement with treatment, not rising to a level sufficient to implicate the Eighth Amendment. *See McQuilkin v. Cent. N.Y. Psychiatric Ctr.,* No. 08-CV-0975, 2010 WL 3765847, at *17 (N.D.N.Y. Aug. 27, 2010) (Peebles, M.J.) *adopted by* 2010 WL 9765715 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.) ("[M]ere disagreements with respect to quality of medical care do not state an Eighth Amendment claim." (internal quotation marks omitted)).

[11]    It appears that a representative of the New York State Office of Mental Health accepted service of the summons and complaint in this matter for defendant Harmon on August 2, 2010. Dkt. No. 9.

photographs, he identified Harmon as one of the participants. Plf.'s Aff. (Dkt. No. 58) at ¶¶ 10, 12; Plf.'s L.R. 7.1 Statement (Dkt. No. 58-1) at ¶ 15.

Plaintiff's excessive-force claim implicates the Eighth Amendment, which proscribes punishments that involve the "unnecessary and wanton infliction of pain," and "are incompatible with the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102-03 (1976) (internal quotation marks omitted), *accord*, *Whitley v. Albers,* 475 U.S. 312, 319 (1986); *Griffin v. Crippen,* 193 F.3d 89, 91 (2d Cir. 1999). The lynchpin inquiry in deciding excessive force claims is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian,* 503 U.S. 1, 6 (1992) (applying *Whitley* to all excessive-force claims). A plaintiff claiming excessive force must satisfy two requirements, "one subjective, and the other objective." *U.S. v. Walsh*, 194 F.3d 37, 49 (2d Cir. 1999); *see also Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009).

"First, the subjective requirement is satisfied if the defendant has a sufficiently culpable state of mind shown by actions characterized by wantonness." *Walsh*, 194 F.3d at 49 (internal citations and quotation marks omitted). In excessive force cases, "the 'wantonness' inquiry turns on 'whether force was applied in a good-faith effort to maintain or restore

discipline, or maliciously and sadistically to cause harm."  *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (quoting *Hudson*, 503 U.S. at 7).  To establish the objective requirement, "it must be shown that the deprivation is objectively sufficiently serious or harmful enough."  *Walsh*, 194 F.3d at 50 (citing *Hudson*, 503 U.S. at 8).  This does not require that the plaintiff suffer a "serious" or "significant" injury, as long as the amount of force used is not *de minimis*.  *Hudson*, 503 U.S. at 7-10.  Moreover, "even *de minimis* uses of force are unconstitutional if they are 'repugnant to the conscience of mankind.'"  *Walsh*, 194 F.3d at 50 (quoting *Hudson*, 503 U.S. at 10).

On a motion for summary judgment, where the record evidence, including a inmate-plaintiff's allegations, if credited, could reasonably permit a rational factfinder to conclude that a defendant-corrections officer used force maliciously and sadistically, it is inappropriate for the court to dismiss an excessive force claim.  *Wrigh*t, 554 F.3d at 269 (citing *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003); *Griffin*, 193 F.3d at 91); *see also Rule v. Brine, Inc.* 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").  The Second Circuit, however, has recognized a very limited exception to this general rule in *Jeffreys*, 426 F.3d 549.  In that case, the Second Circuit held that summary judgment may be awarded in the rare circumstance where there is nothing in the record to

support the plaintiff's allegations of the defendants' use of excessive force, aside from his own contradictory and incomplete testimony, and even after drawing all inferences in the light most favorable to the plaintiff, the court determines that "no reasonable person" could credit the his testimony. *Jeffreys*, 426 F.3d at 54-55.

To apply the *Jeffreys* exception, a defendant must satisfy each of the following three requirements: (1) "the plaintiff must rely 'almost exclusively on his own testimony,'" (2) the plaintiff's "testimony must be 'contradictory or incomplete,'" and (3) the plaintiff's testimony must be contradicted by evidence produced by the defense. *Benitez v. Ham*, No. 04-CV-1159, 2009 WL 3486379, at *20-21 (N.D.N.Y. Oct. 21, 2009) (Mordue, J., *adopting report and recommendation by* Lowe, M.J.) (quoting *Jeffreys*, 426 F.3d at 554).

Here, the court is not in a position to dismiss plaintiff's excessive force claim on summary judgment based on *Jeffreys*. Although the record evidence purporting to establish plaintiff's version of the events giving rise to his injuries consists only of his allegations and testimony, a careful review of the evidence does not reveal that the cumulation of all that evidence is self-contradictory to the point of persuading the court that no reasonable factfinder could credit plaintiff's testimony. While the court acknowledges the inconsistencies arising from plaintiff's deposition, as highlighted by defendants in their motion, the court also remains mindful that plaintiff's

language difficulties during his deposition resulted in unclear testimony, and is not persuaded that relying on such testimony is appropriate in dismissing plaintiff's claim. Plaintiff was clearly involved in an incident on October 18, 2008, and was injured as a result. Whether those injuries were suffered as a result of an assault by CNYPC staff members, as plaintiff contends, or rather as a result of his attack on another patient at the facility, as asserted by the defendants, is a factual question that cannot be decided on motion for summary judgment. For this reason, I recommend that defendants' motion be denied as it relates to plaintiff's excessive force claim against defendants Nicotera and Nitti.

Turning to plaintiff's excessive force claim asserted against defendant Harmon, although plaintiff states that he identified him as one of his assailants at CNYPC on October 18, 2008, I find that no reasonable factfinder could conclude that defendant Harmon was involved in light of an affidavit from the Director Institution Human Resources at CNYPC establishing that he was not employed at CNYPC on that date. Bardo Decl. (Dkt. No. 45-9) at ¶ 3. As a result, I recommend that defendants' motion be granted as it relates to this claim.

E.    Qualified Immunity

Because I have recommended that plaintiff's access to courts claim asserted against defendants Sawyer and Hanna as it relates to his civil rights actions, and his excessive force claim asserted against defendants Nicotera and Nitti survive defendants' pending motion for summary judgment, I will only address defendants' defense of qualified immunity as it relates to those two claims.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Sudler v. City of New York*, 689 F.3d 159, 174 (2d Cir. 2012).  The law of qualified immunity seeks to strike a balance between "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson*, 555 U.S. at 231.  Government officials are shielded from liability by qualified immunity when making "reasonable mistakes" concerning the lawfulness of their conduct.  *Sudler*, 689 F.3d at 174 (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001), *abrogated on other grounds by Pearson*, 555 U.S. 223).

The determination of whether a government official is immune from suit

is informed by two factors. *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011). The inquiry turns on whether the facts alleged, taken in a light most favorable to the plaintiff, show that the conduct at issue violated a constitutional right, and if so, whether that right is clearly established at the relevant time. *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011); *Nagle v. Marron*, 663 F.3d 100, 114 (2d Cir. 2011); *Doninger*, 642 F.3d at 345 (citing cases). To be clearly established, a right must be sufficiently clear "that every reasonable official would have understood that what he is doing violates that right." *Ashcroft*, 131 S.Ct. at 2083 (internal quotation marks omitted). Until recently, courts were required to analyze qualified immunity by considering the two factors in order. *Doninger*, 642 F.3d at 345 (citing *Saucier*, 533 U.S. at 201). Following the Supreme Court's decision in *Pearson*, however, courts are no longer wedded to the *Saucier* "two step," and instead retain the discretion to decide the order in which the two relevant factors are to be considered.[12] *Id.*; *see also Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 429 n.9 (2d Cir. 2009).

To prevail on a qualified immunity defense, a defendant must establish that "(1) the officers' actions did not violate clearly established law, or (2) it

---

[12] Because qualified immunity is "an immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in the litigation." *Pearson*, 555 U.S. at 231 (internal quotation marks omitted).

was objectively reasonable for the officers to believe that their actions did not violate such law." *Green v. Montgomery*, 219 F.3d 52, at 59 (2d Cir. 2000); *see also Bailey v. Pataki*, — F.3d — , 2013 WL 535744, at *12 (2d Cir. Feb. 14, 2013) ("The defendants are entitled to qualified immunity if they can establish either that (1) a constitutional right was not violated or (2) the right was not clearly established.") (internal quotation marks and alterations omitted)).  Because qualified immunity is an affirmative defense, the defendants have the burden of proving it on a motion for summary judgment. *Bailey*, 2013 WL 535744, at *12.

### 1.    Plaintiff's Access to Courts Claim

"[I]t is well-settled that a prisoner may not be transferred [from one correctional facility to another] solely in retaliation for the exercise of his constitutional rights."  *Hilliard v. Scully*, 648 F. Supp. 1479, 1487 (S.D.N.Y. 1986) (citing *Haymes v. Montanye*, 547 F.2d 188, 191 (2d Cir. 1976)).  Here, even assuming that plaintiff's civil rights actions were prejudiced, as discussed above, I find that a reasonable person in the positions of defendants Sawyer and Hanna would not know that their conduct in petitioning the New York State Supreme Court, Oneida County, to have plaintiff transferred to the CNYPC and involuntarily medicated would result in a violation of plaintiff's constitutional right to access the courts.  Specifically, there is no record evidence to support a finding that these defendants did not

have the authority to petition the courts or that they knew plaintiff would not be afforded access to the courts while confined at the CNYPC or involuntarily medicated. Although plaintiff's complaint alleges that these defendants acted maliciously to deny him access to his legal papers, this threadbare, unsupported allegation is insufficient to give rise to a dispute of material fact on summary judgment. *See Belcher v. Serriano*, No. 95-CV-1340, 1998 WL 173169, at *1 (N.D.N.Y. Apr. 9, 1998) (Pooler, J.) (holding that the plaintiff's complaint and an affidavit submitted in opposition to the defendants' motion for summary judgment were "[in]sufficient to overcome summary judgment," particularly where "his affidavit contains no factual support"). For these reasons, I recommend that defendants Sawyer and Hanna be granted qualified immunity and that they be dismissed from this action.

### 2.      Plaintiff's Excessive Force Claim

Because the right to be free from excessive force is a clearly established right, the relevant qualified immunity inquiry turns on whether a reasonable person in the positions of defendants Nicotera and Nitti would have known that his conduct amounted to excessive force. *See Green*, 219 F.3d at 59 ("It is beyond dispute that the right to be free from excessive force has long been clearly established."). Because I have determined that there is a dispute of material fact as to whether plaintiff's injuries arose from an assault by these defendants, as plaintiff alleges, or from an altercation with

another patient at the CNYPC, as defendants allege, I conclude that a reasonable factfinder could credit plaintiff's version, and, under those circumstances, a reasonable person in their position would certainly know that his assault on plaintiff violated his Eighth Amendment rights. For these reasons, I cannot conclude that defendants Nicotera and Nitti are entitled to qualified immunity as it relates to plaintiff's excessive force claim.

III.   SUMMARY AND RECOMMENDATION

Although plaintiff's claim against defendants Sawyer and Hanna that he was effectively denied access to the courts, as it relates to his civil rights actions when transferred into the CNYPC, is not subject to dismissal because the record evidence establishes a dispute of material fact as to whether plaintiff suffered prejudice as a result, those two defendants are nonetheless entitled to qualified immunity from suit. As this claim relates to plaintiff's habeas corpus petition, because the petition was dismissed on the grounds of exhaustion, rather than timeliness, I recommend that it be dismissed. Turning to plaintiff's excessive force claim, I find it should be dismissed against defendant Harmon, but that, as it relates to defendants Nicotera and Nitti, it is not subject to dismissal in light of the parties' competing version of events giving rise to plaintiff's injuries. Finally, I conclude that defendants Nicotera and Nitti are not entitled to qualified immunity at this juncture as it relates to the remaining excessive force claim asserted against them. Accordingly, it is

hereby respectfully

RECOMMENDED, that defendants' motion for summary judgment (Dkt. No. 45) be GRANTED, in part, and DENIED in part as follows:

1. Plaintiff's access to courts claim against defendants Sawyer and Hanna be dismissed;

2. Plaintiff's claims against defendants Sawyer and Hanna arising from their petitions to the New York State Supreme Court to have him transferred and involuntarily medicated be dismissed;

3. Plaintiff's excessive force claims against defendants Nicotera and Nitti survive; and

4. Plaintiff's excessive force claim against defendant Harmon be dismissed.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:    February 27, 2013
            Syracuse, New York

David E. Peebles
U.S. Magistrate Judge